UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ] | DOCKET 4:23-CR-268(1) |
| | ] | 4:23-CR-268(5) |
| | ] | |
| VS. | ] | JANUARY 12, 2026 |
| | ] | |
| | ] | 9:02 A.M. |
| WILLIAM MCKINNLEY | ] | |
| GARLAND | ] | PLANO, TEXAS |
| AND | ] | |
| ANASTASIYA CLAIRE LYONS | ] | |
| | ] | |

-------------------------------------------------------------

VOLUME 1 OF 7, PAGES 1 THROUGH 216

REPORTER'S TRANSCRIPT OF PRETRIAL CONFERENCE AND VOIR DIRE

BEFORE THE HONORABLE SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE

-------------------------------------------------------------

APPEARANCES:

FOR THE GOVERNMENT:   MARISA MILLER
                      CHALANA OLIVER
                      U.S. ATTORNEY'S OFFICE
                      101 E. PARK BLVD, SUITE 500
                      PLANO, TEXAS 75074


FOR THE DEFENDANT GARLAND:
                      RAFAEL DE LA GARZA
                      THE DE LA GARZA LAW FIRM
                      3941 LEGACY DR
                      SUITE 204-A192
                      PLANO, TEXAS 75023

                      JAMES WHALEN
                      WHALEN LAW OFFICE
                      9300 JOHN HICKMAN PARKWAY
                      SUITE 501
                      FRISCO, TEXAS 75035

Ruth C. Weese, RDR-CSR
214 872-4867

FOR THE DEFENDANT LYONS:

PHILIP LINDER
BARRETT BRIGHT LASSITER LINDER PEREZ
3300 OAK LAWN AVE
SUITE 700
DALLAS, TEXAS 75219

AARON VEULEMAN
LAW OFFICE OF AARON VEULEMAN
330 OAK LAWN AVE
SUITE 700
DALLAS, TEXAS 75219

3

COURT REPORTER:          RUTH C. WEESE, RDR-CSR
                         FEDERAL OFFICIAL REPORTER
                         7940 PRESTON ROAD
                         PLANO, TEXAS  75024


   PROCEEDINGS REPORTED USING COMPUTERIZED STENOTYPE;
 TRANSCRIPT PRODUCED VIA COMPUTER-AIDED TRANSCRIPTION.

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 4 of 216 PageID #: 1481
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

4

# TABLE OF CONTENTS

PAGE

VOIR DIRE................. 17

JURY SWORN............... 187

PRELIMINARY INSTRUCTIONS.. 196

ARRAIGNMENT OF DEFENDANTS.. 210

5

(OPEN COURT, DEFENDANTS PRESENT.)

(The following was held outside the presence of the prospective jurors.)

THE COURT:  Good morning.  You can be seated. We are back on the record in Cause No. 4:23-CR-268, United States of America versus William McKinnley Garland and Anastasiya Claire Lyons.  Let's go ahead and have appearances this morning.  We can start with the Government.

MS. MILLER:  Your Honor, Marisa Miller and Chalana Oliver for the Government; ready to proceed.

THE COURT:  Thank you.

MR. WHALEN:  Good morning, Your Honor.  Ralph De La Garza and James Whalen for Mr. Garland.  We are ready.

THE COURT:  Thank you.

MR. LINDER:  Good morning, Your Honor.  Philip Linder and Aaron Veuleman for Anastasiya Lyons.  We are ready.

THE COURT:  All right.  Thank you, counsel. So we have our jury panel here this morning.  We are going to first sort of have a continuation of our pretrial conference to cover a few matters and then we will bring in our panel, go through voir dire, select the jury and commence trial in this matter.

6

I had a couple of items I wanted to start off with.  The first one just has to do with the order that the Court had issued yesterday afternoon.  And I just want counsel to be very aware, I know you are doing pretrial preparation and have a lot of balls in the air, but those documents that we are saying need to be filed, it's important that they get filed.  I know you all are aware of the reasons why.  But for example, a major reason, but not the only reason to have the voir dire suggestions put forward is so that your friends on the other side can see the kind of topics you may be addressing and can identify if there's a concern before we are in the middle of voir dire.  So that's a major reason.  And so I just ask you to be careful, look if there is anything you haven't submitted that needs to be submitted in writing.  I will ask you to take a look at that.

The second thing is my clerk Brett Duffek just did pass around to you what I had mentioned to you on Friday that I would circulate to you, which is the description for the preliminary instructions of the counts in this case that the Defendants are being charged with.  What I did was for the preliminary instructions, I looked at your jointly agreed, what you all jointly agreed to, and then even within that where you had noted

7

certain instructions, just for example, on aiding and abetting, otherwise where you said look, counsel may not agree that this should be included at the end.  So I tried to just include what had been agreed to and what's laid out what's in the second Superseding Indictment.  I may not have fully accomplished that or you may otherwise have edits.  And I just wanted you to have that so that before I do the preliminary instructions in this case I will get back with you, see if you all have additions, subtractions or edits on it that hopefully that you all can agree to.

So I wanted to hit those two items and then talk about the administrative matters that Ms. Miller helpfully addressed in her e-mail of yesterday afternoon.  So let me just go through the items in Ms. Miller's e-mail very quickly and talk about where we are.

The first item has to do with the FBI vehicle that we discussed on Friday.  I think everything has been arranged.  The marshals have an area in the back lot that is reserved.  Ms. Miller has advised there is going to be no signage on this vehicle.  So I think that's sorted out to the satisfaction of everybody; is that fair to say?

MS. MILLER:  Yes, Your Honor.  It's parked in the parking lot right now and it may look like someone is moving off to college, but otherwise there is no law

enforcement indication.

THE COURT:  All right.  Thank you.  And, defense counsel, I take it no issues with this?

MR. LINDER:  No issues.

MR. DE LA GARZA:  No issues.

THE COURT:  I will move to topic two then and I have pretty good news on topic two.  This has to do with possible overflow space that may be needed for witnesses.  And Ms. Miller's e-mail refers to Wednesday, Thursday and Friday of this week and I have confirmed that our jury assembly room is going to be available on those days this week and it will also be available at least the middle of next week like through Wednesday. Thursday and Friday of next week I believe we may have an issue using that particular space if you still have an overflow problem, but we can cross that bridge when we come to it.  Does that sound satisfactory to the Government?

MS. MILLER:  Thank you, Your Honor.  That's wonderful news.

THE COURT:  All right.  So let me come to the one that I think maybe involves the most just logistical maneuvering here which is topic three that has to do with witnesses who have admitted criminal conduct, they don't have any kind of immunity from the Government and we need

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 9 of 216 PageID #:
1486
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

9

to appoint CJA panel counsel.  It's helpful, Ms. Miller, that you identified the six witnesses.

Let me tell you just how I would like to handle this if the Government is comfortable in assisting along these lines.

It seems to me that based on your representation that there may be one or more of these witnesses through, I don't know, the next four to five days of trial.  What I think we might need to do is sort of have a CJA panel attorney or attorneys who are I want to say almost on call for particular days and that's going to be a challenge.  What I would like to see, Ms. Miller, is if the Government is comfortable having somebody on your staff who can contact people on our CJA panel for this division.  Ideally, I would start with people who are in Plano, but this may be difficult to find sufficient coverage, but I would not rule out people who are in Sherman.  It just may require more coordination on when people are testifying, but the main thing is the Court is going to be prepared to start issuing those orders appointing that counsel.  We can get those out pretty quickly.  But if the Government is capable of doing that that would be a big help.  And if you could coordinate and then let the defense counsel know and identify the attorneys we have and what days

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 10 of 216 PageID
#: 1467
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

10

they may cover, then what I can do is issue the orders so that we can be prepared for them to appear as needed.

MS. MILLER:  Your Honor, happy to do that. The only problem that we have is I know the CJA list is evolving and obviously the Government has no knowledge of it.  So is that something the Court can provide some panel information to the Government?

THE COURT:  Well, what we have right now is on our website, and I can get you a printed copy, but on our website we have a current list of all CJA panel attorneys.  So if you look on the EDTX website under the tab for attorneys, you will actually see a list and on that list it has the current CJA panel attorneys by division in the entire district.  So it will have Sherman there.

MS. MILLER:  I never knew that, Judge.  Thank you.  We will find it.

THE COURT:  So if you have any issue with that we can just print the copy for you.  But again, my view of this is let's try the Plano or the closest people first.  If we don't have luck there, we will move to Sherman.

And, Ms. Miller, if you and Ms. Oliver can just sort of keep me posted on that.  I noticed in your e-mail you noted that the first one might be appearing

tomorrow so let's hopefully see if we can start getting people lined up on that.

MS. MILLER:  We will do it.  Thank you, Your Honor.

THE COURT:  So that covers I think the three topics that were in your e-mail.  You all have our orders issued today.  You all have both our order on the bill of particulars motion and our order on the Defendant's motion in limine.  I have obviously noted on there that these are preliminary rulings.  I will note that the case law always says this can change at any time, but I will note that for purposes of preservation issues on appeal, under Rule 103(b) the Court can at any time say this is a definitive ruling.  We typically don't do that until we are in trial.  But I just want to note a lot of the case law comes, I think there was a rule change at some point, but 103(b) allows the Court to do that and say this is a definitive ruling.  And I say that because that has to do with preservation of error for appeal.

But you have both of those rulings and I don't think there is any motions left for the Court to rule on at this time.  We did go through preadmitting exhibits. We have that whole list and Ms. Weese has that as part of our record.  One of the things I asked the parties to do to the extent you had time between Friday and today was

to see is if there was other exhibits that can be preadmitted, or do we not have any further agreement at this time?

MS. MILLER:  We don't have any further agreement, Your Honor.  I think based on -- counsel can correct me as always, I think there is going to be a few exhibits that assuming the Government lays the proper foundation there may not be dispute about those exhibits. But we are set with the exhibits we have at this time.

THE COURT:  All right.  I think the only other thing that as I recall I asked you all maybe to think about because we expanded the panel by about 14 people is whether you think you may need more time than the one hour I am already allotting to you for voir dire.  I will tell you I think that's probably still enough time and the way I would rather handle it is let's just go forward and if it looks like you need more time, I can give you a few extra minutes.  Because I can tell you my plan right now is we are going to go through all of jury selection and we will give the jurors the oath, but I suspect that we may be past 1:00, maybe even approaching 2:00 by that time.  So I tend to think what's going to have to happen is I will release them after the oath, won't give preliminary instructions until they come back from lunch. So I will do a recess instruction when they go, but that

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 13 of 216 PageID
#: 1430
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

13

to me is a better choice than trying to have nearly 70 people released for lunch and brought back.  I just don't think that's a good idea.  So I expect this process is going to take a while.  But that's my plan on how we handle logistically the panel and when we release them for lunch.  Any problem with that from the Government's side?

MS. MILLER:  None, Your Honor.

THE COURT:  Defense?

MR. LINDER:  No problem, Your Honor.

MR. WHALEN:  No, Your Honor.

THE COURT:  So we do have our list of panelists, by the way.  Ms. Sanford will be distributing that to you all shortly and as you will see as we discussed we have just under 70.  We have 69 panelists. So it will be a lot of folks in this room, but we will proceed as efficiently as we can.  So let me ask you now, counsel, I think I have covered everything I needed to cover.  Ms. Miller, does the Government have something else?

MS. MILLER:  Two, Your Honor.  From an administrative perspective, I know we spoke on Friday about the Government reading the Second Superseding Indictment.  Given that the parties are going to be asking the Court if there is a conviction to have a bench

14

trial on forfeiture, may I omit reading of the --

THE COURT:  Yes.

MS. MILLER:  Thank you, Your Honor.

THE COURT:  The forfeiture portion.

MS. MILLER:  Yes.  And, second, what is the Court's preference with respect to acknowledging the other Defendants who have pled?  Would the Court like me to limit the reading to the two Defendants going on trial?

THE COURT:  Yes.  I appreciate that question because I did look at that.  I went back and looked at the indictment and it is going to be read a couple of times, right, because it's going to be read to the voir dire panel and then I want the Defendants to have a chance to be re-arraigned essentially and to plead in front of the jury, which means you will be rereading it. My view, unless there is an issue from either side, is that we limit it to these two Defendants, one, and as you noted, that we omit the forfeiture portion and that I think will at least make the reading time not as long as it otherwise would be.  Is there any issue with that from the Government?

MS. MILLER:  No.  Thank you.

MR. DE LA GARZA:  No, Your Honor.

MR. LINDER:  No issue.

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 15 of 216 PageID
#: 1431
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

15

MS. MILLER:  The one other in speaking with defense counsel over the weekend, the challenge that we have in limiting the identification of certain victims and witnesses is that we do run the risk that a juror may unwittingly know one of these individuals and likely would not.  From the Government's perspective, we really can't provide the full last names now because that would obviate the purposes of our identification plans.

So in speaking with the defense what we plan to do is to provide each individual's alias in the identification of them and then the request perhaps that the Court instruct the final panel if at any time during the trial they realize that they do know a witness for either party that they approach Ms. Sanford or the Court to advise.  Since it will be a fairly short trial all things considered, we will have two alternates.  We think that might be a middle ground solution.

THE COURT:  Does that sound acceptable to the Defendants?

MR. LINDER:  Yes.

MR. WHALEN:  Yes, Your Honor.

THE COURT:  That makes sense to me.  I had another issue on the reading of the witness list that I did want to ask the parties about.  We have a number of Government witnesses that are like representatives of

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 16 of 216 PageID
#: 2435
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

16

this business entity and to my mind it just doesn't make sense to read that out.

MS. MILLER:  I can provide names, Your Honor.

THE COURT:  You can.  If you can provide names, because I think it was our last criminal trial where we had people reading that out and I was thinking we probably need a better way of doing that.  So I will include in the preliminary instructions then an instruction that if at any time any member of the jury realizes that they recognize and know any witness, they will immediately so advise the Court.  All right.  Ms. Miller, anything else from the Government?

MS. MILLER:  No.  Thank you, Your Honor.

THE COURT:  From the defense?

MR. DE LA GARZA:  No, Your Honor.

MR. LINDER:  No, Your Honor.

THE COURT:  All right.  Then what we will do is we will take a brief break.  We have our panel gathering and getting some information in the jury assembly room, but the next time that I come in we will be bringing in the panel and we will start with voir dire process.  Thank you, counsel.

(Recess, 9:25 a.m. to 9:45 a.m.)

(The following was held outside the presence of the prospective jurors.)

THE COURT: Counsel, are we ready to proceed to bring the jury panel in?

MS. MILLER: Yes, Your Honor.

MR. DE LA GARZA: Yes and no. Let me go find Mr. Linder and I will be right back.

THE COURT: All right. Thank you.

(Brief pause.)

MR. DE LA GARZA: We are ready, Your Honor.

THE COURT: All right. Let's go ahead and bring the panel in.

(Prospective jurors entered courtroom, 9:50 a.m.)

THE COURT: Please be seated. Good morning. We are here on Cause No. 4:23-CR-268, the United States of America versus William McKinnley Garland and Anastasiya Claire Lyons. For the Government, are you ready to proceed?

MS. MILLER: Your Honor, Marisa Miller and Chalana Oliver; ready to proceed.

THE COURT: Thank you. For the Defendant William McKinnley Garland, are you ready to proceed?

MR. DE LA GARZA: Yes, Your Honor. Rafael De La Garza and James Whalen. We are ready to proceed.

THE COURT: And for the Defendant Anastasiya Claire Lyons, are you ready to proceed?

MR. LINDER: Yes, Your Honor, Philip Linder and Aaron Veuleman; we are ready.

THE COURT: Thank you. Good morning, ladies and gentlemen. Welcome to jury service here in the Eastern District of Texas, Sherman Division. I'm Sean Jordan and I am going to be the judge presiding in this case and I want to start by thanking each and every one of you for coming here today to fulfill a fundamental right and a fundamental duty of every American citizen.

And the reason I say it is a fundamental right and a fundamental duty is because your appearance here today has to do with a critical part of our judicial branch of government. By serving as jurors you are allowing the judicial branch to fulfill its function under the United States Constitution and that's because the right to trial by jury is enshrined in our Constitution. In fact, our founders felt that it was so important to have a right to be tried by a jury of your peers they included it in two amendments to our Bill of Rights, Amendment Six and Seven. And the founders considered it central to our Constitution and to American democracy and liberty. Indeed, no less a person than Thomas Jefferson said he considered the right to trial by jury as the only anchor ever yet imagined by man, by which a government can be held to the principles of its

Case 4:23-cr-00268-SDJ-BD     Document 276     Filed 03/02/26     Page 19 of 216 PageID
#: 1430
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

19

constitution.

And trial by jury is a unique part of our democracy. Across the world there are very few countries that have trials by jury. It's something sets us apart from other countries and I think something we should be very proud of.

But I say it's a duty also because a right in the Constitution is meaningless if it can't actually be effectuated. An example of that was given by one of our great Supreme Court justices who passed away, Antonin Scalia, who talked about the old Soviet Union, a purported very strong right to free speech and assembly. Very strong language in the Soviet Constitution. The problem was it was never enforced. No one actually had that right because it was never enforced.

Here we enforce our right to have a trial by jury only because people like you will come down and make this sacrifice and come down and be jurors. That's how you help us effectuate that right and that's why you are pivotal to our system of justice. So again I want to thank you. We know this is a big sacrifice. We know you are being taken away from your lives and your families and your work, but I can assure you that it is absolutely critical to our system of justice, and I hope that you will be honored to serve on the jury if you are selected.

20

This is a criminal trial.  It will go through this week and I expect it will go at least through part of next week, maybe through the end of next week.  I will say next Monday, January 19th is Martin Luther King, Jr. Day.  We will not -- the Court will be closed that day. So we go through this week, but then we can start next Tuesday and I think it will go through at least part of next week, if not through the end of the week.

Our hours here are typically starting at 9:00. We go to about 5:30.  Those hours may vary a little bit. We want to try to be as efficient as possible.  We recognize we are taking your time and the lawyers are well aware of that and so we are going to try and be as efficient as we can be.  We take breaks about every 90 minutes during the day.  And if we need to take breaks more often to accommodate the jurors we do that.

I want to introduce some of the court personnel that you're going to see here, particularly if you are selected for the jury.  So we have our two wonderful court security officers, Mark Shingelo and Mike Christan, and then as I am pointing to my left up there is Bonnie Sanford.  Bonnie is our courtroom deputy.  She basically keeps all the trains running on time and keeps me in line as much as possible.

To her right is Ruth Weese.  She is our court

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 21 of 216 PageID
#: 2438
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

21

reporter and she is absolutely critical to these proceedings because as you can see, she is going to take down every word that is said.  Every word that I say, every word the lawyers say, what the witnesses say.  And that is going to be part of a transcript which is part of securing appellate rights, another important part of our system.  So I'm about to return to the bench.  Wait a minute.  I forgot somebody very important.  So there to my left is Brett Duffek.  He is an attorney with the court and a very bright young person.

So I am going to go back up to the bench now. We are going to go through the voir dire process and I will talk to you about what that is.  But this is how we wind up selecting our jury.  Thank you.

Ladies and gentlemen of the jury, what we are about to do is as I mentioned called voir dire.  It's a French term that simply means to speak the truth.  The way it works is that I will be asking a number of questions that are addressed to all of you, and depending on your answers, I may follow up with some of you to obtain further information.

After I have completed my questions, the lawyers for the parties in this case will also ask you some questions.  The purpose of the questioning process is simply to insure that the jury chosen in this case

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 22 of 216 PageID
#: 1439
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

22

will be fair and impartial to both sides and will be able to listen to the evidence and have an open mind.

Jurors must be as free as humanly possible from bias, prejudice or sympathy and must not be influenced by preconceived ideas either as to the facts or to the law.  Likewise, the jurors' oath requires you to evaluate the facts and evidence in this case and to follow the law as I explain it.  Each party is entitled to jurors who approach the case with open minds and agree beforehand to keep their minds open until all the evidence is presented.  In short, all you need to bring to serve as a juror is impartiality along with your own good judgment and common sense.

At the outset I want to emphasize two points about the voir dire questioning process we are about to conduct.  First, the questions that I ask you and the lawyers ask you are not meant to pry into your personal life or to embarrass you.  The questions, however, must be direct and frank and they may touch upon aspects of your personal and private affairs.  So if there is any question that you don't feel comfortable answering in front of the entire group, you should just let me know. We will follow up with you separately to answer the question only for the Court and the lawyers and outside the presence of the rest of the prospective jurors.

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 23 of 216 PageID
#: 2500
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

23

Second, it is very important that each of you pay close attention and that everyone participate.  Your answers are of great importance both to the Court and to the parties.  We want and need to hear what each of you has to say.

So I'm going to start by getting some basic background information on each of you.  Each of you has a panelist number, and starting with panelist No. 1, I'm going to ask you to please stand, state your panelist number and then tell us your job and your hobbies if you have any or if you want to mention them.  So we will start with Panelist 1, we will go through all of our panelists.

PROSPECTIVE JUROR:  I'm working for Japanese company in the weekday and then weekend I'm a Japanese school teacher.

THE COURT:  Thank you.

PROSPECTIVE JUROR:  Teaching high school kids.

THE COURT:  Thank you.  Panelist No. No. 2. You can just stand, give your panelist number, your job and then your hobbies if you want to mention them.

PROSPECTIVE JUROR:  I'm panelist No. 2.  I'm a registered nurse and I like to try to watercolor.  I'm not very good at it.  I do like to do that as a hobby.

PROSPECTIVE JUROR:  Panelist No. 3.  I'm an

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 24 of 216 PageID
#: 2501
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

24

accountant by training.  Currently chief financial officer for a local company and if I get a chance go out and golf.

PROSPECTIVE JUROR:  Panelist No. No. 4.  I'm a paralegal at an estate planning firm and do a lot of wills and trusts for people and I like to read.

PROSPECTIVE JUROR:  Panelist No. 5.  I'm a roofing contractor.  Hobbies I would say working out.  Activities, pickleball and I also coach on the side.

PROSPECTIVE JUROR:  Panelist No. 6.  I'm an electrical technician for a company.  I enjoy spending time with my family outdoors, hiking, anything outside.

PROSPECTIVE JUROR:  Panelist No. No. 7.  I'm an electrical engineer.  You need the company?

THE COURT:  That's okay.

PROSPECTIVE JUROR:  And I do spend time with my family.

PROSPECTIVE JUROR:  Panelist No. No. 8.  I'm a mortgage professional.  And hobbies, I like to brew beer.

PROSPECTIVE JUROR:  I'm panelist No. 9.  I teach fourth grade reading, language arts and I like to read.

PROSPECTIVE JUROR:  Panelist No. 10.  I work for a government defense contractor as a senior manager and I like traveling and hanging out with family on the

weekend.

PROSPECTIVE JUROR:  Panelist No. 11.  Trained auditor, like to play soccer on weekends.

PROSPECTIVE JUROR:  Panelist No. 12. Currently unemployed.  Play soccer, run.

PROSPECTIVE JUROR:  Panelist No. 13. Management for a local construction company and two kids in sports so my hobbies are driving them around basically.

PROSPECTIVE JUROR:  Panelist No. 14.  I'm a Wal-Mart manager and I like to play the drums.

PROSPECTIVE JUROR:  Panelist No. 15.  I'm an accountant and I like to rock climb.

PROSPECTIVE JUROR:  No. 16.  I'm a software engineer and I like to research financial and day trading.

PROSPECTIVE JUROR:  No. 17.  I'm a software engineer for a financial company.  I like to read, golf and spend time with my family.

PROSPECTIVE JUROR:  Panelist No. 18. Construction worker who does mainly drywall acoustical ceilings.

PROSPECTIVE JUROR:  Panelist 19.  I am a stay-at-home parent.  I like to volunteer in schools, play piano and violin.

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 26 of 216 PageID
#: 2503
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

26

PROSPECTIVE JUROR:  Panelist No. 20.  I am a senior director at a marketing company and I have children and my hobbies are their hobbies.

PROSPECTIVE JUROR:  Panelist No. 21.  I'm an HRIS analyst.  I have a family and I have kids so my hobbies revolve around them.

PROSPECTIVE JUROR:  Panelist No. 22.  I'm currently a management trainee at Enterprise Mobility. They are a rental car company.  And my current hobby right now that's taking up most of my time is movie script writing.

PROSPECTIVE JUROR:  Panelist No. 23.  I'm recently retired.  My hobbies are old cars.

PROSPECTIVE JUROR:  Panelist No. 24.  I am a general manager of a restaurant.  I like working out and reading.

PROSPECTIVE JUROR:  Panelist No. 25.  Truck driver.  I like to hunt and fish, anything outdoors.

PROSPECTIVE JUROR:  Panelist No. 26.  I'm an engineer and I like cooking.  I also play guitar.

PROSPECTIVE JUROR:  No. 27.  I'm a nuclear engineer and I like to play the saxophone.

PROSPECTIVE JUROR:  I'm 28.  I am a special education teacher and I like to read, crochet and go camping.

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 27 of 216 PageID
#: 2504
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

27

PROSPECTIVE JUROR:  Panelist No. 29.  I'm a manager in construction and love to travel in my spare time.

PROSPECTIVE JUROR:  Panelist No. 30.  Business process analyst.  I like to do DIYs at home and with family.

PROSPECTIVE JUROR:  Hello.  I am panelist No. 31.  And I am subject matter expert and trainer for a university.

PROSPECTIVE JUROR:  Panelist No. 32.  I am a merchandiser for a beverage distribution company.

PROSPECTIVE JUROR:  Panelist No. 33.  Sales engineer and I like to golf.

PROSPECTIVE JUROR:  Panelist No. 34.  I'm a general manager at a restaurant.

PROSPECTIVE JUROR:  Panelist No. 35.  I'm a field service engineer in the semi-conductor industry and I like to ride and work on motorcycles.

PROSPECTIVE JUROR:  Panelist No. 36.  I'm a stay-at-home parent and I teach and I love to read.

PROSPECTIVE JUROR:  Panelist No. 37.  I am a senior business analyst for a health care organization and I am an avid reader and DIY crafter.

PROSPECTIVE JUROR:  Panelist 38.  I'm in the golf business.

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 28 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2505

28

PROSPECTIVE JUROR:  Panelist No. 39.  Sales engineer for a telecom company and I like to play video games.

PROSPECTIVE JUROR:  Panelist No. 40.  I'm a self-employed real estate agent, sell residential real estate with ReMax and I like to read, cook and do Pilates.

PROSPECTIVE JUROR:  Panelist No. 41.  And I'm a cosmetologist and a salon owner so I have no free time.

PROSPECTIVE JUROR:  Panelist No. 42.  I'm a self-employed CPA.  My hobbies include horses, loom knitting and travel.

PROSPECTIVE JUROR:  Panelist No. 44 -- 43.  And I am an IT service desk and I work for a retail company and my hobbies include studying and building computers.

PROSPECTIVE JUROR:  Panelist 44.  I'm a surgical account manager and I train doctors in eye surgery, spend time with my kids when I am not traveling and working.

PROSPECTIVE JUROR:  Panelist 45.  I work in home building.  I like to read, play video games and play outdoors with my wife and kids.

PROSPECTIVE JUROR:  I am panelist No. 46.  I'm a high school teacher and coach.  I also have kids so

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 29 of 216 PageID
#: 2500
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

29

their hobbies are mine and I try to read and keep plants alive in Texas.

PROSPECTIVE JUROR:  I'm panelist No. 47.  I'm a retired school teacher and I enjoy spending time with my family.

PROSPECTIVE JUROR:  Panelist No. 48.  I am a general contractor and my hobbies are automobiles.

PROSPECTIVE JUROR:  Panelist No. 49.  I'm the director of construction for a local mechanical and plumbing subcontractor in the construction industry.  As far as hobbies, I am told I should get some because I work too much.

PROSPECTIVE JUROR:  50.  I'm an HR director for a logistics company.  And my hobbies are whatever my kids like to do.

PROSPECTIVE JUROR:  Panelist No. 51. Electrical engineer by training.  Currently work as a senior engineer for an aerospace company and my hobbies are working out, playing soccer and reading.

PROSPECTIVE JUROR:  Panelist No. 52.  I'm a software engineer for a bank and I like to spend time with my family.

PROSPECTIVE JUROR:  No. 53.  I'm an analyst and I like spending time with my kids.

THE COURT:  Panelist 54.  I'm an agency

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 30 of 216 PageID
#: 2507
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

30

learning coach for an insurance company.  I enjoy reading and spending time with my family.

PROSPECTIVE JUROR:  Panelist No. 55.  I'm a pediatric dental assistant and I love to try new crafts and read.

PROSPECTIVE JUROR:  No. 56.  I'm in pharmacy operation and compliance.  I like tennis, volleyball and just hanging out with my kids.

PROSPECTIVE JUROR:  Panelist No. 57.  I'm a mammographer and I enjoy playing golf.

PROSPECTIVE JUROR:  Panelist No. 58.  I'm an engineering manager for a semi-conductor company and I like to hunt and also do short distance triathlons.

PROSPECTIVE JUROR:  No. 59.  I'm retired and I'm restoring an antique motorcycle.

PROSPECTIVE JUROR:  Panelist No. 60.  I'm a software engineer for a defense contractor and hobbies include hiking and camping.

PROSPECTIVE JUROR:  Panelist No. 61.  I'm a veterinary technician and my hobbies include baking.

PROSPECTIVE JUROR:  Panelist No. 62. Self-employed in the parts business.  My hobbies are hunting and fishing.

PROSPECTIVE JUROR:  Panelist 63.  I'm a senior financial analyst for a national bank and my hobbies are

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 31 of 216 PageID
#: 2508
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

31

world traveling and cruising.

PROSPECTIVE JUROR: Panelist No. 64. I work for Oncore Electrical Delivery and for hobby I just golf if I have time.

PROSPECTIVE JUROR: Panelist No. 65. And I'm training to be an electrician and I do art as a hobby.

PROSPECTIVE JUROR: Panelist No. 66. Occupation, certified medical assistant, phlebotomist. And hobbies, singing.

PROSPECTIVE JUROR: Panelist No. 67. I am long retired. I spend three days a week as a hobby playing poker spending my kids inheritance.

PROSPECTIVE JUROR: I am panelist No. 68. I'm a licensed professional counselor and I read and crochet.

PROSPECTIVE JUROR: Panelist No. 69. I'm an automotive technician and my hobbies are dancing.

THE COURT: Thank you all for that information. I am now going to go ahead and begin the general questioning of the panel. So if you have a response to any question that I ask, again I will ask you to please stand and when you speak always begin by stating your panelist number and then answer the question. That way for our record we know which panelist is speaking so that's for the court transcript. So that panelist number is very important you say that first.

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 32 of 216 PageID
#: 1509
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

32

And again we will have the microphones going around for anyone who has an answer to a question. So if you are silent when I ask a general question of the group or when one of the lawyers asks a general question of the group, I will presume and they will presume that means a negative response.

So for example, if I ask if anybody is a Cowboys fan and nobody stands, I will presume no one is a Cowboys fans which is fine by me. So, finally, I want to reiterate that if there is any question that you do not feel comfortable answering in front of everyone, please stand, give your panelist number, then let me know you would like to just answer that question in front of the Court. And that way we have your number and at the conclusion of the general questioning we will take a recess and the Court will have people come forward who wanted to answer questions outside the presence of other prospective jurors.

As I mentioned at the beginning of this process, this is a criminal trial that is expected to last through this week and potentially through the end of the following week of January 19. And again as I mentioned, next Monday, a week from today, is Martin Luther King Day so that day the court will be closed so we would start on Tuesday .

33

So my first question is whether there is anyone that has a true emergency during this period of time, something like a surgery that is scheduled, some activity or something that's going on that would make it wholly unreasonable to require you to serve on the jury for this case.  I want to be clear that business commitments are not a sufficient excuse, so we are talking about something very serious.

Is there anyone here who has that kind of a situation?  So something like a surgery or something that's that urgent?  All right.  Does anyone here have a physical disability that would prevent you from serving as a juror or would make jury service particularly difficult?  So that's something like a hearing problem or a vision problem or a medical condition that makes you drowsy or that would preclude you from sitting for long periods of time.  Does anyone have that kind of physical issue?  Ma'am, would you stand up and give us your panelist number.

PROSPECTIVE JUROR:  Panelist No. 50.  I was diagnosed recently with hearing loss in my left ear. It's very recent that I couldn't get the proper paperwork to be dismissed from this.

THE COURT:  All right.  Have you been having trouble hearing this morning?

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 34 of 216 PageID
#: 2511
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

34

PROSPECTIVE JUROR:  It's not having trouble. Just it hurts my ear a lot when there is a lot of talking.

THE COURT:  Understood.  Thank you, No. 50. Anybody else?  Does anyone here have a belief, whether it's religious, moral, philosophical or personal, that makes it difficult for you to sit in judgment of another person?  Anybody have the type of religious belief or otherwise that would make it difficult to sit in judgment?

Next question I have is whether anyone here is not being paid as a result of being called to jury duty. I want to note this is not an excuse, but the Court will note it and it may be considered at some point.  So I want to see if there is any of you that you are not being paid during the time that you here.  If you can stand up and just tell us.  I think you were in construction, No. 18?

PROSPECTIVE JUROR:  18, construction.

THE COURT:  And I take it that you are only paid for the days that you are on the job.

PROSPECTIVE JUROR:  Hourly.  Yes, sir.

THE COURT:  Thank you.  Who else do we have?

PROSPECTIVE JUROR:  No. 40.  I sell residential real estate.  I get paid commission only.  So

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 35 of 216 PageID
#: 2511
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

35

if I am not there to help the transaction move forward it likely might not and then I don't get paid. So it's not like I don't -- I am only paid hourly. It is just I only get paid when I close a deal.

THE COURT: Understood. Thank you, ma'am.

PROSPECTIVE JUROR: No. 41. And I'm a cosmetologist. I work behind the chair every day. And so if I am not there I'm not making money.

THE COURT: This is your own business?

PROSPECTIVE JUROR: Yes.

THE COURT: Understood. Thank you.

PROSPECTIVE JUROR: No. 42. Self-employed CPA. I have billable hours so if I am not working I am not billing.

THE COURT: Thank you.

PROSPECTIVE JUROR: No. 45. Just to clarify, does this mean your company is not paying you for this time?

THE COURT: Yes. Included in this is whether you are self-employed or whether for whatever reason your employer is not paying you.

PROSPECTIVE JUROR: Correct. They don't reimburse for jury duty.

THE COURT: What's your employer again, what type of company?

PROSPECTIVE JUROR:  Home building, new home construction.

THE COURT:  Okay.

PROSPECTIVE JUROR:  No. 5.  Fully commissioned base.  Being here I am not being paid.

THE COURT:  All right.

PROSPECTIVE JUROR:  Panelist 11.  As well self-employed.  If I am not at work I can't get paid.

THE COURT:  Thank you.

PROSPECTIVE JUROR:  53.  My company will not pay me.  They pay me hourly.

THE COURT:  What is your company again?

PROSPECTIVE JUROR:  Atoms Energy.

PROSPECTIVE JUROR:  No. 48.  I am self-employed.

THE COURT:  Understood.

PROSPECTIVE JUROR:  I'm panelist No. 55.  I'm a dental assistant and I get paid hourly.

THE COURT:  Thank you.

PROSPECTIVE JUROR:  Panelist No. 57.  I get paid hourly and I just have one more question.  I don't know if this counts as a disability.  I'm four and-a-half months pregnant and I have an appointment next week for a high risk pregnancy.

THE COURT:  Okay.  So you have an appointment

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 37 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2514

37

next week on a high risk pregnancy.  Thank you.

PROSPECTIVE JUROR:  62.  I am self-employed. If I am not working I am not making money.

PROSPECTIVE JUROR:  68.  I have a private practice so if I am not seeing clients I don't get paid.

THE COURT:  Okay.  I think that was everybody. So, ladies and gentlemen, as we get started I am now going to have the parties introduce themselves and the people at counsel table.  I'm going to start with the Government.  So, Ms. Miller, would you introduce yourself and all your colleagues at counsel table.

MS. MILLER:  Thank you, Your Honor.  Good morning, ladies and gentlemen.  My name is Marisa Miller. I am an Assistant United States Attorney stationed right here in Plano.  To my right is Chalana Oliver, my co-counsel, who is also an Assistant United States Attorney here in Plano.  Next to her is FBI Special Agent Ashley Cira.  On the other side of the table is Patrick Madrigal and Jade Adams.  Both are with our technology support division.

THE COURT:  Thank you, Ms. Miller.  So, members of panel, let me ask whether any of you or any member of your family knows the attorneys for the Government, or any of the other people at the Government's table that Ms. Miller just introduced.  So

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 38 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2515

38

anybody here or to your knowledge a member of your family know anyone at the Government's table?  All right.

So now counsel for Defendant William McKinnley Garland, if you would please introduce yourself, your client and any other persons on your team.

MR. DE LA GARZA:  Thank you, Your Honor.  Good morning.  My name is Rafael De La Garza.  My co-counsel is James Patrick Whalen and also assisting us is another attorney in our office, Marina De La Garza.

THE COURT:  Again, members of the panel, I am going to ask if any of you or a family member knows the Defendant, Mr. Garland, or his counsel, Mr. De La Garza, Mr. Whalen and the others introduced by Mr. De La Garza.  Any of you know any of these individuals or members of your family know them?  All right.

Let me come to counsel for Defendant Anastasiya Claire Lyons and if you would introduce yourself and your client and members of your team.

MR. LINDER:  Good morning, ladies and gentlemen.  I'm Philip Linder, long-time attorney here in Dallas, Texas.  My co-counsel is Aaron Veuleman and my client, Anastasiya Lyons.

THE COURT:  All right.  Members of the panel, same question I had before.  Do any of you know any of the individuals introduced, either Mr. Linder himself,

Mr. Veuleman or their client or does a member of your family know them?  All right.

So, members of our voir dire panel, this is a criminal case as I mentioned and that means the Government has the burden to prove its case.  The Defendants are William McKinnley Garland and Anastasiya Claire Lyons.  Although I could summarize the case for you, I'm going to instead have the Government's counsel, Ms. Miller, read the current indictment and she will not include the part of the indictment that has to do with forfeiture.

MS. MILLER:  Thank you, Your Honor.  Ladies and gentlemen, this matter is captioned in the United States District Court for the Eastern District of Texas, Sherman Division, the United States of America versus William McKinnley Garland also known as Evangelista, also known as Lobo, also known as Vangelisa, also known as Ville, also known as Lex, also known as V, also known as Victor Yamaguchi, and Anastasiya Claire Lyons, also known as Frosty, also known as Elena Frost, also known as Ana Frost, also known as Bane spelled two ways, B-A-N-E, B-A-I-I-N-E.  This is matter 4:23-CR-268 and the matter has been assigned to the Honorable Sean D. Jordan.  This is the Second Superseding Indictment.  The grand jury charges Count 1, a violation of Title 18, United States

40

Code, Sections 2422(a) and subsection 2, coercion and enticement and aiding and abetting.  Between on or about January 21st, 2021, and on or about January 27th, 2021, in the Eastern District of Texas and elsewhere, William McKinnley Garland, also known as Evangelista, Lobo, Vangelisa, Ville, Lex, V and Victor Yamaguchi did knowingly persuade, induce, entice and coerce an individual and did knowingly attempt to persuade, induce, entice and coerce an individual, and did knowingly attempt to persuade, induce, entice and coerce an individual identified as Victim 1 to travel in interstate commerce from the State of Ohio to the Eastern District of Texas to engage in prostitution and any sexual activity for which any person can be charged with a criminal offense and aided and abetted in the same again in violation of Title 18, United States Code, Section 2422(a) and 2.

Count 2 charges a violation of Title 18, United States Code, Section 1594(c), conspiracy to commit sex trafficking by force, fraud and coercion.  Between in or about the year 2020 and continuing on or about August 5th, 2024, in the Eastern District of Texas and elsewhere, Defendant William McKinnley Garland, also known as Evangelista, Lobo, Vangelisa, Ville, Lex, V and Victor Yamaguchi and Anastasiya Claire Lyons, also known

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 41 of 216 PageID
#: 5518
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

41

as Frosty, Elena Frost, Ana Frost, Bain and Baiine, Defendants, in and affecting interstate and foreign commerce, did conspire with each other and with individuals known and unknown to the grand jury to knowingly recruit, entice, harbor, transport, provide, obtain and maintain by any means any individual or individuals known to the grand jury knowing and in reckless disregard of the fact that means of force, threats of force, fraud, coercion or any combination of such means would be used to cause those individuals to engage in a commercial sex act in violation of Title 18, United States Code, Section 1591(a)(1).  And again that is all in violation of Title 18, United States Code, Section 1594(c).

This true bill has been signed by the grand jury foreperson for the grand jury siting in the Eastern District of Texas and, Your Honor, I have signed on behalf of the United States.

THE COURT:  Thank you, Ms. Miller.  So, ladies and gentlemen, the indictment that Ms. Miller just read is not evidence of guilt.  Does anyone here feel that because the Government has brought this indictment either Defendant must be guilty?  Would anyone consider the fact that the Defendants have been indicted as evidence that either one of them is guilty of the offense charged?

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 42 of 216 PageID
#: 2519
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

42

Does anyone here know anything about the case other than what you have heard in court today?

All right. Let me now ask whether any of you or a member of your family that is a relative has ever been arrested, charged or convicted for a crime triable in federal or state court more serious than a traffic ticket. So, again, this is whether you or a family member has been arrested, charged and/or convicted for a crime triable in federal or state court more serious than a traffic ticket. Anyone? Again, start with your panelist number.

PROSPECTIVE JUROR: No. 10. I had a first cousin convicted of these very crimes.

THE COURT: Of crimes that involved sex trafficking?

PROSPECTIVE JUROR: Yes, sir.

THE COURT: Anything about that conviction of a cousin that you think would affect your ability to be a fair and impartial juror both to the Government and the defense?

PROSPECTIVE JUROR: No.

THE COURT: Thank you.

PROSPECTIVE JUROR: Panelist No. 8. When I was much younger my father spent much time in prison for pretty serious sex acts.

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 43 of 216 PageID
#: 2520
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

43

THE COURT: So these were also for sexual related crimes?

PROSPECTIVE JUROR: Yes.

THE COURT: Anything about that experience with your father and him spending time in prison for that that you think would affect your ability to be a fair and impartial juror to the Government and to the Defendant?

PROSPECTIVE JUROR: I do not.

THE COURT: Thank you.

PROSPECTIVE JUROR: No. 16. My brother was convicted of sexual assault.

THE COURT: And anything about that conviction that your brother had that you think would affect your ability to be a fair and impartial juror to both the Government and the Defendant?

PROSPECTIVE JUROR: He was -- it was consensual, but the state went in and convicted him.

THE COURT: Let me ask you again, and I ask you to give your most candid answer, anything about your experience of your brother's conviction under those circumstances that you think is going to affect your ability to be a fair and impartial juror for the Government and for the Defendants?

PROSPECTIVE JUROR: Yes. I thought it was unfair that they would consent. I thought it was unfair,

214 872-4867

but they had to do it because she was a minor.

THE COURT:  So that is the incident of your brother.  How long ago was that?

PROSPECTIVE JUROR:  Twenty years ago.

THE COURT:  When we talk about a fair and impartial juror, what we are asking for is a juror who will consider the evidence in this case that is put on against these Defendants and the law as I will explain it to you in this case.  And so my question to you is whether you feel you can consider with an open mind the evidence in this case and whether you will follow the law as I explain it to you, or whether you think you are going to have a problem doing that.

PROSPECTIVE JUROR:  I think I can.

THE COURT:  You think you can?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Thank you, sir.

PROSPECTIVE JUROR:  No. 19.  My sister as a minor was arrested with marijuana and then my brother-in-law went to prison for a couple of years for a DUI.

THE COURT:  So anything about those experiences with your sister and your brother-in-law that you think would affect your ability to be a fair and impartial juror in this case for the Government and the

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 45 of 216 PageID
#: 1522
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

45

Defendants?

PROSPECTIVE JUROR:  No.

THE COURT:  Thank you.

PROSPECTIVE JUROR:  Panelist No. 42.  I have a first cousin who was convicted of fraud and embezzlement.

THE COURT:  And anything about that, this is a first cousin, that conviction that you think would affect your ability to be a fair and impartial juror for the Government and the Defendants?

PROSPECTIVE JUROR:  No, sir.

THE COURT:  Panelist 66.  Had a nephew convicted of murder.

THE COURT:  Ma'am, anything about your nephew's conviction for murder that you think would affect your ability to be a fair and impartial juror in this case?

PROSPECTIVE JUROR:  No, not at all.

PROSPECTIVE JUROR:  Panelist No. 59.  I was convicted of a DWI.

THE COURT:  Sir, anything about that DWI conviction that you think would affect your ability to be a fair and impartial juror for the Government and the Defendants in this case?

PROSPECTIVE JUROR:  No.

THE COURT:  Thank you.

PROSPECTIVE JUROR:  37.  I have an uncle who was convicted of molestation.

THE COURT:  How long ago was that?

PROSPECTIVE JUROR:  Over 25 years ago.

THE COURT:  And anything about that conviction of your uncle for molestation that you think would affect your ability to be a fair and impartial juror for the Government and Defendant in this case?

PROSPECTIVE JUROR:  No.

THE COURT:  Thank you.  Members of the panel, the Government has indicated that it may call a number of persons as witnesses in this case and we need to see if anybody here or a family member may know any of these witnesses.  So bear with me and with Ms. Miller because what I am going to have her do is read five names at a time and then see if anybody knows or a family member knows these people.

So, Ms. Miller, if you would proceed with reading off the Government's witness list five names at a time.

MS. MILLER:  Your Honor, the Government's anticipated witness list or names that will be referenced will include Jason Hardeman, a representative from American Airlines, Jalen Alexander Bobo who also goes by Slade.  Both these witnesses are from the Dallas, Texas,

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 47 of 216 PageID
#: 5244
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

47

area.  Representative Kyle Chapin with Buddi US in Dunedin, Florida.  Julia Dorman, a representative from the Cimarron Correctional Facility in Cushing, Oklahoma, and Special Ashley Cira with the FBI.

THE COURT:  Members of the panel, do any of you or a member of your family to your knowledge know any of these individuals Ms. Miller just referenced?  You can proceed.

MS. MILLER:  Officer Alexandra Cole with the Plano Police Department, Special Agent Aaron Covey with the Federal Bureau of Investigation, Captain Greg Stark with the Fannin County Detention Center, Detective Catherine Foreman with the Plano Police Department, and representative Christian Putnam from the Frisco Gun Club in Frisco, Texas.

THE COURT:  Members of the panel, do any of you or a member of your family know any of the individuals Ms. Miller just referenced?  You can continue.

MS. MILLER:  Thank you, Your Honor.  Chanjian also known as Jason Hsu from Plano, Texas, Robberta Kahn also known as Ember also known as Scarecrow.  Officer Brian Marthiljohni from the Plano Police Department, I believe that's sergeant, Selena Rose McCombs also known as Harley and Officer Jesse Muse with the Plano Police

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 48 of 216 PageID
#: 2525
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

48

Department.

THE COURT:  Members of the panel, do any of you or members of your family know any of the individuals Ms. Miller just referenced?  You can proceed.

MS. MILLER:  Detective Jeff Rich --

PROSPECTIVE JUROR:  Panelist 58.  I don't know him personally, but I think I met Officer Cole from the Plano Police Department in a prior jury selection.

THE COURT:  So you don't know him.

PROSPECTIVE JUROR:  Not personally.

MS. MILLER:  Your Honor, Officer Cole is a female, Alexandra.

PROSPECTIVE JUROR:  That's someone different.

THE COURT:  All right.  Thank you, No. 58.

MS. MILLER:  Detective Jeffrey Rich with the Plano Police Department.  Detective Steven Sanders with the Plano Police Department.  Representative Jim Ryan with Securus Technologies, LLC.  Marie Kilian with the Texas Workforce Commission.  Special Agent Mark Van Horn with the FBI.

THE COURT:  Thank you, Ms. Miller.  Members of the panel, does anyone or a member of your family know any of the individuals Ms. Miller just referenced?  You can proceed.

MS. MILLER:  Thank you, Your Honor.  The

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 49 of 216 PageID
#: 5526
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

49

victim known as Alex or Alexandra, also known as Kimi, also known as Zantanna, also known as Zatara.  The victim known as Angelina also known as Red.  The victim known as Annie also known as Kikiyo.  The victim known as Emma also known as Leopard or Lyssa the Leopard and the victim known as Justice also known as Canary.

THE COURT:  Members of the panel, do any of you or any member of your family know any of the individuals who Ms. Miller just referenced?  You can proceed.

MS. MILLER:  And, finally, Special Agent Connor Wanderscheid with the FBI and the witness known as Siena.

THE COURT:  Members of the panel, do any of you or any family member know the individuals just referenced by Ms. Miller?  Thank you.  I don't think, counsel for the defense, I don't think we have any more names to read, correct?

MR. LINDER:  Correct.

MR. DE LA GARZA:  Correct, Your Honor.

THE COURT:  Thank you, counsel.  So members of the panel, I need to ask you whether any of you know either me, the presiding judge, any member of the court staff who I have introduced to you or anyone else that you see in the courtroom today other than your

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 50 of 216 PageID
#: 2527
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

50

prospective jurors.  So I need you to identify whether you know me, court staff, anyone else that you see in the courtroom today other than your prospective jurors.

Now I would ask you to please take a moment, look around at all your prospective jurors that are here with you and let me know if any of you knows any other member of this panel of the prospective jurors.

Thank you.  Ladies and gentlemen, the next question I have is going to concern prior jury service. And the question is whether you have ever served as a juror, not like just showing on up a panel, but actually served on a jury, served as a juror in a criminal or a civil case or as a member of a grand jury in federal or state court.  And if you have, I will ask you to stand and again we will begin with your panelist number, but I'm going to want to know whether you reached a verdict in that case, if so, what the verdict was and whether you served as the foreperson.  So again this is serving as a juror or on a grand jury.  Anybody have that experience?

PROSPECTIVE JUROR:  No. 5.  I want to say it was about five to six years ago.  It was in Dallas, Texas.  I served for four days.  And it was -- I don't know exactly how I would word it.  But the Defendant lost.

THE COURT:  So did the jury did reach a

51

verdict in the case?

PROSPECTIVE JUROR:  Yes, sir.

THE COURT:  Do you remember, was it a civil?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Was it civil or a criminal case, do you recall?

PROSPECTIVE JUROR:  Civil.

THE COURT:  And were you the foreperson?

PROSPECTIVE JUROR:  I was not.

THE COURT:  Anything about that experience as a juror that you think would affect your ability to be fair and impartial to the Government and the Defendants in this case?

PROSPECTIVE JUROR:  No, sir, Your Honor.

PROSPECTIVE JUROR:  No. 16.  I was fresh out of college in '97.  And I was on a jury for a civil case in Dallas with the dog and the judgment was for the Plaintiff for damages.

THE COURT:  And were you the foreperson?

PROSPECTIVE JUROR:  No, Your Honor.

THE COURT:  Anything about that experience of serving on that civil jury that you think would affect your ability to be fair and impartial to the Government and the Defendants in this case?

PROSPECTIVE JUROR:  No.

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 52 of 216 PageID
#: 2529
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

52

THE COURT:  Thank you.

PROSPECTIVE JUROR:  No. 23.  I served with Denton County.  Case came to a close right after they seated the jury.

THE COURT:  So you never had to reach a verdict.

PROSPECTIVE JUROR:  Never reached a verdict.

THE COURT:  Is there anything about that experience you think would affect your ability to be fair and impartial to the Government and to Defendants in this case?

PROSPECTIVE JUROR:  No, sir.

THE COURT:  Thank you.

PROSPECTIVE JUROR:  No. 29.  Did a DUI case and it was found guilty.

THE COURT:  So this DWI case your jury you were on found the Defendant guilty.  Were you the foreperson?

PROSPECTIVE JUROR:  No.

THE COURT:  And anything about that experience in this DWI case that you think would affect your ability to be a juror or to be fair and impartial to the Government and the Defendants in this case?

PROSPECTIVE JUROR:  No, sir.

THE COURT:  Thank you.

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 53 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#. 2530

53

PROSPECTIVE JUROR:  No. 44.  Denton County, criminal case, sexual assault.

THE COURT:  Did you reach a verdict?

PROSPECTIVE JUROR:  Yes.

THE COURT:  And what was the verdict?

PROSPECTIVE JUROR:  Guilty.

THE COURT:  Were you the foreperson, sir?

PROSPECTIVE JUROR:  Yes.

THE COURT:  And anything about that experience on that jury and being a foreperson in that criminal case that you think would affect your ability to be a fair and impartial juror for the Government and the Defendants in this case?

PROSPECTIVE JUROR:  No, sir.

THE COURT:  Thank you.

PROSPECTIVE JUROR:  No. 47.  I served in a trial in a DUI.  We convicted him of guilty.

THE COURT:  Were you the foreperson?

PROSPECTIVE JUROR:  No.

THE COURT:  Anything about that DUI case experience that you think would affect your ability to be fair and impartial to the Government and Defendants in this case?

PROSPECTIVE JUROR:  No.

THE COURT:  Thank you.

PROSPECTIVE JUROR:  No. 48.  I was a juror in Collin County for a case of rental dispute.  The renter was mad about the landlord's process of charging her for the remainder repairs on the home so it didn't really come out to anything so I was done with it that day.

THE COURT:  So did you reach a verdict or they settled?

PROSPECTIVE JUROR:  No.

THE COURT:  Anything about that experience that you think would affect your ability to be fair and impartial to the Defendants and the Government in this case?

PROSPECTIVE JUROR:  Well, between both parties I mean it was just a waste of time.  I see a landlord that's renting property not even worth renting and I see him renting to people that are on Section 8 which they really -- if you got four kids and you live in a home how are you going to take care of the home if it's already beat up.  So just one of those things.

THE COURT:  It sounds like your impressions in that civil case wouldn't impact your ability to be fair and impartial in this case.

PROSPECTIVE JUROR:  Well, it is not going to impact it.  It's just my judgment on which way to go with it.  To me it wasn't fair either way.  At the same time

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 55 of 216 PageID
#: 2532
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

55

just wasted money.

THE COURT:  All right.  Sir, that was a civil case, correct?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Do you understand we're in a criminal case.  You have heard what the case is about.

PROSPECTIVE JUROR:  Yes, I heard what the case is about.  But I don't understand all the hoopla with it all, different names and this and that and the numbers, so to me it's just a bunch of numbers and names so I really don't understand.

THE COURT:  Well, we are at the commencement of this process and you heard me say this earlier, but I want to just repeat and get your answer, which is when we talk about wanting fair and impartial jurors for this trial, as I mentioned this is going to go into next week. We are looking for people who are going to be willing to hear all the evidence, keep an open mind and follow the law as I explain it to you.  Do you think you will be able to do that?

PROSPECTIVE JUROR:  Not really because I have watched too much news on TV.  I see all the stuff that's going on in the world today and I feel that both sides really need to be looked at besides just saying one side is good, one side is bad.  So it is a little bit more

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 56 of 216 PageID #: 2533
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

56

deeper to get into than trying to find out if somebody is bad or right.  People out there.  Not everybody is a good angel.

THE COURT:  We are going to talk about the Government's burden of proof in this case and I may come back to you, the lawyers may come back to you because we are going to talk about what the burden of proof is and we are going to talk about more how the trial is going to go and we may come back to you and visit with you more on this topic.

PROSPECTIVE JUROR:  All righty.  Thank you.

PROSPECTIVE JUROR:  No. 58.  I was on a jury in Dallas County, DUI, and resulted in a guilty conviction.  I was not the foreman.  Then later I was also on a jury in Collin County, armed robbery.  Again it was a guilty conviction and I was not the forearm there either.

THE COURT:  So your experience in those prior criminal cases, sir, do you think they would affect your ability to be a fair and impartial juror to the Government and Defendants in this case?

PROSPECTIVE JUROR:  No.

THE COURT:  Thank you.

PROSPECTIVE JUROR:  Panelist No. 66.  I was on a jury in Dallas County for traffic violation, traffic

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 57 of 216 PageID
#: 2534
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

57

accident.  They were found guilty.  I was not the foreman.

THE COURT:  Anything about that experience that would affect your ability to be fair and impartial to the Government and Defendants in this case?

PROSPECTIVE JUROR:  No.

THE COURT:  Thank you.  Is there any of you who have been on a panel like this before where they were selecting jurors for a federal criminal jury trial, this is just for a federal criminal trial, where you were on a panel like this, but you were not selected for the jury. Anyone ever had that experience?  As I just mentioned to panelist No. 48, I am going to talk a bit with you about the burden of proof in this case.  The Government has the burden of proof.  That means the Government must prove the allegations against the Defendants beyond a reasonable doubt.  It is not necessary that the Defendant's guilt be proved beyond all doubt or beyond any possible doubt.

A reasonable doubt is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case.  Proof beyond a reasonable doubt, therefore, is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 58 of 216 PageID
#: 2535
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

58

of your own affairs.  Do any of you have a problem with the concept of beyond a reasonable doubt?

If the Government fails to prove the allegations of the indictment beyond a reasonable doubt, the jury cannot find the Defendant guilty.  Do any of you feel that you cannot hold the Government to the standard of proving its case beyond a reasonable doubt?  If the Government fails to convince you that the allegations of the indictment are true, would any of you have any difficulty finding the Defendants not guilty?

Would any of you tend to give any greater weight or credibility, no matter how slight, to the testimony of a prosecution witness merely because he or she is testifying on behalf of the Government over that of the Defendant or his witnesses?

Ladies and gentlemen, there are two kinds of evidence in a case, direct evidence and circumstantial evidence.  Direct evidence is the testimony of one who asserts actual knowledge of a fact such as an eyewitness. Circumstantial evidence is proof of a chain of facts and circumstances indicating that the Defendant is either guilty or not guilty.  For example, if a dog runs through fresh snow and someone sees the dog run through the snow and that individual is later called to testify that she saw the dog run through the fresh snow, that would be

eyewitness testimony or direct evidence that the dog ran through the snow.

However, if an individual arrives after the dog has run through the snow and sees the paw prints left in the fresh snow and that individual is later called to testify that he saw paw prints in the fresh snow, then that would be circumstantial evidence that an animal had run through the snow.  The law makes no distinction between the weight you may gave to either direct or circumstantial evidence.  Do any of you feel that you can not give as much weight to circumstantial evidence as you do direct evidence?  Do any of you feel that you could not rely on circumstantial evidence that you believe beyond a reasonable doubt to find the Defendant guilty?

Do any of you know that you would require the Government to present an eyewitness to an event before you could find the Defendant guilty?

Ladies and gentlemen, a criminal Defendant in our criminal justice system has the right not to testify. You may have commonly heard this referred to as the right against self-incrimination.  If a criminal Defendant chooses to exercise his or her right not to testify, you cannot consider that for any purpose.  Is there anyone here who would hold it against a criminal Defendant if he or she were to invoke his or her right not to testify?

60

Would any of you feel like you had to hear from the Defendant in order to find him or her not guilty of the charges against them?

On the other hand, if a Defendant does give up his or her right not to testify and does testify, you cannot give that person any extra credit because you know they did not have to testify and chose to give up that right.  Is there anyone here who would be more inclined to believe a Defendant who chooses to testify solely because they have a right not to testify?

Members of the jury panel, in the federal criminal justice system unlike courts in the State of Texas, it is the Court and not the jury that decides punishment in a criminal case.  That occurs only after a presentence investigation is done taking into account matters that are relevant only to sentencing.  So the jury decides the facts to determine if the United States has proven the charges beyond a reasonable doubt.  Should the jury find that the United States has proven its case, the jury will have no role in assessing punishment.  You may not let any sympathy or compassion for a Defendant which may be appropriate for sentencing affect your decision in deciding whether the United States has proven its case.  Is there anyone here who has any difficulty with that concept?

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 61 of 216 PageID
#: 2538
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

61

Is there anyone who would vote not guilty no matter what the evidence indicates because of the possibility that the Court may impose the sentence? Ladies and gentlemen, as you heard when Ms. Miller was going through the indictment, Count 2 of the Second Superseding Indictment charges the Defendants with the criminal offense of conspiracy to commit a crime.  So a conspiracy is an illegal agreement.  Conspirators do not always enter into formal express agreements.  Would anyone require the United States to prove this was an express agreement?  Does everyone understand that an illegal agreement can be proven by circumstantial evidence?  Once a person knowingly joins this partnership in crime, that person or co-conspirator is responsible for the acts of their co-conspirators committed in furtherance of the conspiracy if such acts were reasonably foreseeable.  Would any member of the panel have difficulty applying such a standard?

In a criminal conspiracy, the illegal agreement in and of itself is a crime.  An individual does not personally have to commit an act in furtherance of the conspiracy in order to be guilty of a conspiracy. For example, in a bank robbery conspiracy it is possible for one to be a co-conspirator if with the intent that a bank robbery be committed he merely draws a floor plan of

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 62 of 216 PageID #: 2539
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

62

the bank, notes surveillance camera postings and gives the floor plan to his associates who he knows intend to use it to rob the bank.  Does anyone disagree with that concept?

Additionally, under the law of conspiracy if a Defendant intentionally and knowingly joins in a plan or scheme on one occasion, that is sufficient to convict him for conspiracy even if the Defendant had not participated before and even if he only played a minor part.  So even if the Defendants or a Defendant only participated one time and played a minor role, they could be found guilty of conspiracy.  Does anyone disagree with this concept?

Ladies and gentlemen, at this time I'm going to have the lawyers ask some questions of you.  We are going to start with the Government.  Ms. Miller or Ms. Oliver, you can proceed.  You have one hour.

MS. OLIVER:  Thank you, Your Honor.  May it please the Court, counsel, good morning, everybody. Y'all are so quiet.  We are not going to be quiet any more, okay?  Welcome to voir dire.  Commonly -- I apologize, Your Honor.  May the Government be able to freely move about the well of the court?

THE COURT:  Yes.

MS. OLIVER:  Thank you, sir.  So now voir dire is typically called voir dire as you heard the judge say,

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 63 of 216 PageID
#: 2540
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

63

but here in Texas we call it voir dire, okay?  My name is Chalana Oliver.  I'm an Assistant United States Attorney with the Department of Justice along with my co-counsel here, Ms. Miller.  I want her to just stand here very briefly.

Now, you're not losing your mind.  You don't have to adjust your TV sets.  We have on the same suit. That is not by design.  So I just wanted to point that out in case that y'all think that something is wrong here.  Voir dire is one of the best processes because this is -- you are very quiet, but this is our opportunity to get to know one another.  I like to call it, has anyone ever done speed dating before?  We are kind of speed dating here.  You have got 68 of your new best friends and welcome, folks, to the premium seating here.  But I want you guys to talk because this is -- we call it jury selection, but I want to let you in on a little secret.  It's actually jury de-selection.  So the quieter you are, the more likely you are to get picked. Just put that in the back of your mind.

Also, His Honor Judge Jordan talked about if anybody has an emergency.  I know you guys are absolutely thrilled to be here in federal court today.  We want to make this the most comfortable process as we can.  We really want to understand where you stand on a range of

64

topics.  This is a very serious case as you heard AUSA Miller read the indictment and so we owe it to the Government and also to the Defendants to get the best, most fair and impartial jury possible.  So I want y'all to let your guards down.  I know it's early.  I know it's cold outside.  But I want y'all to get comfortable and feel comfortable to talk to us, let us know your true thoughts and ideas.  There is no such thing as a wrong answer.

I have got some ground rules for y'all.  Speak up, don't be shy.  I am getting old so I need to know what your juror number is.  So please let us know what your juror number is as Judge Jordan had asked.  Also, there are no wrong answers.  There's no wrong answers for what you think or how you believe about something, so please feel free to let us know what you think.  And also, I told y'all the secret so I am going to reiterate it.  The quiet ones usually get selected so I need you to speak up.

AUSA Miller and I represent the United States.  You may hear us refer to ourselves as United States or the Government.  But we are right here in Texas.  Our office is right here in Plano.  We live, work and play in the Dallas/Fort Worth area so we are Texans just like all y'all .  All right.  Y'all ready?  Y'all promise me you

Case 4:23-cr-00268-SDJ-BD     Document 276     Filed 03/02/26     Page 65 of 216 PageID
#: 2542
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

65

are going to speak up?  I see so many of you smiling here today.

You heard Judge Jordan talk about the phase that we are in.  We are in voir dire.  And so the second phase is the guilt/innocence phase and the third phase is the sentencing phase.  His Honor talked about the fact that none of you will be able to sentence the jurors -- or the Defendants here.  Does anybody really not feel comfortable about that?  I know Judge Jordan talked about that, but is anybody saying, you know, I heard what the judge had to say, I hear what you have to say, but honestly if I can't be part of the whole process and sentence the Defendants if we get to that point, I just don't think that I will be able to do that.  No?  Everybody okay with that?  Seeing no hands.

Also, the next thing I wanted to let you know just preliminary things is that once you get to the premium seating, so once you are selected you will take an oath and be asked to render a true verdict according to the law in this case and based upon the evidence which the judge will give to you once we get to that point.

Now, judge also talked about the Fifth Amendment Right for the Defendant not to testify.  You all see the Defendants sitting over there.  They were introduced by their counsel.  Let's be honest.  Is

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 66 of 216 PageID #: 2545
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

66

anybody saying I know that judge asked this question, but I am just looking over there. You are looking at the Defendants. We are here in federal court. We have got all this hullabaloo going on. Certainly they must have done something to get here. How many of y'all truthfully feel that way? Could you please stand and tell me your juror number, please.

PROSPECTIVE JUROR: No. 38.

MS. OLIVER: Tell me what you are thinking, sir.

PROSPECTIVE JUROR: From your summation, I mean with all the nicknames and the convictions against them, I mean looking at my life it seems like you run with the wrong crowd you are doing the wrong thing. So I am looking at this like kind of already over I mean with all those aliases and those names and stuff, I mean probably run in some bad circles.

MS. OLIVER: Let me follow up with you. Just to be clear, the Defendants right now are cloaked in the presumption of innocence. You all have heard this term innocent, presumed innocent until proven guilty. Now make no mistake, we, the Government, do intend to prove the counts beyond a reasonable doubt; however, right now as they sit they are cloaked in the presumption of innocence. So that means that we have not proven

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 67 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2544

67

anything at this point.  So what would the Defendants be -- if we had to render a verdict today, what would they be?

PROSPECTIVE JUROR:  From what I have heard already, just what you said already?

MR. OLIVER:  That's just the indictment.

PROSPECTIVE JUROR:  I know it is.  Like I said, I am going from my thought process to this case is looks like you run with the wrong people and then someone accuses you of something probably.

MS. OLIVER:  Just to be clear, so fair to say that right now you're thinking that the Defendants are guilty of something without having heard any evidence?

PROSPECTIVE JUROR:  I am leaning that way.

MS. OLIVER:  Does anybody -- I want to clear up some things here.  There has been no evidence presented thus far.  The only thing that's been presented to you all is the indictment which is notice of our intention of charges that they were indicted for.  That is not presumption of guilt, that is not evidence, that is not anything.  But Juror No. 50?

PROSPECTIVE JUROR:  50.  Same as No. 38.  If someone is in this position after hearing the indictment you must have done something to end up here.  I could be wrong, but this is how I feel.

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 68 of 216 PageID
#: 2545
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

68

MS. OLIVER: After -- let's say that after we have presented all of the evidence to you and you have heard it and you believe it, you're saying that before we do anything that you believe already that both Defendants are guilty of crimes. We have proven nothing to you right now.

PROSPECTIVE JUROR: I am not saying they are guilty. I am saying they must have done something wrong, ended up with the wrong people to be in this position.

MS. OLIVER: So let me ask you this. Could you be fair and impartial and wait until you've heard all of the evidence before you make a decision about whether or not the Defendants are guilty beyond a reasonable doubt of the crimes as they are alleged?

PROSPECTIVE JUROR: I don't know if I am eligible to make decisions like that.

MS. OLIVER: Well, you're lucky because you are a juror so you are eligible. Let me give you an example. How many of y'all have got on an airplane before? I know that the judge asked how many had an emergency. How many of you wish you may have an emergency right now? Maybe you wish you had plane tickets. So we get on the flight. We are going to go somewhere fun. Juror No. 22, give me somewhere fun to go.

69

PROSPECTIVE JUROR:  Grand Caymans.

MS. OLIVER:  So all 69 of us, the court is going to pay for us, we are all going to go to the Grand Cayman Islands.  Sound great?  That sounds great.  So we get on the plane, and Juror 50, you go up to the pilot and you say hey, pilot, we are going to the Grand Caymans.  Are you going to be able to land this plane?  We are going over water.  Are you going to be able to ensure us that you can land this plane safely?  And the pilot looks at you and he says well, Juror No. 50, not quite sure.

How does that make you feel?  Are you getting on that plane?  Me neither.  You shook your head no.  So we need you all to say yes or no for sure about where you are with these issues.  So I want to come back to you one more time.  So after, Juror 50, can you ensure us that you will wait to hear all of the evidence presented against the Defendants before you render a verdict as to whether or not they are guilty or not?

PROSPECTIVE JUROR:  Yes.

MS. OLIVER:  Thank you for being honest.  I just want you all to be honest.  If you don't think you can do that, that's fine.  No. 58, what say you?

PROSPECTIVE JUROR:  So I kind of align a little bit with 38 in that when the indictment was read I

70

do get kind of a bad first impression.  However, I'm an engineer by nature so I will look at facts and apply them to the law as you guys show how the law may apply.  But I think I still will be impartial, but I do have that first impression that wasn't so good.

MS. OLIVER:  So understanding about your characterization about impartiality, can you be fair?  So let me ask you this.  We have presented no evidence as of right now as to whether or not the Defendants are guilty.  All you have heard is an indictment.  As it stands right now, are the Defendants innocent or guilty?

PROSPECTIVE JUROR:  They are innocent until proven guilty.

MS. OLIVER:  And so can you be fair and wait until you have heard all of the evidence presented before you make a decision about the guilt or innocence of the Defendants?

PROSPECTIVE JUROR:  Yes.

MS. OLIVER:  Thank you.  No. 65.

PROSPECTIVE JUROR:  Hello.  I basically agree with 38 and 58 over here.  It seems like this is really suspicious with all the nicknames and everything surrounding that situation just from what I am told.  I don't want to say maybe, but --

MS. OLIVER:  So suspicion is one thing, but I

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 71 of 216 PageID
#: 2548
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

71

just want to pin you down here, Juror No. 65. So suspicious is one thing. But guilt/innocence is a whole different level. Would you agree with that?

PROSPECTIVE JUROR: Yes, but I am more inclined to think that they are guilty.

MS. OLIVER: So as it stands right now not having heard any evidence against the Defendants, it's your position that the Defendants are guilty right now; is that correct?

PROSPECTIVE JUROR: Yeah.

MS. OLIVER: Thank you. Anybody else? Juror No. 54.

PROSPECTIVE JUROR: I don't think it is a hundred percent guilt, but if you are looking at this as like the scales of justice, after what I have already heard I feel like the defense might have more work to do right now. I don't think it's 100 percent guilt, but I do feel like there's definitely where there is smoke there is fire. And I'm going to be impartial and open to hearing everything. I just feel like now there is more weight on them. I wouldn't say it's 50/50 right now based on what we have already heard.

MS. OLIVER: Let me just let everybody know. So the Government has a burden as Judge Jordan mentioned to prove our case beyond a reasonable doubt. You

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 72 of 216 PageID
#: 2549
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

72

remember when he talked about that?  And what that means is it doesn't mean it is beyond all doubt, right?  But it does mean beyond a reasonable doubt.  And so the Government actually, we, the United States, have the burden to prove our case beyond a reasonable doubt.

And so my question again to you, No. 54, is that although you have voiced some concerns about nicknames and the indictment, do you understand that the Government still right now has not proven its case beyond a reasonable doubt?  You do understand that?

PROSPECTIVE JUROR:  Yes.  I didn't say anything about nicknames or anything.  I just feel like based on just the initial -- I can't remember what that is called, the initial piece, I feel like they are going to have more work to do to try to even the scales at this stage.  I will still be impartial, but I feel like the scales are leaning one way more already.

MS. OLIVER:  Thank you.  One more question for you before you sit down.  See what happens when you speak up, y'all?  Speak up though, please.  Without having heard any evidence as it stands right now, is it fair to say are you able to wait until you have heard all the evidence presented against the Defendants before you render a verdict as to their guilt or innocence?

PROSPECTIVE JUROR:  Yeah, I will still wait.

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 73 of 216 PageID
#: 2550
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

73

MS. OLIVER:  But as it stands right now do you think that they are guilty of these crimes without having heard anything?

PROSPECTIVE JUROR:  It depends.  You mean beyond a reasonable doubt?

MS. OLIVER:  That's our standard.  So if we are on that plane, we are going to the Caymans, are we going to be able to land this plane or are we not sure?

PROSPECTIVE JUROR:  I can still -- I am not assigning guilt yet.  We still got to listen to the evidence.

MS. OLIVER:  Thank you.  Anybody else?  No. 30.

PROSPECTIVE JUROR:  No. 30.  So I feel it's hard for me to balance between the feeling of things and that kind of crimes, you know, balance it with the facts that they got and judge on it.  So something feeling, something hard for me to call it.  You get my point?

MS. OLIVER:  Sure.  Well, we are kind of -- this is kind of not fair, guys, because y'all haven't heard anything yet.  And so if you get to the premium seating over there where our good brethren are in the comfy seats, you will get to hear all of the evidence. So my question to you, No. 30, is as it stands right now looking at the Defendants are you saying that without

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 74 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2551

74

having heard any evidence that you think that they are guilty?

PROSPECTIVE JUROR:  No, I am not saying that, but I have -- it's hard for me as a person to keep away the feeling, the emotion that I have about the case and how can I judge fairly after that.  This is what I am saying.

MS. OLIVER:  But can you promise us that you can be fair and impartial and wait --

PROSPECTIVE JUROR:  I will do my best.

MS. OLIVER:  Ms. Ruth is taking down what we are saying so I know we are conversating, but just to make sure the record is clear, can you wait until you have heard all the evidence and then render a true verdict based on your thoughts of the presentation of evidence?

PROSPECTIVE JUROR:  The challenge I am facing between the decision for that I am thinking about it, the emotion.  This is the challenge, but I will do my best.

MS. OLIVER:  Thank you, 30.  Anybody else? Now we are talking, y'all.  There's no trap doors.

PROSPECTIVE JUROR:  No. 55.  I just wanted to say that I think they wouldn't be here if there wasn't something wrong done.  I believe in law enforcement and I believe in all the evidence that have brought them to

court.  I am not saying that I wouldn't be impartial based on the evidence given later in trial, but currently I sway one way.

MS. OLIVER:  So as it stands right now you are looking at the Defendants over in their chairs and you are thinking that they are guilty without having heard any evidence at all; is that correct?

PROSPECTIVE JUROR:  Not without reasonable doubt, but based on the indictment and based on my beliefs that they wouldn't be here without having done something, yes.

MS. OLIVER:  Can you wait until the Government and the Defendants have presented all of their evidence before making a decision about the Defendants guilt?

PROSPECTIVE JUROR:  Yes.

MS. OLIVER:  Thank you.  Anybody else?  Premium seating finally.  Juror No. 11, what say you, sir?

PROSPECTIVE JUROR:  No. 11.  I think the statement by 38 weighs heavily on my view as well.  And I missed a chance when asked if a family member.  I didn't hear about close friends who have had either similar experience and if it may affect how you think about it.  I currently have a friend who went through the same I was able to follow it very closely because he was a friend

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 76 of 216 PageID #: 2533
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

76

and ended up with guilty.

MS. OLIVER:  You had -- thank you for your candor.  You said you had a friend who went through the same.  Was he or she convicted of a crime?

PROSPECTIVE JUROR:  Yes.

MS. OLIVER:  What was the crime they were convicted of?

PROSPECTIVE JUROR:  Interstate sex commerce.

MS. OLIVER:  Was it in federal court or state court?

PROSPECTIVE JUROR:  State, in Tarrant County.

MS. OLIVER:  And so fair to say that those feelings associated with that case -- let me ask you, your friend was convicted, correct?

PROSPECTIVE JUROR:  Yes.

MS. OLIVER:  Those feelings are weighing on your mind right now, fair to say?

PROSPECTIVE JUROR:  Yes, they are very, very current.  Just last year.

MS. OLIVER:  Current.  Would that conviction affect your ability to be fair and impartial in this case?

PROSPECTIVE JUROR:  I would say no, but as a human it is possible.  They are very fresh and I know all the details that he went through since I was following as

a friend.

MS. OLIVER:  Are you able to set aside those feelings, to listen to all the evidence here and render a fair and impartial verdict?

PROSPECTIVE JUROR:  Yes.

MS. OLIVER:  Let me go back to, since you raised two issues, that you agree with 38 as it relates to the Defendants right not to testify and whether or not they are guilty.  So as it stands right now you understand that the Defendants have not been convicted of anything?

PROSPECTIVE JUROR:  Yes.

MS. OLIVER:  Tell me your feelings and why you are aligned with No. 38.

PROSPECTIVE JUROR:  Connecting to my friend's case I was shocked that he was even mentioned and the fact that he was even mentioned meant he did something. So following through that's when evidence came up and he was convicted of it.

MS. OLIVER:  Thank you.  As it relates to 38, one more question.  As it stands right now looking at the Defendants sitting in that chair do you understand that they are presumed innocent, correct?

PROSPECTIVE JUROR:  Yes

MS. OLIVER:  Are you thinking that they are

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 78 of 216 PageID
#: 2555
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

78

guilty because they are just here today?

PROSPECTIVE JUROR:  No.

MS. OLIVER:  Thank you.  Anybody else?  I want to touch back on what Judge Jordan talked about again as it relates to direct versus circumstantial evidence.  And I am touching back on this because I have a great example I want to give.

So let's say that I have always loved Ms. Miller's shoes.  She has the best shoes ever and I figured I'm going to take my chance, I'm going to get those shoes.  So after this trial is over we go outside.  It's dark outside and I decide to take my -- I'd never, never, ever do this, but take my big bag and I'm going to hit Ms. Miller with it.  She falls and I finally got my chance to get her shoes.  And I run away and we don't do it on these grounds because there is cameras everywhere.

I want to find a good spot where I can finally get those Christian Louboutin shoes that she always wears.  Now, how many of y'all agree that I, I would never do this, that I have committed a crime?  Theft, right?  Yes.  Great job.  Now, what kind of evidence would you all expect to see?  Anybody?  Let me pick on somebody.  No. 21, you heard the hypothetical, correct?  What kind of evidence would you expect to see in a case like that?

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 79 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2556

79

PROSPECTIVE JUROR:  The camera footage to make sure that you actually committed the crime.

MS. OLIVER:  Remember I told you I didn't do it here in the parking lot.  What else would you want to see?

PROSPECTIVE JUROR:  I would like to get Ms. Miller's side of the story.  If she told me you took her shoes and she don't have her shoes anymore, she has proof, that's what I would like to see I guess.

MS. OLIVER:  Witness statement.  Thank you. Gentleman in the back with the red sweater on.  Assist me with your number, sir?

PROSPECTIVE JUROR:  43.

MS. OLIVER:  Good morning.

PROSPECTIVE JUROR:  So if you were to hit her with that bag, I would most likely see injury, bruising, and there would most likely be photos that would attest to the attack.

MS. OLIVER:  Thank you.  Juror No. 7, you laughed at my joke so what do you think?

PROSPECTIVE JUROR:  There is a couple of things that I can see on this one.  If she for example doesn't have shoes on and you are running around with the shoes, do you have a receipt for your shoes, does she have a receipt for the shoes.  So that's some evidence

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 80 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2557

80

that you can say okay, who is right here.  This is America.  Everybody has a cell phone so I believe that there is somebody that sees some of the stuff and that is another option.

MS. OLIVER:  Thank you.  He is getting sophisticated, cell phone evidence.  No. 2.  We locked eyes so congratulations.  What do you think?

PROSPECTIVE JUROR:  Just my first thoughts would be are you the same size shoe?  I kind of look at that.  And then hear both parts.

MS. OLIVER:  One thing I haven't heard.  Would anybody look for any other witnesses who were there who saw me do this?  Would anybody want to see that?  Yes. No. 3, No. 6, Juror 22, Juror 66.

Now, possible that we may not have every single piece of evidence that we are looking for, right, Juror No. 56?  Yes.  I ask you to speak up so the court reporter can hear what you are saying.

PROSPECTIVE JUROR:  Yes.

MS. OLIVER:  So is it possible that the direct evidence that you all were looking for like the missing shoes, what if that's not there?  What if you just have different pieces of evidence like a jigsaw puzzle.  Is that the same as the missing shoes in your mind?

PROSPECTIVE JUROR:  Not concrete evidence.

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 81 of 216 PageID
#: 2558
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

81

MS. OLIVER:  You heard Judge Jordan say that direct evidence, missing shoes, receipts and circumstantial evidence, pieces of a jigsaw and some of you all young people, there is such a thing as a jigsaw puzzle and you have the little pieces and you put the little pieces together, but one piece in and of itself may not tell you the same story.

Juror No. 18, you heard Judge Jordan say, though, that direct evidence is just the same as circumstantial evidence.  So if I don't give you the shoes or the receipt or the video camera, but I have witness statements, different pieces, that in and of itself may not show, but you put it all together can show that I committed that crime, are those pieces of evidence just the same?

PROSPECTIVE JUROR:  Yes.

MS. OLIVER:  Great.  Juror No. 18 says yes. Does everybody feel like I hear what you are saying, Ms. Oliver, about direct evidence and circumstantial evidence being treated the same.  But I need those shoes.  I need the cell phone.  I need the video surveillance.  Juror No. 12, what do you think?

PROSPECTIVE JUROR:  I think if all the pieces of the puzzle align then you can convict and say that you stole the shoes.

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 82 of 216 PageID
#: 2559
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

82

MS. OLIVER:  Because under the law you are required to hold direct evidence and circumstantial evidence the same.  Thank you, sir.  Anybody disagree with that though?  Juror No. 22.

PROSPECTIVE JUROR:  22.  So to answer your direct question, I don't disagree.  My statement I want to make was while I believe the direct and circumstantial evidence is even, I internally I would hold more weight to the number of circumstantial evidence provided if direct evidence wasn't there.  So for example, having eyewitness account, having transactions, billing statements, maybe a missing item that you left behind in the scene that would tie it back to you, I believe that would -- the numerical evidence of circumstantial evidence would be needed more if there wasn't direct evidence presented.

MS. OLIVER:  Let me ask you this.  If the Government had no direct evidence at all and the case was purely circumstantial, would you be able to follow the law and assess the evidence based on circumstantial evidence alone?

PROSPECTIVE JUROR:  Yes.

MS. OLIVER:  Would you put any more weight or burden, an additional burden on the Government because we didn't have any direct evidence?

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 83 of 216 PageID
#: 2560
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

83

PROSPECTIVE JUROR:  No.

MS. OLIVER:  Look, I understand we are in the CSI age and the best episode I remember is when they had a guy's eyeball and they put it on a little scanner and it told you the guy's memories.  Like isn't that insane?  This is not it.  We are in the real world.  So that's why there's the same weight that is given to direct versus circumstantial.  Is everybody okay with that?  Any questions or any concerns about that so far?  No. 28.  Good morning.  What is your thought, direct versus circumstantial evidence.

PROSPECTIVE JUROR:  I think as long as you have -- you're able to make the picture with that circumstantial evidence it would be quite easy to convict with limited evidence.

MS. OLIVER:  Juror 37?

PROSPECTIVE JUROR:  37.  I put together jigsaw puzzles.  That's one of my hobbies.  So thinking about the circumstantial, you look at a jigsaw puzzle.  Even if you miss one piece of the puzzle, you can still see the whole picture.

MS. OLIVER:  Thank you.  Y'all are smart so you all get it.  Let's move on.  Let's talk about victims.  So we talked about the example of Ms. Miller and my assault and theft on her.  Who can be a victim in

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 84 of 216 PageID
#: 2561
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

84

a case?  Let me ask you a question.  Can a gang member possibly be a victim?  Juror No. 51.

PROSPECTIVE JUROR:  Can you repeat the question.

MS. OLIVER:  Who can be a victim in a case?

PROSPECTIVE JUROR:  Yeah.  Anybody could be a victim.

MS. OLIVER:  Make it a little harder.  What about a serial killer?  Could a serial killer be a victim?

PROSPECTIVE JUROR:  He could be a victim of another serial killer.  Anybody can be a victim to anybody.  It's a chain.  Depends for a specific case. Now we are talking a specific case, there will always be a victim and an offender.

MS. OLIVER:  Thank you.  Anybody disagree? Does anybody disagree with that?  Most everybody in the premium seats are shaking their head yes.  Juror No. 14, thank you.  What do you think?  Who can be a victim?

PROSPECTIVE JUROR:  Anyone honestly.

MS. OLIVER:  Now, let's play with the example a little bit.  So in the case of myself and Ms. Miller, who was a victim in that circumstance?

PROSPECTIVE JUROR:  You took the shoes, right?

MS. OLIVER:  Did I?  Yes.  I did.  I took her

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 85 of 216 PageID
#: 2562
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

85

shoes.  So whose the victim in that case?

PROSPECTIVE JUROR:  She would be the victim.

MS. OLIVER:  Now, let's play with this hypothetical a little bit.  Who has been quiet.  No. 13. Good morning, sir.  Let's play with this hypothetical a bit.  So in a horrible twist of fate as I am running away with Ms. Miller's very expensive Christian Louboutin shoes I now get robbed.  Could I be a victim?

PROSPECTIVE JUROR:  Absolutely.

MS. OLIVER:  Thank you.  Juror No. 4, you are laughing.  You agree with No. 13?

PROSPECTIVE JUROR:  Yes.

MS. OLIVER:  Thank you.  So now, I'm a very, very bad person for doing this though.  Do I still deserve the same justice that Ms. Miller deserves even though I'm the one who stole her shoes?  I waited until the right time to get her in the right place.  I found a perfect opportune time.  Juror No. 34, you are shaking your head.  Do you agree I too can be a victim?

PROSPECTIVE JUROR:  34.  Yes, everyone can be a victim.

MS. OLIVER:  So I think we have hammered this out pretty well.  Now, getting a little bit harder. Imperfect victims.  Is there a such a thing as a perfect victim?  Juror No. 48, what say you?

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 86 of 216 PageID
#: 2565
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

86

PROSPECTIVE JUROR:  I don't know if anybody would be a perfect victim because they have a chance to fight back.  Do they become the person that destroys another person's life because they fought back?  So it is hard to say.  The victim sometimes becomes the winner. You are going to sit there and let them beat on you, you are going to become that victim.  If you don't fight back you might be the person that the law is after.

MS. OLIVER:  Thank you, sir.  Let me give an example.  None of us are perfect, right, except for Ms. Miller.  But no one -- we all fall short of perfect.  And so there may be circumstances where similar to the example that I gave that I had bad intention in my heart and then I too became a victim at some point.

Now, there may be people, would you all agree that in our society, who may not be like us, right, and I'm not going to tell you what that means, but may not be like the rest of us.  They may be on the fringe of society.  They may have gone to jail.  They may have had a bad background.  They may have not had a leg up.  They may have committed crimes before.  And many of you are shaking your heads.  How many of you all, we heard about many of you who said that you had family members and people you know who have been convicted of crimes, right? But in the example that I gave you all, even of myself

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 87 of 216 PageID
#: 2564
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

87

when I robbed Ms. Miller, I too deserve justice. Everybody agreed with that, that I too can become a victim when I was robbed.

Now, I'm going to give you two hypotheticals and we are going to really dig into how you guys feel about it because I am going to test your theories on this.

Let's say we have an 80-year-old, short, little lady who has gone to church her whole life, never done anything wrong. She's walking down the street and then someone comes along and they beat her over the head and they steal her money. Is she a victim? How many of you all by a show of hands would agree with that? Just about everybody. How many of you all would disagree with that?

Now, let's change the example. What if you have someone who is a prostitute and she is walking down the street and she gets hit and she gets robbed? Could she be a victim? Anybody disagree with that? Okay. So everybody understands this concept? Juror No. 31, could you please stand.

Is there any distinction between those two examples?

PROSPECTIVE JUROR: No.

MS. OLIVER: Juror No. 26, any distinction

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 88 of 216 PageID
#: 2505
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

88

between those examples?

PROSPECTIVE JUROR:  No.

MS. OLIVER:  Juror No. 25, how about you, sir?

PROSPECTIVE JUROR:  No, ma'am.

MS. OLIVER:  Juror No. 5, what do you think?
Any distinction between the old lady and the prostitute?

PROSPECTIVE JUROR:  No, ma'am.

MS. OLIVER:  Now, as I stated before, you may
hear from people in this trial who you like, you may not
like.  But because you don't like somebody, Juror No. 47,
I can't see you on the very end, ma'am.  Thank you.
Would you agree that anybody could be a victim?

PROSPECTIVE JUROR:  Yes, anybody could be a
victim.

MS. OLIVER:  Let's play with the hypothetical
a little bit more.  Thank you, ma'am.  Can a person who
committed a crime similar to myself, I told you about a
theft, but what if I told you about a worse crime like
the serial killer?  Can they too be a victim of a crime,
or are you guys thinking I understand what you are
saying, but if you are doing bad things then you kind of
deserve what you got coming to you.  Spent your whole
life doing these things.  Juror 38, you are nodding your
head yes.  Do you agree with me that if you have done bad
things your whole life and something happens to you you

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 89 of 216 PageID
#: 2580
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

89

kind of had it coming?

PROSPECTIVE JUROR:  Goes back to what I was saying earlier about the lowdown you gave on the whole thing.  But grandma could have been walking in a nice neighborhood and the prostitute could have been in a down ally with her friends running around with the wrong people.  I agree that they are both victims at that time, but if you put yourself in the wrong place at the wrong time more times than not, of course if you got 15 aliases following you, probably a pretty good summation that you are in the wrong place at the wrong time doing bad things.

MS. OLIVER:  So are you saying that if you put yourself in a bad situation it is possible that bad things can happen to you?

PROSPECTIVE JUROR:  That's elementary.  That's sophomoric of course.  You could do it tomorrow.

MS. OLIVER:  No. 69, what do you think about that concept?  You agree with Juror No. 38?

PROSPECTIVE JUROR:  Somewhat, but I do believe that anybody could be a victim depending on the place that they are and where they are in life.

MS. OLIVER:  Thank you.  Now, we are getting heavier as we move on, folks.  I want to talk to you all about commercial sex and prostitution.  We are going to

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 90 of 216 PageID
#: 2561
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

90

rip the band-aid off.  Now, when you hear those terms, commercial sex, Juror No. 3, what do you think that means, or prostitution?

PROSPECTIVE JUROR:  Means you are selling a service, commercial means there is an exchange of values of something.  So money most cases, maybe something else, but there's an exchange of values for the service provided.

MS. OLIVER:  And we are all best friends here, and we are getting comfortable with each other, so it's commercial sex, prostitution.  So you said very eloquently an exchange of money for something.

PROSPECTIVE JUROR:  Exchange of value. Doesn't have to be money, maybe they gave you those shoes for that service, something like that.

MS. OLIVER:  No. 1, when you hear prostitution or commercial sex, what exactly does that mean?

PROSPECTIVE JUROR:  Can you repeat that?

MS. OLIVER:  What is prostitution?

PROSPECTIVE JUROR:  Having sex to get the money, but that's because there's a market.

MS. OLIVER:  Because there is a market. Anybody agree with Juror No. 1, commercial sex and prostitution is sex in exchange for money, correct? Anybody disagree with that?  Okay.  So now we have got

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 91 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2508

91

that understood.  Can someone -- let me ask you this.  Tough question.  Do you know anyone who has engaged in or solicited someone else for prostitution or commercial sex?  Anybody?  You don't have to say who.  Yes, No. 10 and 11.  10, I am assuming you are talking about the first cousin, correct?

PROSPECTIVE JUROR:  Yes, ma'am.

MS. OLIVER:  And just to ask you a couple more questions, your first cousin, he was convicted of a sex crime; is that correct?

PROSPECTIVE JUROR:  Yes, ma'am.

MS. OLIVER:  Where was he convicted, sir?

PROSPECTIVE JUROR:  Florida.

MS. OLIVER:  And were you aware of the circumstances of the offense that he was convicted of?

PROSPECTIVE JUROR:  Do I know what he was doing?  Yes, ma'am.

MS. OLIVER:  And is that conviction -- did he go to prison?

PROSPECTIVE JUROR:  Yes, ma'am.

MS. OLIVER:  Is he still there now?

PROSPECTIVE JUROR:  No, ma'am.

MS. OLIVER:  How long ago was that?

PROSPECTIVE JUROR:  Twenty years ago.  He served 15.  He has been out for about five.

MS. OLIVER:  Was that in state court or federal court?  Forgive me if I asked you that before.

PROSPECTIVE JUROR:  You did not and it was federal.

MS. OLIVER:  Do you have strong feelings about what happened to him?

PROSPECTIVE JUROR:  No, he committed a crime.

MS. OLIVER:  He committed a crime and so he went to jail.  Would that be weighing on your mind at all if you are selected, you were listening to the evidence presented in this case?

PROSPECTIVE JUROR:  No, not at all.

MS. OLIVER:  So you are saying you could be a fair and impartial juror?

PROSPECTIVE JUROR:  Absolutely.

MS. OLIVER:  And so Juror No. 8, I want to ask you the same question, sir.  You said that your father was convicted; is that correct?

PROSPECTIVE JUROR:  Yes, that's correct.

MS. OLIVER:  Was that in federal or state court?

PROSPECTIVE JUROR:  State court.

MS. OLIVER:  And did he -- you said that he served prison time.  Is he still there now?

PROSPECTIVE JUROR:  No, it's been about

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 93 of 216 PageID #: 2570
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

93

15 years, I believe, since he has been out.

MS. OLIVER:  This is your father, correct?

PROSPECTIVE JUROR:  Yes.

MS. OLIVER:  Would you say that that conviction would be weighing in your mind as you're going through listening to the trial here?

PROSPECTIVE JUROR:  Not so much the conviction, but what it was for.  I have four kids, three daughters, so I'm aware of how sex trafficking impacts families and things of that nature.

MS. OLIVER:  How does sex trafficking affect families in your opinion?

PROSPECTIVE JUROR:  Just women being forced into it against their will.  I think it would be pretty traumatizing.

MS. OLIVER:  Thank you, sir.  Looking at what Juror No. 8 said about how sex trafficking affects, and I will get with you, Juror No. 68, in just a moment here, hold that thought.  Thinking about what Juror No. 8 was saying about sex trafficking affects families and things of that nature, what if I told you, though, Juror No. 8, that some of the -- let's change the hypothetical.  What if some of the women joined in to participate initially and then as they went forward they learned that what they thought they were getting into was not quite what they

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 94 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2571

94

thought.  Does that change your feeling at all about how you feel about victims of sex trafficking?

PROSPECTIVE JUROR:  Not necessarily.  There is a certain coercion.

MS. OLIVER:  I want to highlight and talk about what Juror No. 8 had to say.  Does everybody understand that that there could be decisions where someone who is a prostitute voluntarily engages in an activity and then as they move forward, and this is just a hypothetical situation, that they may learn that the sex prostitution is not exactly what they thought.  There may be worse conditions there.  Is anybody saying, you know, I understand what Juror  No. 8 is saying, but the truth is that these women and men signed up for this so whatever happens to them, that's kind of on them.  Juror way in the back, yes, ma'am, 40.  What do you think?

PROSPECTIVE JUROR:  40.  Yes, I think that if they -- because things might change, right, because a woman could marry a guy and feel like he was good for her, but then he started to become violent or treat her badly.  Then the circumstances have changed, but she shouldn't be tied to the decision she made before the circumstances changed or before she became aware maybe what he was really like.

MS. OLIVER:  Thank you.  Anybody agree with

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 95 of 216 PageID
#: 2571
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

95

what Juror Nos. 40 and 8 said?  Raise your hand high, please.  Anybody -- it's okay if you disagree.  We want to know what you think.  I notice, Juror No. 16, you didn't raise your hand.  What do you think?

PROSPECTIVE JUROR:  About?

MS. OLIVER:  The fact that things can change with someone who agrees to engage in prostitution, that things can change and that what they signed up for turns out to not be what they signed up for.

PROSPECTIVE JUROR:  Right.  I do watch some videos to be around children in the classroom.  Some of them are causing it by human trafficking being locked up and being forced and they just don't know what they are doing.

MS. OLIVER:  Let me ask you, Juror No. 16, you did mention that a member of your family who was your brother who was convicted; is that correct?

PROSPECTIVE JUROR:  Correct.

MS. OLIVER:  When you were speaking with His Honor you said that the sex that was alleged was consensual; is that fair?

PROSPECTIVE JUROR:  Yes.

MS. OLIVER:  You also said that although the sex was consensual that the state went forward and convicted your brother?

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 96 of 216 PageID
#: 2573
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

96

PROSPECTIVE JUROR:  Correct.

MS. OLIVER:  And when the judge asked you if you could be fair, you said you think you could be fair. I do want to ask you though, you seem to have very strong convictions and that's totally fine.  We want to know where you are stand on this.  Do you think that if someone did consent to sex and things may have changed, the person who did that shouldn't be convicted of the crime; is that fair to say?  Similar to the situation as your brother?

PROSPECTIVE JUROR:  Well, he was convicted and what you are saying in the previous one that they became the victim, but I became the victim too but he got convicted.  They got probation so he just go through the probation officer, but the family just came and just harassed us every day.  But back then there was no cell phones showing that they did harass us everywhere.

MS. OLIVER:  Fair to say, sir, that this case would be weighing, what happened with your brother would be weighing in your mind.  Similar, it could be a similar set of circumstances.  It would be weighing heavily on your mind as we went through the trial this week?

PROSPECTIVE JUROR:  Yeah.  I mean once in it you can change your mind.

MS. OLIVER:  Fair to say that this may not be

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 97 of 216 PageID
#: 2574
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

97

the case for you, that because of your brother, because it was consensual, because of the harassment that you just can't be fair as it relates to the Defendants in this case, is that fair to say, because of what happened to your brother?

PROSPECTIVE JUROR:  Yes.  He passed a polygraph test and everything and they still went on.

MS. OLIVER:  Returning back to the question we were talking about, Juror No. 8 was talking about force, fraud or coercion.  Juror No. 68, let me get to you before -- I don't want you to lose your thought.  You may have lost your thought.  I hope you didn't.

PROSPECTIVE JUROR:  I think I was responding to if I knew anyone.  As a clinician, as a therapist I work with clients who are sex workers and clients who have solicited sex workers.

MS. OLIVER:  So, Juror No. 68, you talk about working with clients who were sex workers; is that correct?  And more clearly stated, clients who have agreed to engage in commercial sex and prostitution, is that fair to say?  Would it be fair to say that although they may have signed up to do those activities, that once they are involved that the circumstances can change about the circumstances that they are involved in?

PROSPECTIVE JUROR:  Absolutely.  That's why I

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 98 of 216 PageID
#: 2575
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

98

usually am seeing them.

MS. OLIVER:  Have many of them been subjected to abuse of any kind?

PROSPECTIVE JUROR:  Yes.

MS. OLIVER:  How has that abuse affected their lives in your personal opinion?

PROSPECTIVE JUROR:  In a dramatic and dire way.

MS. OLIVER:  Because they have engaged in sex work previously, has that caused you to question their credibility about what they are alleging has happened?

PROSPECTIVE JUROR:  Absolutely not.

MS. OLIVER:  Do they tend to have long-standing effects based on what has happened to them?

PROSPECTIVE JUROR:  Yes, life-long.

MS. OLIVER:  Like what for example?

PROSPECTIVE JUROR:  Lack of trust, sexual dysfunction, hypervigilance, inability to sleep, sleeping too much, depression, anxiety, PTSD, self-harming, addiction, unsuccessful relationships, often losing their children if they have children involved, usually there's recidivism of some sort, maybe not specifically with sex work, but in other circumstances with the law.

MS. OLIVER:  Do these women tend to make large sums of money?  Do they make large amounts of money in

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 99 of 216 PageID
#: 2570
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

99

careers that they are able to retire from in doing this kind of work?

PROSPECTIVE JUROR:  Sex work?  No, ma'am.

MS. OLIVER:  Where does most of the money come from in your training and experience?

PROSPECTIVE JUROR:  It goes to whomever they are working for.

MS. OLIVER:  When you say whomever they are working for, what type of -- so there is someone whose managing them?

PROSPECTIVE JUROR:  Often, yes, or a group. They are part of a group where there is other -- I have male and female clients who are sex workers.  So there could be part of a group and there's usually management of that group.  And then I make up in my head management of those managers.

MS. OLIVER:  So typically do you find that commercial sex workers are engaging in this work on their own, or from what you're saying there is usually a hierarchy or structure of people that they are working for and people that they are working for.

PROSPECTIVE JUROR:  I would say both.  I have had clients who have entered into sex work as a willful decision, but some have been coerced to stay.

THE COURT:  Ms. Oliver, you have about ten

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 100 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#1257

100

minutes left.

MS. OLIVER:  Thank you, Your Honor.  Thank you, Juror No. 68.  Did everyone understand and hear what Juror 68 was saying?  She was talking about the effects and things like that.  We have had a discussion from Juror No. 8 about force and coercion.  I want to talk a little bit about conspiracy.  We are going to wrap up here.

How many of y'all, and it looks like y'all are old enough to know this example.  I am dating myself.  How many of you all have seen Oceans 11?  Good movie.  This is the George Clooney and Brad Pitt version.

Juror No. 60, good morning.  I understand you're on crutches, sir, so please take your time and I apologize for making you stand.  Good morning, sir.  Have you seen Oceans 11?

PROSPECTIVE JUROR:  Yes.

MS. OLIVER:  Great movie, right?

PROSPECTIVE JUROR:  Yes.

MS. OLIVER:  There are multiple people. What's their goals?

PROSPECTIVE JUROR:  To rob the casino.

MS. OLIVER:  And George Clooney had a role.

PROSPECTIVE JUROR:  Yes.

MS. MILLER:  Was what his role?

101

PROSPECTIVE JUROR:  He was kind of the ringleader.

MS. OLIVER:  Mastermind.  And, Juror No. 57, have you seen Oceans 11?

PROSPECTIVE JUROR:  I have, but I would be lying if I told you I remember it.

MS. OLIVER:  Juror No. 46, sorry, I am making you all work, guys.  Have you heard of Brad Pitt?

PROSPECTIVE JUROR:  Yes.

MS. OLIVER:  Everybody has heard of Brad Pitt. What was Brad Pitt's role, was he under George Clooney?

PROSPECTIVE JUROR:  He was.

MS. OLIVER:  He was a smooth talker, right?

PROSPECTIVE JUROR:  Yes.

MS. OLIVER:  The fixer.  And what I am getting at, y'all, thank you, Juror No. 46.  Everybody had a different role.  So we had George Clooney and Brad Pitt and Bernie Mac and on down.  Everybody had a different role as it relates to trying to rob the bank.  But from those that saw the movie, did everybody have the same role or did everybody have a different role?  Juror number -- I am picking on the motorcycle rider.  Have you seen that movie?

PROSPECTIVE JUROR:  Yes, I have.

MS. OLIVER:  You may not be as in love with

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 102 of 216 PageID
#: 2579
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

102

Brad Pitt as we are and that's totally fine.  But Juror No. 35, did everybody have the same role or a different role?

PROSPECTIVE JUROR:  They all had a specialty.

MS. OLIVER:  And even including the guy who was the lookout at the bank.  Do you remember the lookout?

PROSPECTIVE JUROR:  No.

MS. OLIVER:  The lookout, was that role as important as the mastermind, juror number in the back there, or 17 since you pointed.

PROSPECTIVE JUROR:  Can you repeat the question.

MS. OLIVER:  The lookout, we have a lookout at the bank.  Then we have the mastermind who is the main master.  There are different levels of responsibility, different levels of culpability or different levels of criminal responsibility, fair to say, with all those folks running that operation?

PROSPECTIVE JUROR:  Correct.

MS. OLIVER:  But weren't they all a part of the same goal?  Juror No. 9, would you agree with that?  In the George Clooney Oceans 11 example multiple people, same goal.  Everybody had different levels of responsibility.  Would you agree that they all had the

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 103 of 216 PageID
#: 2580
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

103

same goal?

PROSPECTIVE JUROR:  Yes, they all knew why they were there.

MS. OLIVER:  Money, honey, right?  Thank you. Now, with regards to conspiracy, multiple people can be charged for different levels of criminal involvement; however, we can also charge for an attempt even if the crime is not completed.  So let's take that Oceans 11 bank robbery example.  Let's say that Ms. Miller and myself, Agent Cira, Mr. Madrigal, Ms. Adams all decide to go rob this bank.  I set it up because I'm just the mastermind.  I am robbing Ms. Marisa's shoes so we are just going to go with it, right?

But we are almost there and something goes wrong and we call it off.  Conspiracy -- the act is not completed.  Why should we be able to charge for an attempt to commit a crime?  Anybody think about that? Anybody have any thoughts about that?  Let's take 9/11 for example.  Let's think about the Oklahoma City Bombing for example.  Everyone here familiar with those incidents?  Should we be able to charge someone for taking steps to do something bad even though something bad does not happen?  Juror No. 67, what do you think, sir?  The question is should we be able to charge someone or multiple persons for conspiracy even though they don't

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 104 of 216 PageID
#: 2581
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

104

commit the crime.

PROSPECTIVE JUROR:  They all conspired to?

MS. OLIVER:  All agreed to, correct, yes.  And we have an interest like we are nodding about 9/11 and Oklahoma City and terrorist events and just bad things that happen to prevent things from happening even though the agreement was made.  Does anybody say I understand what you are saying, but that doesn't make any sense?  You all should not be able to charge somebody with a conspiracy and they haven't actually completed the act.  Folks in the back.  Juror No -- - second from the end.

PROSPECTIVE JUROR:  63.

MS. OLIVER:  Should we be able to charge with attempting to commit a conspiracy even though the act hasn't been completed?

PROSPECTIVE JUROR:  Yes.

MS. OLIVER:  Why?

PROSPECTIVE JUROR:  They are planning out the process.  There's a plot to put it together.  It could recur again.  There's a number of things that could potentially be in place there.

MS. OLIVER:  Thank you.  Moving on.  Yes, ma'am.  Quickly.

PROSPECTIVE JUROR:  42.  Is there a legal threshold of what conspiracy is?  Just thinking the

thought versus -- 42.  My question was is there a legal threshold that we move from just thinking about it to it actually makes the legal definition of what a conspiracy is?

MS. OLIVER:  Thank you for the question.  As Judge Jordan, he will give you the law, but as he stated previously, that it doesn't need to be a specified agreement.  You are looking at the actions that they took in furtherance of conspiracy.  So you are looking at our plan, our steps that we took, things of that nature. Does that make sense?

Now, I do want to get onto this.  And, Juror No. 48, I want to start with you.  We talked about credibility.  You all will be able to hear from different witnesses and judge their credibility as we move forward in the case.  I do want to talk about the Government and law enforcement in general.  You talked about both sides, nobody is an angel, fair to say, sir, that -- let me ask you this.  You may hear testimony, you all may hear testimony from several members of law enforcement, local, state, federal law enforcement.  As it relates to your feelings about law enforcement, do you have strong feelings, positive or negative, about law enforcement?

PROSPECTIVE JUROR:  I think cops do a great job, all right?  As far as it goes, as some of them are

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 106 of 216 PageID
#: 2585
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

106

kind of pushy at people because they use their authority to be what they want to be, which they shouldn't be doing, which a normal person should be able to stand up to them and not have to worry about being put down because somebody is abusing their position.

MS. OLIVER:  And is it fair to say that would you be able to -- if a law enforcement officer came in here and said that Elvis was still alive, would you believe him?

PROSPECTIVE JUROR:  They say he is.  I mean.

MS. OLIVER:  You would believe him?

PROSPECTIVE JUROR:  You know, you are supposed to believe in people.  You are supposed to trust in people.  So somebody comes out and straight out lies to you, as a person like that situation I wouldn't believe him.  But in God's way you are supposed to believe everything somebody tells you.  Like if I told you my name was Robert, I just met you and you found out my name was Stan, would you be mad about that?  Do you understand what I am saying?

MS. OLIVER:  I do understand.

PROSPECTIVE JUROR:  So it does work both ways.  Not one sided.

MS. OLIVER:  Absolutely.  Thank you.  Does anyone have strong negative feelings about law

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 107 of 216 PageID
#: 2584
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

107

enforcement?  Anyone?  And it's okay if you do.  Anyone?  Anybody have strong positive feelings about law enforcement or the Government?  I see just by a show of hands, Juror No. 58, 60, 50.  I just want to move on to a few more things here just very briefly, Your Honor.

THE COURT:  You have about two minutes.

MS. OLIVER:  Thank you, sir.  As it relates to witness credibility, you may hear from people who have been charged with crimes and/or who have pled guilty in this case.  It is common for the Government to be notified about these people and for them to be called as witnesses in the case.  Are any of you thinking that hey, if you have been convicted of this crime and you're testifying in this case then you can't be fair and impartial as a witness, that you would give them lower credibility than anyone else?  Anybody by a raise of hands?  No.  No.  Okay.

One last question, and this is the most fun question.  I have saved the best for last.  How many of y'all in here are married?  How many wish you weren't married?  This is a safe space, it's okay.  Raise your hand one more time, everybody, so I can see who is married.  Who is married?  Who do I want to pick on?  Let's see.  Juror No. 20, do you remember your wedding, ma'am?

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 108 of 216 PageID
#: 2585
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

108

PROSPECTIVE JUROR:  I do.

MS. OLIVER:  So couple of questions.  Ready? What was the first wedding dance song?

PROSPECTIVE JUROR:  It was a Pat Green song. I don't remember the name.

MS. OLIVER:  What kind of cake did you have?

PROSPECTIVE JUROR:  Vanilla.

MS. OLIVER:  How many people did you have?

PROSPECTIVE JUROR:  150.

MS. OLIVER:  Where did you get married?

PROSPECTIVE JUROR:  Back yard.

MS. OLIVER:  What day was it?

PROSPECTIVE JUROR:  It was a Saturday in June.

MS. OLIVER:  How was the weather exactly, what was the exact temperature?

PROSPECTIVE JUROR:  Rained in the morning.  It was about 80 and humid.

MS. OLIVER:  Did you have a mother of the bride?

PROSPECTIVE JUROR:  We did.

MS. OLIVER:  What was she wearing?

PROSPECTIVE JUROR:  Beautiful dress.

MS. OLIVER:  How did she wear her hair?

PROSPECTIVE JUROR:  It was up.

MS. OLIVER:  Where did she get it done?

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 109 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 1580

109

PROSPECTIVE JUROR:  In the bathroom in the house.

MS. OLIVER:  Would your husband agree with all of those details and be able to give all those same details of your wedding as you did?

PROSPECTIVE JUROR:  Absolutely not.

MS. OLIVER:  How long have you been married?

PROSPECTIVE JUROR:  Twenty years.

MS. OLIVER:  So still married today?

PROSPECTIVE JUROR:  We are.

MS. OLIVER:  Now, so y'all heard Juror No. 20 talk about her wedding.  That's a real important day, most important day of your life, right?  And Juror No. 20 was able to spout off wedding anniversary and all those details.  It's possible that -- but your husband was there at the wedding, right?  All right.  It's possible that minor inconsistencies or minor details that you may or may not remember.  Doesn't mean it didn't happen, is that fair?  So as you are going through the trial there may be minor inconsistencies between folks.  That doesn't mean that it didn't happen.  Is that fair to say?  Anybody disagree with that?  No?  Thank you all so much for your time and attention and for talking today.  Thank you.

THE COURT:  Thank you, Ms. Oliver.  We are

110

going to take a break for about 10 or 15 minutes and one thing I wanted to let you know is when you come back in we are going to need you to sit where you are now.  But we will let you take about a ten or fifteen-minute break before we have defense counsel ask you some questions. Thank you all for your service.

(Jurors exited courtroom.)

(The following was held outside the presence of the prospective jurors.)

THE COURT:  You can be seated.  Thank you.  I just want to say while we have the jurors out that during this break this might be a good opportunity to look at that piece I gave to you that I will include in the preliminary instructions and let me know if you all have any revisions, additions to that.  I will come back to you probably around the time that you're going through and making your peremptory strikes, but it might be good to get a head start looking at it and be back shortly and we will bring the panel back in.  Thank you.

(Recess, 11:55 a.m. to 12:16 p.m.)

THE COURT:  Members of our panel, when we took a break the Government had just completed its voir dire questions and we are now going to proceed with defense counsel.  Mr. De La Garza, you can begin and you have an hour total.

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 111 of 216 PageID
#: 2588
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

111

MR. DE LA GARZA:  Thank you, Your Honor.  Now it's good afternoon.  Are we having fun yet?  There you go.  A lot of fun.  The whole purpose behind jury selection, ladies and gentlemen, is to ultimately at the end of the day seat 12 jurors that can honestly give both sides, the Government, Mr. Garland, Ms. Lyons, a fair trial.  And what does that mean?  You come in here with an open mind and you are a sponge.  And, 38, I will get to you here in just a second.  I see you are nodding.  I have been noticing you and that's good.  Because there's no wrong answers here.

We have our feelings.  Some people like chocolate ice cream, some people like strawberry ice cream.  It is what it is.  And ultimately there might be some of you that can just say this isn't the case for me.  Just isn't.  I don't like the way Mr. Garland looks.  If that's what it is, I have my mind made up and that's okay.  The key is that you share your feelings with us so that I can do the best job that I can for Mr. Garland who I am entrusted along with Mr. Whalen in defending against the accusations of the Government.  That's what we do.  And this system doesn't work if you all are not honest and share your feelings.  And if this case isn't the right one for you, please let us know.  It may be you don't like the FBI.  It may be you don't like the United

States of America prosecution for political reasons.  I don't know.  Don't care.  But at the end of the day, if you are putting them behind the eight ball or you are putting us behind the eight ball, and one of you all said, I believe it was 54, that the defense has a lot of work to do, let me educate you on something.

This side of the table, we don't have to do a darn thing.  Because the burden of proof is right here. They have to prove the case beyond a reasonable doubt. It is that kind of doubt that will make you hesitate to act in the most important of your affairs.  Okay?

It's that kind of doubt that you would say you know what?  Based upon what I heard I don't want to have heart surgery.  That's their burden.  It is not all possible doubt, but beyond a reasonable doubt.  The burden of proof never shifts.  It stays at the prosecutor's table.  We can sit here and not do anything. Mr. Garland can choose not to testify and you can't hold that against him.

So, Mr. 38, since we can't use names, I would like to ask you a question.  I am not picking on you, but in a way I am.

PROSPECTIVE JUROR:  Pick away.

MR. DE LA GARZA:  Would it be fair to say, would it be fair to Mr. Garland, that at the end of the

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 113 of 216 PageID
#: 2590
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

113

day you're not the right juror for him for this case because of how you feel from what you heard about this case?

PROSPECTIVE JUROR:  I would say so.

MR. DE LA GARZA:  Thank you.  Is there anyone else like Juror No. 38?  Juror No. 54?

PROSPECTIVE JUROR:  Yes.

MR. DE LA GARZA:  Is this the right case for you based upon what you have seen and knowing that we don't have to do anything, the whole burden is on that table over there?  When you kind of said well, they have got work to do, that's shifting the burden to us.  Do you understand that?

PROSPECTIVE JUROR:  Yes.

MR. DE LA GARZA:  Are you still going to expect us, this table, to persuade you otherwise, or are you going to hold this table over here 110 percent to their burden?

PROSPECTIVE JUROR:  Because I am guessing as this plays out, I will be hearing from your side quite a bit, so I feel like there is still a hand to be played on that side.  Now, the burden may fall on them, but I feel like my understanding would be the defense would still have their play in this.

MR. DE LA GARZA:  Why if we stay quiet?  And

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 114 of 216 PageID
#: 2531
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

114

what if they don't present everything to you to your satisfaction?  Are you going to say well, hey, because when I walked in, I looked at this side, I saw what I saw, I heard what I heard, and my feelings haven't been swayed.

PROSPECTIVE JUROR:  I feel like as information comes out I am still going to try to be as impartial as I can.  I don't think I'm a hundred percent convicted right now.

MR. DE LA GARZA:  Okay.  What you should be right now is one hundred percent that he is not guilty as he sits here at this moment in time.  You can't tell me that, can you?

PROSPECTIVE JUROR:  Not necessarily, not a 100 percent.

MR. DE LA GARZA:  Let's be honest.  You can't tell me that.

PROSPECTIVE JUROR:  Yeah.

MR. DE LA GARZA:  Thank you.  That's okay. Appreciate your honesty.  Is there anybody else here, that's okay, that cannot say that my client or Ms. Lyons as they sit here today are not guilty at this moment in time?  Let me see a sign of hands if you can say that they are not guilty as they sit here at this moment in time.  Juror No. 12, I see your hand is not up.  Looking

over here, keep your hands up.  This is almost like an auction, but backwards.  If your hand is not up it will get my attention.  Thank you, Juror No. 38, for your honesty.  Juror No. 65, I see your hand is not up.  Thank you for your honesty.  Juror No. 56, thank you for your honesty by not having your hand up.  Juror No. 55, is your hand up?  Okay.  Juror No. 53, your hand is not up, correct?  Thank you for your honesty.  Juror No. 48, thank you.  Juror No. 50, thank you for your honesty, I really -- we really appreciate it.  You can put your hands down.

Since I am kind of pressed for time I wanted to focus on another question, the example that Ms. Oliver gave.  That she just loved Ms. Miller's shoes and she wanted those shoes.  Why?  Because she is in a conspiracy with other members at her table to get these shoes.  And let's say in the process of getting these shoes when Ms. Oliver whacks her on the side of the head to get these shoes Ms. Miller sustains some injuries.  She said she fell and hurt her head, maybe had a hairline fracture. So when Ms. Miller is taking the stand and testifying to her injuries, what kind of corroborating evidence would you all expect to see in a trial by the United States of America as to her injuries?  Juror No. 7, what would you like to see that would support her injuries?

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 116 of 216 PageID
#: 2533
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

116

PROSPECTIVE JUROR: Well, when you go in front of the doctor for example the examination, see what kind of injuries is there. What is the assumption that how that injury come about and severity of it.

MR. DE LA GARZA: So you would expect to see corroborating evidence like medical reports, doctors reports?

PROSPECTIVE JUROR: Yes.

MR. DE LA GARZA: That can corroborate her story that she hurt her head; would that be fair?

PROSPECTIVE JUROR: Yes.

MR. DE LA GARZA: Does everybody pretty much agree with that? That that would help you determine whether I find her to be very credible. Let's say in this hypothetical she might be a little on the shady side, some experiences in her past with shoes, I don't know, but let's just say so in order for you to determine her credibility y'all would expect some corroborating evidence, would that be fair? Thank you very much. Is there anybody here that would not expect the United States of America to present corroborating evidence to support their witnesses? Does everybody expect them to? Can I get a show of hands?

Would that be because they have the burden of proof? Would that be fair? Not on our side of the

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 117 of 216 PageID
#: 2534
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

117

table, correct?  Now, how many of y'all have had any kind of formal training with firearms?  Guns?  No. 35, if you will please stand up.  What type of training have you had with firearms?

PROSPECTIVE JUROR:  I was in the military.

MR. DE LA GARZA:  Thank you for your service. What branch?

PROSPECTIVE JUROR:  Air Force.

MR. DE LA GARZA:  In your training was that a gun range?

PROSPECTIVE JUROR:  Yes.

MR. DE LA GARZA:  Would it be fair to say that your training officer there on the firing range would be very serious and very strict in how you all operated your firearms?

PROSPECTIVE JUROR:  Yes.

MR. DE LA GARZA:  And didn't take shortcuts very lightly, fair?

PROSPECTIVE JUROR:  Correct.

MR. DE LA GARZA:  If you muzzle whipped anybody, they would get upset?

PROSPECTIVE JUROR:  Yes.

MR. DE LA GARZA:  For those that don't know, muzzle whipped would mean when you move your gun and you move in front of somebody, swipe somebody with it.

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 118 of 216 PageID
#: 2535
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

118

Because every gun is what?

PROSPECTIVE JUROR:  Loaded.

MR. DE LA GARZA:  And if it's pointing at someone it can kill someone; would that be fair to say?

PROSPECTIVE JUROR:  Yes.

MR. DE LA GARZA:  Thank you for your honesty. Anybody feel contrary to Juror No. 35?  Firearms are obviously dangerous.  They need to be taken seriously. Would everybody agree with that?  When you are training with firearms that needs to be taken very seriously? Would everybody agree with that?  Does anybody have a safe in their home?  Juror No. 6, not specifically, but what kind of items would a normal person have in their safe?

PROSPECTIVE JUROR:  Important documents, a weapon, maybe money.

MR. DE LA GARZA:  So important documents like passports?

PROSPECTIVE JUROR:  Passports.

MR. DE LA GARZA:  So it wouldn't be uncommon to hold someone's passports.

PROSPECTIVE JUROR:  It would not.

MR. DE LA GARZA:  And if somebody was living in your home who was staying with you and they had important documents, would it be normal for them to have

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 119 of 216 PageID
#: 2536
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

119

them in your safe for safekeeping?

PROSPECTIVE JUROR:  Yes.

MR. DE LA GARZA:  Because people can get robbed.

PROSPECTIVE JUROR:  Yes.

MR. DE LA GARZA:  Thank you, Juror No. 6. Anybody feel different than Juror No. 6 about why we have safes?  Okay.  I want to dive in a little deeper when we were discussing earlier about human trafficking.  We can all agree that is not the right thing; would that be fair?  There's no one here saying I am proud of human trafficking.  Good.  But if we are accused of human trafficking, I kind of want to know, are your feelings so strong about human trafficking that you just can't get past the label?  We already know 38.  Thank you for your honesty.  54 maybe.  56, they have strong feelings about that.  So I would like to ask Juror No. 29, when you hear the word human trafficking what comes to your mind?

PROSPECTIVE JUROR:  Trafficking another human being.

MR. DE LA GARZA:  And if someone is -- for trafficking, does that mean in your mind it's against their will?

PROSPECTIVE JUROR:  Yes.

MR. DE LA GARZA:  Does that mean in your mind

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 120 of 216 PageID
#: 2537
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

120

they don't have a way out and they are forced into it, they can't break away?

PROSPECTIVE JUROR:  Possible.

MR. DE LA GARZA:  Does that mean in your mind with human trafficking that there's no way out for them?  Would that be something you would expect to see?

PROSPECTIVE JUROR:  Yes.

MR. DE LA GARZA:  And would it change anything in your mind about human trafficking if it was something that they wanted to do voluntarily?  Would that make it maybe something else, not human trafficking?

PROSPECTIVE JUROR:  That depends on the situation, yes.

MR. DE LA GARZA:  So that's facts that you would need to hear and see and deliberate on.

PROSPECTIVE JUROR:  Yes.

MR. DE LA GARZA:  And information that you would receive if someone is making a statement about it, you would want to see something that would help corroborate it.

PROSPECTIVE JUROR:  Yes.

MR. DE LA GARZA:  Thank you.  Now, let's say the United States of America proves something else other than what these individuals are charged with.  Something other.  As it relates to this case, would everybody agree

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 121 of 216 PageID
#: 2598
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

121

it would be not guilty for what they are charged with here if they proved something else?  Would everybody agree with me?  It's not a trick question.  Let's say they prove up a state crime for prostitution.  But they are not charged with prostitution.  They are charged with human trafficking.  Let's say they did a heck of a good job proving up prostitution, but it is not this case.  Not this federal case.  Do you understand?

PROSPECTIVE JUROR:  Yes.

MR. DE LA GARZA:  So as it relates to these two individuals being charged with this, would your verdict be guilty or not guilty?  Juror No. 10?

PROSPECTIVE JUROR:  Panelist No. 10.  My understanding of the law is you can only be found guilty of a crime that you are charged with.  If I am mistaken, let me know.

MR. DE LA GARZA:  You are correct.  So your answer would be not guilty.

PROSPECTIVE JUROR:  Not guilty.

MR. DE LA GARZA:  Perfect.  Is there anybody here because they may not like the scenario, not like the situation, but the Government didn't get them there, didn't rise to the threshold of beyond a reasonable doubt, that would still find these two individuals guilty because that's what they feel is the right thing to do?

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 122 of 216 PageID
#: 2599
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

122

Do you all understand what I am trying to get to?  I'm trying to find those individuals because obviously we don't want them.  Because we want people that can actually follow the law.  You will agree with me, No. 68, correct?  And I appreciate your line of work.

Juror number -- you have been in the corner. I don't know if anybody has talked to you.  Juror 62, I have a question.  This case was in the media, Channel 8, Channel 5 back in December of 2023.  Do you recall this at all being in the news?

PROSPECTIVE JUROR:  I don't.

MR. DE LA GARZA:  Do you watch the news?

PROSPECTIVE JUROR:  Not very often.

MR. DE LA GARZA:  Well, then I appreciate you. Thank you, Juror 62.  Folks, about December 18th, somewhere around that time period, 23rd of December of 2023, this was all in the news.  Does anybody here recall this case ever being in the news?  Juror No. 41.

PROSPECTIVE JUROR:  I believe so.  As a cosmetologist we take classes every other year on human trafficking so when I hear about it, it kind of puts up a flag.

MR. DE LA GARZA:  I appreciate that.  Based upon what you heard, based upon I guess the training that you do and we appreciate that, is this the right case for

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 123 of 216 PageID
#: 1600
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

123

you?

PROSPECTIVE JUROR:  Possibly not.

MR. DE LA GARZA:  Possibly doesn't get me there.  And I just need to know, and it's okay if it is not.  Is this the right case for you, meaning could you be fair to William Garland and Anastasiya Lyons in your heart of heart based upon the training, could you be fair?

PROSPECTIVE JUROR:  I believe so.

MR. DE LA GARZA:  Believe doesn't get me there.

PROSPECTIVE JUROR:  I do.

MR. DE LA GARZA:  Thank you, Juror 41.  Is there anyone else who might have heard about this on the news?  Juror 48.  Based upon what you heard in the news, based upon your earlier comments on voir dire by the Government, is this the right case for you?

PROSPECTIVE JUROR:  Not really.  Not going to be because I have already seen like you said, I seen the stuff going on on television in the news and I was thinking to myself why?  Why are these people doing this?  Go ahead and take the full justice of the law, do what you got to do to stop it.  Don't keep like right now here it is '26.  This went on since '22, that's four years of taxpayers money.  Let's get it over with.  That's how I

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 124 of 216 PageID
#: 1601
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

124

feel about it.

MR. DE LA GARZA:  You are entitled to your feelings and I can tell you we appreciate your honesty. Thank you, Juror 48.  Anyone else who feels like Juror No. 48?  Who is Juror 28?  How do you feel about this case, this type of case and that type of stuff?

PROSPECTIVE JUROR:  I feel I can be an impartial juror.

MR. DE LA GARZA:  You don't have a little hidden agenda anywhere?

PROSPECTIVE JUROR:  Not that I am aware of.

MR. DE LA GARZA:  In all honesty you could be fair to both sides 110 percent?

PROSPECTIVE JUROR:  Yes.

MR. DE LA GARZA:  Hold the United States of America to its burden?

PROSPECTIVE JUROR:  Yes.

MR. DE LA GARZA:  And presume Mr. Williams and Ms. Lyons innocent until such point if they ever get there that it switches?

PROSPECTIVE JUROR:  Yes.

MR. DE LA GARZA:  Thank you, Juror 28.  Where is Juror 18?  18, how do feel about this type of case?

PROSPECTIVE JUROR:  No feeling on it really.

MR. DE LA GARZA:  You mentioned earlier I

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 125 of 216 PageID
#: 2601
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

125

think you were in construction.

PROSPECTIVE JUROR:  Yes, sir.

THE COURT:  So this is costing you money being here.

PROSPECTIVE JUROR:  Yes, sir.

MR. DE LA GARZA:  I appreciate you.  Thank you.  Juror No. 8, trying to get all the 8s in.  How do you feel about this type of case?

PROSPECTIVE JUROR:  Well, honestly, we don't know much in a way of details, just kind of partially what they are being charged with.

MR. DE LA GARZA:  How do you feel about what you have heard so far?

PROSPECTIVE JUROR:  Well, hearing human trafficking evokes a lot of emotions, but I think somebody else mentioned there is probably certain degrees I'm sure.  But it's a pretty strong emotion when it comes to human trafficking of any kind.

MR. DE LA GARZA:  And it should be, but based upon your feelings is this the right type of case for you to sit down, listen, go through the next maybe week to ten days, but also give my client and Ms. Lyons the presumption of innocence?  Can you do that?

PROSPECTIVE JUROR:  Yes.  Hesitation because we are all humans.  We can be swayed when we are given

USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

126

evidence, but I mean I can be impartial.

MR. DE LA GARZA:  Right.  The whole point is listening to the evidence that they give you, right?  And witnesses who are testifying, determine if they are being truthful, right?  And if there is things that are borderline seeing what kind of corroborating evidence that may have?  Would that be fair?

PROSPECTIVE JUROR:  That is fair.

MR. DE LA GARZA:  But as my client and Ms. Lyons sit here today, they are presumed to be what?

PROSPECTIVE JUROR:  Innocent.

MR. DE LA GARZA:  Thank you, Juror No. 8.  May I have a moment, Your Honor?

THE COURT:  Yes.

(Off the record conference.)

MR. DE LA GARZA:  Towards the end of the case for those lucky ones that are in the luxury seats, the judge will give you jury instructions that lays out the elements of the offense.  And let's say there's five elements to this offense.  But the Government only proves four elements.  Four out of the five.  Do you all understand if they only proved to you all beyond a reasonable doubt four out of the five elements that these two are presumed to be not guilty and your verdict should be not guilty because they haven't proved all the

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 127 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2604

127

elements?  Does everybody understand that?  Raise your hands if y'all understand that.  Does everybody agree with it?  Juror No. 7, your hand is not up.

PROSPECTIVE JUROR:  No.  I am struggling with this one.  When you say four out of five things that they showed.  Can't they be just --

MR. DE LA GARZA:  Let me give you an example. Let's say they have proved up hypothetically that this was human trafficking.  But let's say they proved it happened in the Northern District of Texas, not in the Eastern District of Texas.  The Eastern District of Texas is one of the elements.  Is my client guilty or not guilty if they didn't prove Eastern District?

I am just saying if that was one of the elements of the offense and it happened in the Eastern District of Texas.  They prove everything up except the wrong district.  Are you going to help them over the finish line or going to hold them to their burden and say United States of America, you didn't get us there.

PROSPECTIVE JUROR:  That's a tough one.  I have to be honest because this is so minor in comparison to the other charges.  Let's say there were some asserted charges that the Government proved that they are guilty and then you are talking about it was in the Northern versus the Eastern.  That doesn't sound --

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 128 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2605

128

MR. DE LA GARZA:  But it's an element and the judge will give you a jury instruction.

PROSPECTIVE JUROR:  I don't know if I can do that.  That's tough one.

MR. DE LA GARZA:  Okay.  And that's fair.  I appreciate your honesty, Juror No. 7.  Thank you.  Juror No. 10.

PROSPECTIVE JUROR:  What's missing is are all five elements needed to be proved in order to get guilty?

MR. DE LA GARZA:  Yes.

PROSPECTIVE JUROR:  I don't know if that was explained.

MR. DE LA GARZA:  If all five -- so would you have a problem if you have five elements that need to be proved beyond a reasonable doubt, and out of those five they only proved four, but they need all five, what's your verdict?

PROSPECTIVE JUROR:  They are not guilty because you all need five.

MR. DE LA GARZA:  Correct.  And ultimately at the end of the day the judge will give you the appropriate jury instructions that will tell you which elements need to be proved.  But if the Government doesn't prove it then they are what, guilty or not guilty?

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 129 of 216 PageID
#: 2606
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

129

PROSPECTIVE JUROR:  No. 7.  If you insist that all five have to be done in order then of course then you can't say they are guilty because four out of five.  Doesn't sound right to me, but --

MR. DE LA GARZA:  It may not sound right, but it may be what the law is and you would follow the law.

PROSPECTIVE JUROR:  Yes.

MR. DE LA GARZA:  Thank you, Juror No. 7.  Is there anybody here because you may not like this type of offense, if the Government maybe doesn't get you across the finish line beyond a reasonable doubt as to any element, whatever it might be, that will help the Government get across, because you feel that maybe down in your heart you got a duty?  Is there anybody that feels like that?  Juror No. 38 we know.  Anybody else?  Juror No. 38, thank you for your honesty.

PROSPECTIVE JUROR:  It is not funny.  I don't find this funny.  These two people are fighting for their life here and this happened like a long, long time ago.  And if there was not substantial evidence we would have never seen these kind of things come across TV and the news, they wouldn't be sitting at that table right now if they didn't have their stuff together and looking for four, you are going to get off on a technicality?  That's not justice.  If they are guilty of others, you got four

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 130 of 216 PageID
#: 260
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

130

other elements, I would never put myself in a position to be on the jury that let someone off on a technicality because they might have done some serious, heinous stuff and if you let them back out they are going to do more.

MR. DE LA GARZA:  I appreciate your honesty. But I'm sure the Government would tell you they fully embrace our legal system and if they have to prove to you beyond a reasonable doubt five elements and they only get four, I'm sure they would expect you all to find these two not guilty.

PROSPECTIVE JUROR:  Some people will be put in a position, some people won't.

MR. DE LA GARZA:  Thank you.  Does anybody else feel like Juror No. 38?  Yes, Juror No. 48.

PROSPECTIVE JUROR:  So you said there was five reasons that they are being prosecuted for.  Now, are the first four the worst and then the last one the easy one or is the first four the easy ones and the last one the hardest?  So let's say they stole stuff from a store four times and they all of a sudden they killed someone on the fifth.  They are found that they are not acquitted for the first thing, but for the fifth one, that means they dropped all the first things to make it go away?

MR. DE LA GARZA:  No, I am saying the Government has certain elements to prove their case human

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 131 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2608

131

trafficking.  They got to prove venue.  They got to prove that it happened in this district.  For example, if they can't prove to you that it happened in this district as part of their proof.

PROSPECTIVE JUROR:  Is that the last element or the first two?

MR. DE LA GARZA:  Doesn't make any difference.

PROSPECTIVE JUROR:  Well, I mean it has to make some kind of a difference because I mean if they killed people in the beginning and they don't kill nobody at the end and they don't get convicted of the killing because of something at the end is thrown out doesn't sound like a service is being done.

MR. DE LA GARZA:  I understand.  Thank you, Juror No. 48.  I appreciate your honesty.

PROSPECTIVE JUROR:  Got to do something.

MR. DE LA GARZA:  Your Honor, how much time do I have of the 30 minutes?

THE COURT:  You've got just under 29 minutes left.

MR. DE LA GARZA:  Your Honor, I will give the rest of the time to Mr. Linder.

THE COURT:  Mr. Linder, you can proceed. You've got about 28 and-a-half minutes.

MR. LINDER:  Good afternoon, ladies and

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 132 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2609

132

gentlemen.  Thanks for dealing with my cough over here.
The good news for you is I am the last one so I have got
30 minutes.  Most of you will be done.  There will be 12
or 14 of you left with us, but the seats are more
comfortable.

I will echo what the judge said earlier about
jury duty.  I bet a lot of you when you went to bed last
night were like great Monday morning, I have got to get
up and go serve on a jury.  Correct?  Most of you think
that?  All my friends do too.  They ask me how can I get
out of jury service.  I tell them not to.

So I think next to voting and serving in the
military serving on a jury is one of the most important
things you can do in this country.  It's really what
separates us from a lot of other countries, so I
appreciate you being here.  And I appreciate you being an
active participant in the voir dire process with the
judge and with Ms. Oliver and with Mr. De La Garza.  So I
am kind of the last one.  And as Ms. Oliver told you,
this is kind of a process of de-selection.  So bad news
for you guys, I'm going to address you all in three
different sections here.  Bad news for you guys is you
have the best chance of being on the jury.  Next best
chance.  Worst chance of being on the jury.

The way that works is by your thoughts and

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 133 of 216 PageID
#: 2610
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

133

opinions and the things you have expressed we can try to or say this person won't be fair or you may have caused yourself to not be fair in the eyes of the Court, whatever it is, and we eliminate several of you. After you're eliminated the judge starts with number one and seats the first 12 or 14 people that have not been eliminated. So why that is important is what Ms. Oliver said earlier, if you hunker down behind the person in front of you and say I won't say anything and this will all be over soon, that's the worst way to get off this jury because we don't have an opinion of yours. So you will probably end up on the jury. So thank you for participating so far and I ask you give me the same candor.

The topics we are going to talk about as you are now seeing, sex trafficking, commercial sex work, they are unsavory and it's a serious trial for the 12 or 14 of you that are going to sit with us in this trial. It will be tough. You are going to hear from some victims. You will see some videos. You are going to hear a bunch of things that you don't like. And so to make sure we don't rush to judgment I want to go through a few things with you. Burden of proof is what everybody has talked about. I will lay it out in a little bit different way. In our legal system in the court system

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 134 of 216 PageID
#: 2611
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

134

we have three burdens of proof for different types of cases.  If you have ever been in a lawsuit over money, breach of contract or injuries or things like that, we have what is called preponderance of the evidence which basically means 51 percent.  Everybody with me so far? You got to have 51 percent of evidence to get the money judgment.

Now, in lawsuits over children in family relationships trying to terminate someone's parental rights, move a child from one house to another, the courts have said that's not enough evidence to move a child.  You need clear and convincing evidence.  We can't assign a number to it like 76 or 89, it's just higher than the 51 percent.  Do all you agree with me?  I will start with section one, that it should take more evidence to remove a child from a family than it does to award a money judgment to somebody?  Anybody disagree?  Everybody in section two agree with me?  Section three everybody agree with me?  Okay.

Well, we believe money is somewhat replaceable.  Children are pretty much not replaceable. But what else is really not replaceable?  Anybody want to hazard a guess?  Juror No. 65.

PROSPECTIVE JUROR:  I was going to say environment and experience.

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 135 of 216 PageID
#: 2612
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

135

MR. LINDER:  Well, close, but I am looking for more of an academic kind of different answer.  Anybody?  What do we value in this country?  Freedom.  Our liberty.  With me so far?  If we lock somebody up without really evaluating all the evidence and later it turns out we didn't evaluate it correctly, they have lost their liberty.  It is irreplaceable, whether it's one day in jail or 20 years in jail.  That's why we have beyond a reasonable doubt as the burden of proof that the Government has got to meet on all of the elements that we are dealing with.

Can everybody in section one assure me that you understand and can hold the Government to that burden of proof?  Anybody any question about it, section one?  What about section two?  Can everybody promise me they will hold, other than the couple people we have talked to, everybody else promise me they can hold the Government to that burden?  Section three, same thing.  Okay.  At any time if you have any questions, please stop and ask me.

This is -- I enjoy this part of the trial process because we get to hear opinions of people in our community, but this is the only time you get to ask us questions too.  So I have got about 20 minutes so if something pops in your head and you want to ask, ask me.

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 136 of 216 PageID
#: 2615
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

136

Or if you want to ask the judge, this is your chance to do it.  You won't get to do it once the trial starts.

Now, yes, sir.  No. 22.

PROSPECTIVE JUROR:  Yes, this is completely unrelated.  I should have spoken up earlier, but I was just unsure.  When it comes to my employment, I'm on hourly pay so is that something I will have to bring to my employer if I am selected, or does that automatically disqualify me or is this like a case-by-case?

MR. LINDER:  Case-by-case basis.  We can make a note of it and that's something we may talk about later.  Thanks for bringing it to our attention.  All right.  How many of you think serving as a juror in a case like this will be difficult?  Anybody here think it won't be difficult?  Anybody think it would be relatively easy to serve on a jury and decide the fate of two individuals?  Anybody?

Now, what you heard earlier when the prosecutor, Ms. Miller, read the indictment, you heard that there are multiple counts.  So there is going to be different verdicts in this case.  This is going to be important.  I am going to ask you a question here in a second.  Realistically there is probably going to be three verdicts in this case.  Mr. Garland is charged in two counts, my client is charged in one count.  Each of

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 137 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2614

137

those counts are separate.  These aren't the different elements that Mr. De La Garza was talking about earlier. Each count has its own elements.  So the Government has to prove all of the elements of each count before you find someone not guilty of that count.

I had a trial couple of years in DC with five Defendants and 27 counts and the jury came back with 11 not guilty and 16 guilties, it was all different people. But they did their job.  They went through and evaluated every count, looked at every element under those counts to see if that Defendant was guilty of that count or not.

That makes sense.  Group number one, can you hold each of the three counts separate and distinct from one another?  Yes?  Anybody have trouble with that. Number two, can you hold each count separate and distinct from each other count?  Number three, same thing.  Can you hold each count separate and distinct?  Anybody have a problem or do not understand that?  What I am getting at is if you think Mr. Garland is guilty of one count, you can't just make Ms. Lyons guilty of that count.  You have got to see if the elements get there.  You may find one guilty and one not guilty of one.  So they are separate and distinct counts for each deal.

I want to talk to you now about things that are related to virtual sex work and sex trafficking.

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 138 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2615

138

First of all, I want to talk to you about pornography, the production of pornography. Who here feels that producing, I am not talking about child pornography, not any children here, who here feels that producing pornography is illegal? Anybody think that? Juror No. 65.

PROSPECTIVE JUROR: I just generally think that it's a very immoral act.

MR. LINDER: Do you think it's illegal under the law?

PROSPECTIVE JUROR: It should be.

MR. LINDER: Does anyone feel the way Juror No. 65 does, that producing pornography should be illegal? Hold the hands up. Get a checklist here. We are going to start on the left side. Juror No. 12, you feel like pornography should be illegal or producing pornography should be illegal? No. 11, same way? On this side of the room we have got Juror No. 22, 23, 24, 29, 38, 45, 41 and 42 on this side of the room.

PROSPECTIVE JUROR: Are you talking about consent? I guess when you talk about do I believe that production of pornography is illegal, what you're referring to in my mind is the consent. If you produce a video with consent and then or did not, that is then distributed and produced, that my understanding is

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 139 of 216 PageID
#: 2610
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

139

illegal.

MR. LINDER:  I am talking about consensual producing pornographic videos.  If people want to produce a movie and make a pornographic movie and sell it you can do that legally.

PROSPECTIVE JUROR:  Consent.

MR. LINDER:  I am not talking about doing something someone doesn't know or anything involving children, just regular, adult pornography.  Anybody else over here thinks it should be illegal?  No. 50, 48, 54, 52, anybody else?  Where I am going with that is there may be evidence in this case where you see people that have produced pornography.  What I am getting at is that producing pornography is not sex trafficking.  Commercial sex work is not sex trafficking.  There is different layers that we are dealing with.

Juror No. 68, you have got some experience in this in counseling people.  Would you agree with me that pornography in and of itself or producing pornography is not in and of itself prostitution and prostitution in and of itself is not sex trafficking.  They can be related, but one doesn't make the other, correct?

PROSPECTIVE JUROR:  Yes.

MR. LINDER:  So if you sat on the trial and you saw that they produced pornography are you

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 140 of 216 PageID
#: 16171
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

140

automatically going to say well, they were involved in sex trafficking?

PROSPECTIVE JUROR:  Absolutely not.

MR. LINDER:  You would want the Government to have to prove the actual sex trafficking to find them guilty of sex trafficking?

PROSPECTIVE JUROR:  Yes, sir.

MR. LINDER:  In section three does anybody disagree with Juror No. 68?  Anybody have any questions for me about that?  What about in section two?  Who had their hands up on the pornography should be illegal?  No. 22, pick on you.  You are in the front row.  If you were selected to serve on this jury and you believed, you saw evidence that these people produced pornography, are you going to automatically think well, they were engaged in sex trafficking.

PROSPECTIVE JUROR:  Panelist 22 and no.

MR. LINDER:  This section, does everybody agree with Juror No. 22?  Just because you are engaged in one offense doesn't make you engaged in another offense?  Agree?  What about over here in section number one?  Who had their hand up they thought -- No. 12.  How do you feel about that?

PROSPECTIVE JUROR:  Well, this is because I was brought up to -- I was raised Mormon, so I believe

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 141 of 216 PageID
#: 2616
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

141

that pornography, when you do pornography is a form of prostitution because you are still getting paid to have sex.

MR. LINDER:  I can see your point there, but does that then elevate it to sex trafficking?

PROSPECTIVE JUROR:  No.

MR. LINDER:  If you were selected to sit on this jury and you saw evidence that these people produced commercial pornography, are you going to automatically kind of say well, they are probably engaged in sex trafficking also?

PROSPECTIVE JUROR:  So you are asking me if I believe just because they make pornography they are automatically doing sex trafficking.

MR. LINDER:  Correct.

PROSPECTIVE JUROR:  Then the answer is no, they are not.  They can be linked.

MR. LINDER:  You would hold the Government to their burden they have to actually prove the elements of sex trafficking.

PROSPECTIVE JUROR:  Correct.

MR. LINDER:  Let me give you all an example, kind of a real simplistic example.  If you have got a person charged with -- starting over here in section one. A person gets charged with an armed robbery of a 7-Eleven

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 142 of 216 PageID
#: 2619
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

142

store and is charged with aggravated robbery with a deadly weapon.  And they go to trial and the jurors see the videos, hear from the clerk and they believe a robbery happened because the clerk takes money out of the till and gives it to the perpetrator, the robber.  But you don't see a weapon.  The camera is behind, the Defendant is looking down so you never see if the Defendant has a gun in his hand or knife in his hand and you don't believe the clerk when he said there was a weapon.  Well, aggravated robbery with a deadly weapon, deadly weapon is one of the elements of aggravated robbery.  So you can't find the Defendant guilty of aggravated robbery with a deadly weapon if you didn't believe he had a deadly weapon.  You could find him guilty of robbery, or something else, but not of the crime he was charged with.  You guys agree with that in section one?  Juror No. 13, you look puzzled.

PROSPECTIVE JUROR:  Sorry.  I was just channelling My Cousin Vinnie for a second.

MR. LINDER:  I love that movie.  We quote those movies all the time.  Any question with my --

PROSPECTIVE JUROR:  No.

MR. LINDER:  Section two over here, group two, you guys understand my hypothetical and agree with it?  And section three, any questions about my hypothetical?

The Government has all these elements that everybody has talked about under each of the three counts and they have got to get there on all the elements on each count. How many of you people have seen those movies with Liam Neeson, Taken? Everybody seen those movies, Taken? Pretty horrific. I will start in group one over here. Whose seen the movie? Juror No. 10. What are some things did that movie remind you of when you talk about or think about trafficking?

PROSPECTIVE JUROR: Someone being taken against their will.

MR. LINDER: Kidnapped? Did they have contact with the outside world?

PROSPECTIVE JUROR: No, they did not.

MR. LINDER: No cell phone. In fact, they were kept hidden away.

PROSPECTIVE JUROR: Correct.

MR. LINDER: Anyone else in section one want to give me other examples? Yes, sir, on the front row here, No. 6.

PROSPECTIVE JUROR: I would think if you are being held against your will, you have no means of communication to ask for help or anything like that.

MR. LINDER: Thank you. Anybody else? Section two, who has seen the movie what do you think

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 144 of 216 PageID
#: 2621
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

144

when you think about sex trafficking or human trafficking?  Anybody?  Somebody had their hand up earlier.  Juror 45, I haven't talked to you yet.

PROSPECTIVE JUROR:  Same that was said, being taken against your will, being coerced to do things that you wouldn't otherwise do, and not able to escape on your own.

MR. LINDER:  Thank you.  Anybody over here in section three?  Front row, 49.

PROSPECTIVE JUROR:  From that movie what comes to mind is vulnerability.  The two ladies in the film were identified by a group of persons as vulnerable and then subjected to the kidnapping and forced to do things that is I guess against their will.

MR. LINDER:  Thank you.  Now I'm going to go and ask a couple of questions that I need -- I am going to go real quick because I need individual answers to this.  I'm going to hold you guys to this.  As the Court has said and I believe the prosecutor talked about this, Mr. De La Garza might have mentioned this, the Government has the burden of proof and our clients do not have to testify.  They may testify, one may testify, one may not, they may both testify, they may both not testify.  But you cannot hold that against them or us if they choose not to.  And so the judge asked you as a group, I'm going

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 145 of 216 PageID
#: 2621
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

145

to go one by one and ask for a yes or no starting with No. 1, if my client chooses not to testify would you hold that against her?

PROSPECTIVE JUROR:  I don't understand the question.  Can you repeat?

MR. LINDER:  If my client chooses not to testify in her defense will you hold that against her when you go deliberate?  You would not?

PROSPECTIVE JUROR:  No.

MR. LINDER:  Juror No. 2.

PROSPECTIVE JUROR:  No.

MR. LINDER:  Juror No. 3.

PROSPECTIVE JUROR:  No.

MR. LINDER:  No. 4.

PROSPECTIVE JUROR:  No. 4.  No.

MR. LINDER:  Juror No. 5.

PROSPECTIVE JUROR:  No.

PROSPECTIVE JUROR:  No. 6, no.

PROSPECTIVE JUROR:  No. 7, no.

PROSPECTIVE JUROR:  No. 8, no.

PROSPECTIVE JUROR:  No. 9, no.

PROSPECTIVE JUROR:  No. 10, no.

PROSPECTIVE JUROR:  No. 11, no.  But.

MR. LINDER:  You said no, but.  There is something behind that.

Case 4:23-cr-00268-SDJ-BD     Document 276     Filed 03/02/26     Page 146 of 216 PageID
#: 2620
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

146

PROSPECTIVE JUROR:  I wish they could.

MR. LINDER:  But if they chose not to you wouldn't hold that against them?

PROSPECTIVE JUROR:  No, but I wish they would.

MR. LINDER:  Kind of like the maybe answer we had.

PROSPECTIVE JUROR:  No. 12.  No.

PROSPECTIVE JUROR:  13, no.

PROSPECTIVE JUROR:  14, no.

PROSPECTIVE JUROR:  15, no.

PROSPECTIVE JUROR:  16, no.

PROSPECTIVE JUROR:  17, no.

PROSPECTIVE JUROR:  18, no.

PROSPECTIVE JUROR:  19, no.

PROSPECTIVE JUROR:  20, no.

PROSPECTIVE JUROR:  21, no.

PROSPECTIVE JUROR:  22, no.

PROSPECTIVE JUROR:  23, no.

PROSPECTIVE JUROR:  No. 24, no.

PROSPECTIVE JUROR:  No. 25, no.

PROSPECTIVE JUROR:  26, no.

PROSPECTIVE JUROR:  27, no.

PROSPECTIVE JUROR:  28, no.

PROSPECTIVE JUROR:  29, no.

PROSPECTIVE JUROR:  30, no.

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 147 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2624

147

PROSPECTIVE JUROR:  31, no.

PROSPECTIVE JUROR:  32, no.

PROSPECTIVE JUROR:  33, no.

PROSPECTIVE JUROR:  34, no.

PROSPECTIVE JUROR:  35, no.

PROSPECTIVE JUROR:  36, no.

PROSPECTIVE JUROR:  37, no.

PROSPECTIVE JUROR:  38, because of the crimes that I have heard, yeah, I need her.

MR. LINDER:  Understand.  I appreciate your honesty.

PROSPECTIVE JUROR:  39, no.

PROSPECTIVE JUROR:  40, no.

PROSPECTIVE JUROR:  41, no.

PROSPECTIVE JUROR:  42, no.

PROSPECTIVE JUROR:  43, no.

PROSPECTIVE JUROR:  44, no.

PROSPECTIVE JUROR:  45, yes.

PROSPECTIVE JUROR:  46, no.

PROSPECTIVE JUROR:  47, no.

PROSPECTIVE JUROR:  48, yes.

PROSPECTIVE JUROR:  49, no.

PROSPECTIVE JUROR:  50, yes.

PROSPECTIVE JUROR:  51, no.

PROSPECTIVE JUROR:  52, no.

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 148 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2625

148

PROSPECTIVE JUROR:  53, no.

PROSPECTIVE JUROR:  54, no.

PROSPECTIVE JUROR:  55, no.

PROSPECTIVE JUROR:  56, no.

PROSPECTIVE JUROR:  57, no.

PROSPECTIVE JUROR:  58, no.

PROSPECTIVE JUROR:  59, no.

PROSPECTIVE JUROR:  60, no.

PROSPECTIVE JUROR:  61, no.

PROSPECTIVE JUROR:  62, no.

PROSPECTIVE JUROR:  63, no.

PROSPECTIVE JUROR:  64, no.

PROSPECTIVE JUROR:  65, no.

PROSPECTIVE JUROR:  66, no.

PROSPECTIVE JUROR:  67, no.

PROSPECTIVE JUROR:  68, no.

PROSPECTIVE JUROR:  69, no.

MR. LINDER:  Thank you.  I'm going to ask a couple more pointed questions.  I am going to start with group one again over here and you can just hold up your hands.  How many of you over here have daughters or granddaughters, hold up your hands.  So we got Jurors 1, 2, 3, 7, 8, 10, 11, and 13 and 7.  Thank you.  This middle section over here how many of you have daughters or granddaughters?  18, 19, 20, 21, 23, 26, 28, 29, 30,

Case 4:23-cr-00268-SDJ-BD Document 276 Filed 03/02/26 Page 149 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2620

149

31, 32, 33, 36, 38, and ma'am, you are 40, 42, 45, and then on this section over here. You have daughters or granddaughters 51, 47, 48, 50, 51, 53, 54, 56, 57, 58, 59, 60, back in the back, 62, and 66 and 68. Thank you. Do any of you, and I will go section by section again, volunteer with, financially support, donate money to or counsel with except for Juror 68 organizations that try to thwart human trafficking? There is all kinds of organizations. Anybody in section one spend volunteer time or donate money to organizations? Juror No. 5.

PROSPECTIVE JUROR: I'm in a small group. The person's name is Jaco. He fights against sex trafficking. His sister was sex trafficked for six years and he has testimony on that so we meet once a month and they are high profile people and small group so, yeah.

MR. LINDER: Followup question. Would sitting in this kind of trial be difficult for you or do you think you could be fair?

PROSPECTIVE JUROR: No, I would be fair. As we sit here right now they are innocent until guilty.

MR. LINDER: Even though you volunteer your time with that organization you don't think that would give you an agenda in this kind of case.

PROSPECTIVE JUROR: No, sir.

MR. LINDER: Thank you very much. Group two,

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 150 of 216 PageID
#: 2627
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

150

middle group here, anybody?  We have got a juror in the back.

PROSPECTIVE JUROR:  31.  I have been to a Treasury Vessels events.

MR. LINDER:  Do you support that financially?

PROSPECTIVE JUROR:  I paid to go to the event.

MR. LINDER:  Do you think you could be fair in this type of case?

PROSPECTIVE JUROR:  Yes.

MR. LINDER:  Thank you very much.  Any questions for me about the type of case?  Somebody else had their hand up.  Yes, sir, No. 16.

PROSPECTIVE JUROR:  I teach Sunday school and I'm in a safe environment to report anything, just lookout and report anything.

MR. LINDER:  Do you think you could be fair in this type of trial?  I know we talked about some other issues, but with that issue that you teach, would that prevent you from being fair in this case?

PROSPECTIVE JUROR:  I'm not sure.

MR. LINDER:  You are not sure?  Think about it.  Would you be able to be fair being that you teach about reporting and things like that, would you be able to be fair in this case, or is that going to affect your ability to be neutral?

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 151 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2620

151

PROSPECTIVE JUROR:  I have to see the evidence.

MR. LINDER:  Good answer.  Anybody else on this side?

THE COURT:  Mr. Linder, you've got about a minute and-a-half left.

MR. LINDER:  Thank you, sir.  This side here, anybody on this side financially support, volunteer with or support organizations that try to thwart sex trafficking.  I know No. 68.  Anybody else?  All right. One last question.

PROSPECTIVE JUROR:  I have a question. Panelist No. 2.  I'm a nurse so obviously I would have a duty to report.

MR. LINDER:  Would that affect your ability to be fair in this case?

PROSPECTIVE JUROR:  No.

MR. LINDER:  One last question and I'll sit down.  Anybody here who, and we have already heard from a few people, but anybody else we haven't heard from.  I am going to ask this question a little bit differently. Anybody here who yourself, a close friend or family member has been a victim or been affected by sex trafficking?  Group one?  We talked to a couple of you already.  Anybody else?  I asked it a little bit

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 152 of 216 PageID
#: 2629
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

152

different way.

PROSPECTIVE JUROR:  I understand victim, but when you say affected by.

MR. LINDER:  Someone who has had a family member that was trafficked or had someone that was convicted of participating in an offense like that, anything.

PROSPECTIVE JUROR:  Thank you.

MR. LINDER:  Anybody else group one?  Middle group, group two, anybody who yourself, close friend or family member has been a victim or involved with any kind of sex trafficking offense?  Group three, anybody over here?  Last chance to ask me a question.  Thank you very much.

THE COURT:  Thank you, Mr. Linder.  I want to go back to the entire panel and cover something I covered at the very beginning, but there's a reason I do this. At the very beginning I have talked about hardship or some extraordinary reason that would have been unreasonable for you to serve on the jury.  I'm going to come back and for anyone who hasn't told me if you have some reason that hasn't already been articulated that it would be unreasonable for you to serve, I want you to let me know now.  And I will tell you the story that too often I don't hear anything.  We impanel the jury.  They

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 153 of 216 PageID #: 1630
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

153

are sworn.  Everybody else has left and then the next day or that afternoon someone on the jury says oh, wait a minute.  I'm supposed to pick up a child every day at 8:00.  I'm supposed to take care of somebody.  I don't want to hear that.

So now is the moment to make sure you tell me now if there's any reason that you haven't already told us that it would be unreasonable for you to serve.  No. 50, I already have you.  This is your disability.  So let's come back.  No. 1.

PROSPECTIVE JUROR:  It's not my surgery, but my partner has surgery tomorrow and I will pick him up and take care of him.  You may say somebody, but it's kind of difficult.

THE COURT:  So I want to be clear.  This is a surgery your partner is having that's going to require somebody to care for him?

PROSPECTIVE JUROR:  He will have a back surgery.

THE COURT:  And you are going to be the person who is going to need to bring him home and take care of him?

PROSPECTIVE JUROR:  Yes.

THE COURT:  All right.  Thank you, No. 1.

PROSPECTIVE JUROR:  No. 8.  My wife and I, we

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 154 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2631

154

have one car and I have an 11-year old who is in honor choir and cello in the afternoon. I have to leave work to go cart her around to her various activities all throughout this week and next week.

THE COURT: And what time are you usually picking her up?

PROSPECTIVE JUROR: 5:30.

THE COURT: Okay. This week and next week you would be the one who needs to do that?

PROSPECTIVE JUROR: She's going into sixth grade so they are doing a lot of middle school prep stuff for the next two weeks.

THE COURT: Thank you. Yes.

PROSPECTIVE JUROR: So I teach in a district that is 30 minutes away from the city that I live in, so my son goes to school there. He wouldn't have anyone to pick him up after school.

THE COURT: You're the person who needs to pick him up every day when he leaves school or you drop him off and pick him up I take it?

PROSPECTIVE JUROR: Yes. I can maybe make arrangements for a couple of days, but anyone would have to drive an hour round trip in order to pick him up for me. But just letting you know.

THE COURT: What time do you pick him up in

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 155 of 216 PageID
#: 2632
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

155

the afternoon?

PROSPECTIVE JUROR:  He gets out at 4:45.

THE COURT:  Thank you, ma'am.  Anyone else?
We have No. 38.

PROSPECTIVE JUROR:  You mentioned work.  Mine
is a little different.  The PGA show is coming up.  I am
in the golf industry, spent $60,000 on our booth, part
owner of the company.  We have influencers coming in and
all this stuff.  You mentioned the duration of it.  That
have already paid for all this.  It is coming up on the
-- we go out the 19th.

THE COURT:  Right.  So your role in that is
you're the person --

PROSPECTIVE JUROR:  Vice president of the
company and I have got eight sales guys coming in, our
co-founder and influencers from all over the nation
coming in to be at this show.  It's the biggest PGA show
in the world.

THE COURT:  That's starting on next Monday?

PROSPECTIVE JUROR:  We were leaving out on the
19th through the 24th.

THE COURT:  Thank you.

PROSPECTIVE JUROR:  No. 31.  My husband is
going out of town.  I am responsible for two kids
pickups.  My son will be ten years old and he can maybe

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 156 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2633

156

stay home alone until I get back and then my daughter, I'd have to pick her up at daycare in McKinney by 6:00.

THE COURT:  Thank you, ma'am.

PROSPECTIVE JUROR:  33.  My wife leaves for out of town starting tomorrow morning and gets back on Thursday and I have a nine-year-old daughter that I pick up from school, take to school.  She gets out at 3:05.

THE COURT:  So you would need to be picking her up at 3:00 for the next two days.  So your issue would be just tomorrow and Wednesday.

PROSPECTIVE JUROR:  Tomorrow and Wednesday and Thursday.

THE COURT:  And Thursday.  Okay.

PROSPECTIVE JUROR:  26.  So my wife will be actually working on the 16th and I would actually have to drop off my son in the morning.  So I can come, but it will be late, probably 8:30 or 9:00.

THE COURT:  This is tomorrow.

PROSPECTIVE JUROR:  On the 16th.

THE COURT:  So that's the only day?

PROSPECTIVE JUROR:  Only day.

THE COURT:  And you said you think you can be here by 9:00?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  Thank you.

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 157 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2634

157

PROSPECTIVE JUROR:  47.  I'm not my mother's primary caregiver.  She is in South Texas, but she has dementia and the reports from my siblings yesterday was that she's not getting out of bed anymore and it's probably time to see her.  So I thought if this was going to be a short trial it will be nice and easy, but going into all of next week I just don't foresee that I would be able to make the trip.

THE COURT:  Thank you.

PROSPECTIVE JUROR:  I know I mentioned my disability, but I want to add that with the speakers it's worse so there's no way I can spend days after days with that noise.

THE COURT:  Thank you.

PROSPECTIVE JUROR:  I have a trip planned to Denver.

THE COURT:  What number are you?

PROSPECTIVE JUROR:  55.  My flight is next Thursday.

THE COURT:  Is this -- what kind of trip is this, a personal trip or business?

PROSPECTIVE JUROR:  Personal trip.

THE COURT:  All right.  Thank you, ma'am.

PROSPECTIVE JUROR:  52.  I have to pick up my son from elementary school at 3:00 every day.

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 158 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2635

158

THE COURT:  Are you the only one who can pick him up?

PROSPECTIVE JUROR:  My husband works in downtown.

THE COURT:  Remind me your number again.

PROSPECTIVE JUROR:  52.

THE COURT:  What time did you say you have to pick up every day?

PROSPECTIVE JUROR:  3:00.

THE COURT:  Thank you, ma'am.

PROSPECTIVE JUROR:  53.  I need to pick up my kids.  I have custody of my kids.  I am taking care of them.

THE COURT:  You're the only one that can pick them up?

PROSPECTIVE JUROR:  Ex-husband can't.

THE COURT:  Thank you.  Anybody else?

PROSPECTIVE JUROR:  I get my brother ready for school every morning and I pick up my sister after school every single day and I also take care of them afterwards.

THE COURT:  Anybody else who can do that over the next couple weeks?

PROSPECTIVE JUROR:  Maybe, but they would be like alone.

THE COURT:  I just want to make sure I have

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 159 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2630

159

your answer.  You said maybe, but they would be alone.  Does that mean that there isn't somebody who can take your place?

PROSPECTIVE JUROR:  Yes, there would be.

THE COURT:  All right.  Thank you.

PROSPECTIVE JUROR:  No. 64.  I have got a lot of work coming up starting Wednesday and we are going to be busy from Wednesday until May.  It will be a lot of overtime.  My foreman kind of got upset me having to come to this.

THE COURT:  Okay.  Anybody else?  All right.  Members of the panel, we are going to have you go back to the jury room.  We are going to take a somewhat long break.  We may be calling some of you back in to answer individual questions.  When we bring you back in we are going to select our jury and administer the oath and anyone whose not selected to serve on the jury will be excused at that time.

For those who are serving on the jury, once we administer the oath we are going to release you for lunch at that time.  So we will have you go back to the assembly room now and when we come back we will select our jury.  Thank you.

(Prospective jurors exited the courtroom, 1:27 p.m.)

(The following was held outside the presence of the prospective jurors.)

THE COURT:  You can be seated.  Counsel, I'm going to start with our challenges for cause before we get to all the people who have various reasons why it would be difficult for them to serve because I think it will helpful to know what we are working with on our numbers of who can't serve for cause first.

I'm going to go ahead and start with the Government and we can just work through the people that the Government has.  You may have some of the same ones that I have noted, but let's start with the Government and then we will work to the defense.  So, Ms. Miller, or Ms. Oliver, who do you have you think we need to look at excusing for cause?

MS. OLIVER:  Thank you, Your Honor.  The Government has panelist No. 11, 16, 38, 45, 50, and 65.

THE COURT:  All right.  Let's just talk about each of those one by one.  So let's talk about 11 first. And I am pulling up my notes, but Ms. Oliver, you can proceed with what you have for No. 11.

MS. OLIVER:  Thank you, Your Honor.  The Government has that No. 11 cannot be fair pursuant to the Fifth Amendment and also he cited that he couldn't be fair due to his family friend who has the conviction for

sex assault offense.

THE COURT:  All right.  Do the Defendants agree that this juror should be excused for cause?

MR. LINDER:  Yes, Your Honor.

MR. DE LA GARZA:  Yes, Your Honor.

THE COURT:  Juror No. 11 will be excused.  Ms. Oliver, the next one you had is No. 16.  This witness as I recall -- I am sorry -- this panel member had came up on a number of points beginning early with he thought there was an unfair conviction of a relative.

MS. OLIVER:  Yes, Your Honor.  The Government agrees with that.

THE COURT:  And I think at the end he also had an issue that the Defendant is not testifying.  Is he one of those?

MS. OLIVER:  Yes, sir.

THE COURT:  Do the Defendants agree that this person should be excused for cause?

MR. DE LA GARZA:  Yes, Your Honor.

MR. LINDER:  Yes, Your Honor.

THE COURT:  No. 16 is also excused for cause. No. 38.  I think we heard No. 38 throughout the questioning and I think he made very clear that this is not a case where he can be fair and impartial.  Ms. Oliver, I assume that's what you are going to say?

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 162 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2639

162

MS. OLIVER:  Yes, sir, we agree with that.

THE COURT:  Defense agree?

MR. DE LA GARZA:  Yes, Your Honor.

MR. LINDER:  Yes, Your Honor.

THE COURT:  So No. 38 is also excused.  Let's go to No. 45 and, Ms. Oliver, you can proceed.

MS. OLIVER:  Thank you, Your Honor.  We did have 48, however, I do believe that the defense did cause 45, just for the sake of clarity for the record.

THE COURT:  Did you mean 48 when you said 45?  Or do you also have an issue with 45?

MS. OLIVER:  We meant 48, Your Honor.  I apologize.

THE COURT:  All right.  I think 48 is another one similar to 38 who we heard a lot from during the questioning and I think maybe made clear he cannot be fair and impartial.  So let me ask the defense counsel, do you agree that No. 48 should be excused?

MR. DE LA GARZA:  Yes, Your Honor.

MR. LINDER:  Yes, Your Honor.

THE COURT:  So No. 48 is also excused.  That brings us to No. 50.  I think this is somebody who, I will let you address this, Ms. Oliver, there was a little bit of back and forth about I can try to be fair and impartial, but also seemed to be repeatedly coming back

Case 4:23-cr-00268-SDJ-BD  Document 276  Filed 03/02/26  Page 163 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2640

163

with I feel like the indictment is strongly swaying me.

MS. OLIVER: Yes, sir, we do agree with that. And we do see also that in this is a double cause, the defense cause for No. 50 as well came back on the Fifth Amendment right not to testify.

THE COURT: You know what? No. 50 is a non-starter. She is one with the hearing disability so No. 50 is not physically capable I think of even serving. Defense agree No. 50 should be excused?

MR. DE LA GARZA: Yes, Your Honor.

MR. LINDER: Yes, Your Honor.

THE COURT: No. 50 is excused. The next one we have is No. 65. Ms. Oliver, you can proceed.

MS. OLIVER: When questioned about the Fifth Amendment right not to testify and whether or not the Defendants could be looked at as being not guilty before hearing the evidence, Juror No. 65 did not seem to agree with that. So we have potential Juror No. 65 for Fifth Amendment.

THE COURT: Does the defense counsel agree this juror should be excused?

MR. DE LA GARZA: Yes.

MR. LINDER: Yes.

THE COURT: No. 65 is excused. Is that the entire list for the Government?

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 164 of 216 PageID #: 2641
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

164

MS. OLIVER:  Yes, sir.  That concludes our list.

THE COURT:  All right.  Let me come to defense counsel and we can start with whichever one wants to go, Mr. De La Garza or Mr. Linder, you can just give me your whole list.  We will work through them like we did with -- Mr. Whalen.

MR. WHALEN:  Can we have a second to collect our thoughts so we can be more efficient?

THE COURT:  Yes.

(Off the record conference.)

MR. WHALEN:  I think we are ready, Your Honor.

THE COURT:  Are you speaking for all the Defendants?

MR. WHALEN:  Yes.  I think the first would be No. 8.

THE COURT:  You can give me --

MR. WHALEN:  8, 30, 54, 55 and 58.

THE COURT:  All right.  You know what?  I don't know if we can make this easier on No. 8 because I think what No. 8 just told us is I think he's got kid pick ups that are going to make it not really possible for him to serve anyway.  Does the Government agree No. 8 cannot really serve anyway?

MS. OLIVER:  Sure, Your Honor.  We agree with

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 165 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2641

165

that.

THE COURT:  So I think that's one that -- we will come to some of these other ones, but No. 8, everyone seems to agree he should be excused.  So No. 8 is excused.  All right.  No. 30, go ahead.

MR. WHALEN:  Your Honor, what he said was the indictment was sufficient, he had a bad feeling about this.  That he would do his best, but couldn't guarantee us that he could set that aside.  And I think he's already started him off as a guilty just by the indictment.

THE COURT:  This is interesting.  I wonder if we should bring him back.  The way I had this note that says hard for him to resist feeling, but not really clarifying exactly what this feeling is and saying I'm going to do my best.  But I agree that he seemed equivocal.  What's the Government's position?  Does the Government think this person should be excused?

MS. OLIVER:  Your Honor, I want to just for the sake of time minimize how many people we bring back, but No. 30 may be more appropriate to bring back.  I do understand that he went back and forth, but maybe another question to help clarify his position.

THE COURT:  Well, let's go through the rest of yours and see if we need to bring that back up.  I'm

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 166 of 216 PageID
#: 2643
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

166

going to put a note that we should bring 30 back.  Let's go to 54.

MR. WHALEN:  54, he was kind of in the same boat, said the indictment was evidence of guilt to him, where there is smoke there is fire.  I think he was pretty unequivocal by saying he wouldn't be able to set that aside.

THE COURT:  He's the one I was thinking of before candidly a few minutes ago when we were actually talking about 50.  I was thinking of 54.  The note I have for 54 at least initially when he first spoke was I am not saying that I think they are guilty, but he used the term scales.  He said I think the scales are tipped against the Defendant, but then he said I can still be impartial.  What's the Government's feeling?

MS. OLIVER:  Government would agree to Cause No. 54 actually based on defense counsel De La Garza's cause for Fifth Amendment reasons, so we would agree.

THE COURT:  We will excuse No. 54 then.  And that brings us to No. 55.  Go ahead, Mr. Whalen.

MR. WHALEN:  My notes have for 55 they wouldn't be here if they didn't do something wrong and didn't seem to follow the presumption of innocence.

THE COURT:  I have that she said they wouldn't be here if they didn't do something wrong, but she can be

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 167 of 216 PageID #: 2644
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

167

impartial, but right now I'm swayed one way.  So sounds like she is basically acknowledging she is starting off with a bias.

MS. OLIVER:  I agree with that, Your Honor.

THE COURT:  So I do think 55 should be excused.  So then you have 58.  You can proceed, Mr. Whalen.

MR. WHALEN:  I think 58 is the same vein of the indictment.  One of my notes is they make a bad impression, things of that nature, so I think they are not following the presumption of innocence and I think they are pretty strong on that.

THE COURT:  I don't know if we came back to that person because he did say initially, but I think I can still be impartial.  He talked about that bad first impression.  Any questioning come back with 58?  Do we have more from 58?  What's the Government's position?

MS. OLIVER:  Your Honor, the Government's position is that we do understand the juror -- potential went back and forth, but we are not resolved that it's enough to amount to a cause, so perhaps we can bring him back.

THE COURT:  Let's bring 58 back too.  Just I'm not sure that we came back to him.  I agree that his initial comments raised a concern.  So what I have on

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 168 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2645

168

your list is 30 and 58 we are going to bring back.  Any others, Mr. Whalen?

MR. WHALEN:  I did have 47 potentially if my notes are correct about testifying, failing to testify, was one of the few that answered they would hold it against him when Mr. Linder was questioning them.

THE COURT:  Was that 47 or 45?  For Defendants testify I have 50 and 45.

MR. WHALEN:  I might have been mistaken, Your Honor.

THE COURT:  So you are asking to excuse 45 or bring him back?

MR. WHALEN:  Excuse 45, Your Honor.

THE COURT:  Does the Government agree?

MS. OLIVER:  Yes, Your Honor.

THE COURT:  So 45 will be excused.  Mr. Whalen, anyone else?

MR. WHALEN:  I do not think we have anybody else, Your Honor.

THE COURT:  So let's have our court security officers bring back No. 30 and 58 and they can come in individually in that order.  So hold 58 at the door while you bring in 30.

(Prospective Juror 30 entered the courtroom.)

THE COURT:  Panelist No. 30, would you come up

to the big podium here where we have the microphone.
Thank you for coming back, sir.  We want to visit with
you a little bit because in the general questioning of
the panel there was a portion that had to do with whether
you felt like you might have a bias or you might be
swayed one way or the other before even starting.  And
you had talked about you would do your best, but you said
it might be hard for you to resist certain feelings.

So I want to come back to you, just sort of
reiterate what we are looking for.  We are looking for
jurors who are going to have an open mind and are going
to be willing to hear all the evidence in this case and
hold the Government to its burden of proof and to follow
the law as I explain it to you in reaching a verdict with
your fellow jurors.  Are those things that you think you
can do?

PROSPECTIVE JUROR:  As I say, I will do my
best.  Because these feelings always like to form a
judgement to be fair, I say because this is emotionally
touching me.  Human trafficking, all this is coming back
and emotionally impacting me.  Honestly so this is why I
say I try to be professional as you can say it or fair,
but internally it's always maybe I am not hundred percent
sure.

THE COURT:  Well, it sounds like as the

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 170 of 216 PageID
#: 6417
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

170

lawyers were going through with your fellow prospective jurors, I want to make sure I am understanding you.  Can you work from the starting point that these two Defendants are innocent right now?  The indictment is an accusation, it's nothing more than an accusation.  The Government has to prove these crimes entirely, every element.  Can you do that?

PROSPECTIVE JUROR:  The part of that is confusing me when he say about example as we take four out of five wrong and five element was not on the district, that's confusing and make me uncomfortable.  Because those four elements has been met as guilty, but there's another one who has not met the criteria which is I cannot.

THE COURT:  Well, before I let the lawyers question you I want to make sure I understand.  Because as they have told you, I'm going to explain to law to you and if I say to the jury there are four elements to this crime.  The Government must prove every one of them and I am going to just give you an example from just the regular world, which is you know that we have $H_2O$, which is water.  Two hydrogen molecules and an oxygen molecule.  If you don't have the oxygen molecule you don't have water.  If you don't have one of the hydrogen molecules, you don't have water.  Understand?  Right?  You don't

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 171 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2648

171

have one of them you don't have water.  If you don't have all the elements of the offense you don't have the crime. Is that something you can apply?

PROSPECTIVE JUROR:  Yes, I can.

THE COURT:  So I'm going to let the lawyers question you.  I may come back to you.  Ms. Miller or Ms. Oliver, do you have any questions for this witness?

MS. OLIVER:  Just one, Your Honor, if I may. No. 30, you understand that the Government has not produced any evidence at all right now?

PROSPECTIVE JUROR:  Yes.

MS. OLIVER:  And under the Fifth Amendment both Defendants are innocent because no evidence has been provided.  Could you be fair and impartial and start them off with finding them not guilty right now and then waiting until you hear all of the evidence before you make a decision?

PROSPECTIVE JUROR:  I would do that.

MS. OLIVER:  Thank you.

THE COURT:  Any questions from defense?

MR. LINDER:  Briefly, Your Honor.  Juror No. 30, you had mentioned that when the indictment was read you kind of assumed they were guilty already based on the also known as that were read, all that kind of stuff.  Do you remember when you said that?

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 172 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2649

172

PROSPECTIVE JUROR:  Repeat that.

THE COURT:  Mr. Linder, I don't think he said that.  I think you are thinking of somebody else.

MR. LINDER:  Oh.  I apologize.  I had a note as No. 30.  Are you sure?  Never mind.  I might have had the person behind him.

THE COURT:  I have notes during that part of questioning and I don't have that for 30.

MR. LINDER:  I apologize then.  I have no questions, Your Honor.

THE COURT:  Mr. De La Garza?

MR. DE LA GARZA:  The key question I have for you, No. 30, is this.  As the judge mentioned about the hydrogen molecules, let's say the Government proves three out of the four elements, whether it's a technicality or not, if the prosecutor prove three, not four, what's your verdict?

PROSPECTIVE JUROR:  I would go guilty.  This is what I am feeling because it's three out of four.

MR. DE LA GARZA:  So what I am hearing you say --

PROSPECTIVE JUROR:  I know the judge say that's --

MR. DE LA GARZA:  Your answer is okay.

PROSPECTIVE JUROR:  This is what I am feeling.

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 173 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 1650

173

This is what I believe, even the three, like I say five from four, so I see it's --

MR. DE LA GARZA:  So if they are supposed to prove four elements and they don't prove all four, you are still going to find them guilty is what you're saying?

PROSPECTIVE JUROR:  If they -- from the five if they have proved four.

MR. DE LA GARZA:  Whether it is five, whether it's four elements, whatever the number that the judge gives you, they missed one of them, doesn't make any difference.

PROSPECTIVE JUROR:  It's hard to me to say not guilty if I was missing only one from the evidence.

MR. DE LA GARZA:  Thank you.

THE COURT:  I just want to make sure I understand, No. 30, that even if you are told in the instructions you can't find them guilty, you are still going to feel like you need to?

PROSPECTIVE JUROR:  Yes.

MS. OLIVER:  Your Honor, may I just ask one clarifying question?

THE COURT:  Sure.

MS. OLIVER:  Juror No. 30, you understand that we are not -- the indictment that Ms. Miller read were

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 174 of 216 PageID #: 2651
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

174

multiple counts, so multiple criminal offenses.  Within each count, within each criminal offense there are ingredients or different elements that you have to follow before you can find that one count guilty.  Do you understand?

PROSPECTIVE JUROR:  Yes.

MS. OLIVER:  So with that in mind if all of the ingredients have not been met, you're saying that you would still find that person -- let me finish the question, sir.  With all the ingredients and it's the law that we have to prove all the ingredients for that one charge to find them guilty, you're saying that you still would find them guilty even though the law says that we need all the ingredients, so you are saying that you cannot follow the law?

PROSPECTIVE JUROR:  Yes, I cannot as I feel.

MS. OLIVER:  Thank you.

THE COURT:  Thank you for your candor, No. 30.  Appreciate it.  You can go back to the jury assembly room.

(Prospective Juror 30 exited the courtroom.)

THE COURT:  So I think we need to excuse No. 30.  Agreed?

MS. OLIVER:  Agreed.

MR. DE LA GARZA:  Agreed.

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 175 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2652

175

THE COURT:  We have No. 58 coming in now.

(Prospective Juror 58 entered the courtroom.)

THE COURT:  Panelist 58, would you come up to the big podium right in front of you.  I want to come back to you because at an early point in the general questioning from the attorneys that was talking about the indictment and the effect it may have had on you and whether you could be fair and impartial in this case. You talked about it creating a bad first impression on you, the indictment, but then I recall you saying you thought you could still be impartial.  And so can you elaborate a little bit?  Do you feel that you can hold the Government to its burden of proof, presume these Defendants are innocent, keep an open mind, hear all the evidence, follow the Court's instructions and be fair and impartial?

PROSPECTIVE JUROR:  I think I can.  I'm an engineer by background so I'm pretty facts based.  I look at the facts that will be presented by the Government and I am going to look at the instructions that you are going to provide and from that match up the two.  That being said, I do have three kids, two girls.  So the nature of the crimes is to me just disturbing and it's going to be -- bottom line for me in the end it is going to be the facts versus instructions.

THE COURT:  Let me cover one more thing before I see if the attorneys have questions.  You may recall during my questions of you after Ms. Miller read the indictment to you I said to all of you the indictment is not proof of anything.  It is an accusation.  And the Government and the Defendants all understand that the Defendants start this case with a clean slate.  There's an accusation against them.  The Government has proved literally nothing, zero at this point.  And so while the accusation may be very serious, we don't have any proof whatsoever right now.  And so I know what's important for the lawyers on both sides is for you to be candid and tell us that not withstanding the fact that you may understand that and you have been told that by the Court, that you have difficulty with the notion that you have to begin presuming the Defendants are innocent, require the Government to prove its case and keep an open mind, wait until all the evidence is in and follow the Court's instructions.  Can you do that and be fair and impartial to these Defendants and to the Government?

PROSPECTIVE JUROR:  Yes.

THE COURT:  Let me see if the attorneys have questions for you.  Ms. Oliver?

MS. OLIVER:  No questions from the Government, Your Honor.  Thank you.

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 177 of 216 PageID
#: 2654
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

177

THE COURT:  Mr. De La Garza.

MR. DE LA GARZA:  Yes, Your Honor.  I am concerned with your earlier comments earlier at the very beginning where you implied that we were starting off behind because of the nature of the offense and that's to be expected, right?  The nature of the offense, especially if you have daughters, it's not really something -- is this something that you would be comfortable and let me just ask you this way.  If after whatever evidence that the Government presents, knowing that you have got two daughters that you got to go home to every night and at the end of the case if you felt that these two Defendants were not guilty, is that something you can come up and say the Government didn't meet their burden?  Is that something you can do?

PROSPECTIVE JUROR:  I can do that.

MR. DE LA GARZA:  And whatever feelings you have, whatever emotions you have, you can set those aside?

PROSPECTIVE JUROR:  I will set those aside.

MR. DE LA GARZA:  Thank you.

THE COURT:  Thank you, Panelist 58.  You can go back to the assembly room.  Appreciate your candor.

(Prospective Juror 58 exited the courtroom.)

THE COURT:  I am inclined to allow 58 to

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 178 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2655

178

serve.  Does the Government agree?

MS. OLIVER:  We do agree.

THE COURT:  Mr. De La Garza, are the Defendants satisfied?

MR. DE LA GARZA:  Yes, Your Honor.

THE COURT:  So No. 58 will be there.  So I'm going to come back to the number of people that ultimately we have who are citing a variety things going on in their lives.  We have struck for cause by my count 12 -- no, 11, I have 11.  We have struck 11.  So I think I will be keeping in mind our numbers as we come back to what winds up being a number of people with things going on in their lives.  And I think and hope I got all these, but you all can tell me if I missed somebody along the way.  I'm not going to go to the not paid people yet.

I am just talking about people that are saying they have something that's very significant.  Let's start with No. 1.  She said her partner is having back surgery tomorrow and she will be caring for this person.  I tend to think we need to excuse No. 1.  Does the Government agree?

MS. OLIVER:  We agree, Your Honor.

MR. DE LA GARZA:  Yes, Your Honor.

THE COURT:  All right.  Mr. Linder, you agree?

MR. LINDER:  Yes, Your Honor.

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 179 of 216 PageID
#: 1650
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

179

THE COURT:  So we will excuse No. 1.  No. 8 we have already excused.  Number -- these may not be in numerical order so pardon me on that.  We have No. 9 who talks about a 4:45 pickup of her son, I think having to drive 30 minutes or something.  Seemed like this may be somebody we need to excuse.  Does the Government agree?

MS. OLIVER:  We agree, Your Honor.

THE COURT:  Defense?

MR. DE LA GARZA:  We agree, Your Honor.

THE COURT:  Mr. Linder?

MR. LINDER:  Yes, sir.

THE COURT:  So we will excuse No. 9.  No. 57 I want to come back to because No. 57 also was the high risk pregnancy.  She has an appointment next week and she is a high risk pregnancy.  I tend to think we should excuse her.  I think there was other issues for her as well.  She is paid hourly, but it's the pregnancy issue.

MR. DE LA GARZA:  No objection, Your Honor.

MS. OLIVER:  No objection, Your Honor.

THE COURT:  So we will excuse 57.  No. 26 was another one that seemed to have -- be the only person who could pick up kids.  Is there an issue on that?  I have a -- we had a lot of people at that point.  What notes do you all have on 26?

MS. MILLER:  Your Honor, the note that I have

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 180 of 216 PageID
#: 2657
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

180

is that on one day and Friday he needed to arrive by nine.

THE COURT:  Right.  So I think 26 can actually stay then.  Sound right to the Defendants too?

MR. DE LA GARZA:  Yes, Your Honor.

THE COURT:  So we will keep 26 on there.  And similarly, this one is more of a problem, 33 talked about tomorrow, Wednesday and Thursday that they would have pickup duty.  After that it sounded like they would be okay, but that seems rather problematic.  What do counsel think on this one?

MS. OLIVER:  Your Honor, we would agree to release 33.

THE COURT:  Defendants agree?

MR. DE LA GARZA:  Yes, Your Honor.

MR. LINDER:  Yes, Your Honor.

THE COURT:  So 33 will be excused.  Here is one sort of on the bubble.  So No. 31 talks about pick up kids, but they did talk about picking them up by 6:00 so that's close, but I'm not sure if this is somebody we want to bring back or we want to excuse.  We have some room here.

MS. OLIVER:  Your Honor, we would prefer not to excuse them right at this point in time.

THE COURT:  What does the defense say?

MR. DE LA GARZA:  Which number was that again?

THE COURT:  This is 31.  She was saying she had kids pickups, but the pickup is at like 6:00 p.m.

MR. WHALEN:  I think she also said she has a 10-year-old and she said I can leave him home alone for a little bit.  So there was that concern I think with her as well.

THE COURT:  We could bring her back and talk to her, but my inclination would be not to have somebody who is going to have a problem on day two or day three and then be worried about using an alternate.  That's my concern.  We could have her come back.  It was a little bit non-specific, but if both sides are willing to excuse her.

MR. DE LA GARZA:  We are willing.

THE COURT:  Is the Government okay with excusing her?

MS. OLIVER:  We are okay.

THE COURT:  I think that's probably the best course.  We will excuse 31.  Now, I will tell you some -- that this is pretty far, but No. 64 with we have got a lot of work.  No, he's staying on the panel.  I am sorry if his foreman doesn't like it.  Let me come back to some of the other ones that we had.  53 was another one that we had picking up kid issues.  52 and 53 were both

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 182 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2659

182

picking up kid issues.  Do we have an issue with excusing those two?

MS. OLIVER:  We don't have an issue, Your Honor, and actually we wanted to raise if it please the Court, Juror No. 47 we think may be more pressing of an issue.  Her mother has dementia.  Not getting out of bed.  Looks like her family wants to call.

THE COURT:  Yes, I have 47 here too.  So anyone have an issue with 47, 52 and 53 being excused?

MR. LINDER:  No.

MS. OLIVER:  No, Your Honor.

THE COURT:  So --

MR. DE LA GARZA:  Those were 47 and 52?

THE COURT:  And 53.  And then I think I have to say 55 -- she has already been eliminated.  So that leaves 65 who he has been eliminated already.  So that grouping I want to make sure because we have a lot of people at the end that came back with -- I think that's everyone on my notes other than people who are not being paid.

MS. OLIVER:  Yes, Your Honor.

THE COURT:  Sound like everybody except not being paid?  Now, let me go through how many we have.  So we have excused 19 already.  You know what?  I mean I honestly think, sorry, but this one for the not paid

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 183 of 216 PageID
#: 2680
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

183

people, I think we just can't.  Because the problem is going to be we are going to have to pick and choose like some of them we are going to let go and some of them we are not.  And I think my call will be just for this jury whichever ones are on it, you know, they are going to be serving their country and unfortunately they may have some lost pay.  So what I will do now is give you all some time to -- Mr. Whalen, did you have something else?

MR. WHALEN:  Your Honor, a potential oversight on my part would be Juror 41.  She is in the I am not going to get paid category, but she was also in the category of I'm a cosmetologist, I have had training in human trafficking.  She did say this may not be the case for me.  I don't know whether she got over the line, but I want to look at her one last time.

MS. OLIVER:  Your Honor, we are not opposed to bringing her back, but upon further questioning she did say that she could be fair so we don't think there is a real cause there.

THE COURT:  She went back and forth, but I get Mr. Whalen's concern.  Let's bring back 41.  She ultimately said I can be fair.

(Prospective Juror 41 entered the courtroom.)

THE COURT:  Panelist No. 41, would you come up to the big podium here right in the center.  The reason

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 184 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2661

184

we wanted to bring you back is you had a few colloquies with counsel about your experiences as a cosmetologist and things with human trafficking.  And initially at least you had a concern about would that affect your ability to be fair and impartial.

I think ultimately you had said you did think you could be fair and impartial, but we want to be absolutely certain of that, that you feel very confident that you will presume the Defendants are running at a clean slate, that they are innocent, the Government has to prove its case entirely.

PROSPECTIVE JUROR:  Definitely.

THE COURT:  Definitely.  You can be fair and impartial, wait until all the evidence is in, hear it with an open mind and follow the Court's instructions?

PROSPECTIVE JUROR:  Yes.

THE COURT:  All right.  Does the Government have any questions?

MS. OLIVER:  No questions, Your Honor.

MR. WHALEN:  Now, I understand that you may have had some training or experience with human trafficking.  You understand if you are selected as a juror you can't bring that information and share it with your other jurors?

PROSPECTIVE JUROR:  Right.

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 185 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2662

185

MR. WHALEN:  Thank you, Your Honor.

THE COURT:  Thank you, No. 41.  We appreciate it.

(Prospective Juror 41 exited the courtroom.)

THE COURT:  I think she can serve.  Everyone agree?

MS. OLIVER:  We agree.

MR. WHALEN:  We agree, Your Honor.

MR. LINDER:  Yes.

THE COURT:  So anyone else, any other juror we need to bring back or talk about that we haven't already?

MS. OLIVER:  Not from the government, Your Honor.

MR. DE LA GARZA:  Not that I can see, Your Honor.

MR. LINDER:  No, sir.

THE COURT:  So why don't you take some time now for your peremptory strikes.  Ms. Miller.

MS. MILLER:  Your Honor, just to clarify, am I correct then that our strike zone is through 41 and then through 46 on the alternates?

THE COURT:  Let me go back.

MS. MILLER:  Ms. Sanford is shaking her head no.

THE COURT:  Let me go through this.

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 186 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#. 2665

186

(Off the record conference.)

MS. MILLER:  Your Honor, there is a reason I became an attorney and not a mathematician.  So the correct then would be the strike zone through 36 and the alternates through 41, is that accurate?  Thank you, Ms. Sanford.

COURTROOM DEPUTY:  That's what I have.

THE COURT:  You have through the first one. I'm going to go through the first 45 which ones I have struck and see if I am missing any.  I have 1, 8, 9, 11, 16, 30, 31, 33, 38 and 45.

MS. MILLER:  That's what the Government has as well.

MR. DE LA GARZA:  Yes.

THE COURT:  Mr. Linder?

MR. LINDER:  Yes.

THE COURT:  So the first strike zone I have through 36.  Yes.  36 is the first strike zone and then the second one is going to be through 41, 37 to 41.

MS. MILLER:  Yes, Your Honor.

THE COURT:  That sound right?  I am glad we covered that.  So let Ms. Sanford know and she will work with you to fill that out.

(Recess, 2:11 p.m. to 2:43 p.m.)

THE COURT:  Please be seated.  Ms. Sanford,

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 187 of 216 PageID
#: 2664
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

187

will you please impanel the jury.

COURTROOM DEPUTY:  As I call your name, if you could stand and stay standing, please.  Juror No. 1, Terrance Hungle.  Juror No. 2, Laura Bloss.  Juror No. 3, Jeremy Blackshear.  Juror No. 4, Alphonso Myers.

PROSPECTIVE JUROR:  That would be 10.

COURTROOM DEPUTY:  This is your new juror number.  Sorry.  Juror No. 5, Paul Schinner.  Juror No. 6, Spencer Hataway.  Juror No. 7, Chakira Parks.  Juror No. 8, MD Jamy.  Juror No. 9, Miles Oneal.  Juror No. 10, Kagan Duffy.  Juror No. 11, John Buchanan.  Juror No. 12, Andrew Hamilton.  Alternate 1, Karmescha Smith.  Alternate 2, Sonia Leonard.

THE COURT:  For those who are standing you are going to be our jurors.  And after the others have departed we are going to have you sworn and then release you for lunch.  So for everyone who is not standing, I want to on behalf of the court staff and I know all of the attorneys here and the parties thank you very much for your service.  I know it's been a long morning into the afternoon and we greatly appreciate your service to your country.  You are all excused now and you will be able to get a certificate of attendance.  Thank you.

(Remaining prospective jurors excused.)

THE COURT:  Ms. Sanford and our court security

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 188 of 216 PageID
#: 2685
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

188

officers are now going to place all of our jurors in your seats 1 through 12, plus our two alternates.

(Brief pause.)

THE COURT:  All right.  I have everybody in there.  Let's go ahead and give the jurors their oath.  Oh, wait.  Is there any objection to the jury as impaneled?

MS. MILLER:  Not from the Government, Your Honor.

MR. DE LA GARZA:  No, Your Honor.

MR. LINDER:  Not from Ms. Lyons.

THE COURT:  Thanks.  Let's have them sworn.

(Jury sworn.)

THE COURT:  You can be seated.  Members of the jury, so I'm going to release you now for what is a late lunch.  I will tell you that when you come back I'm going to give you preliminary instructions, but for the moment I need to tell you that during this break you are not to discuss this case with anyone, including your fellow jurors.  If anyone approaches you and tries to talk to you about the case, please advise me about it immediately.  Do not read or listen to any news reports of this trial or use any technology tools to do any independent research about this case.  And, finally, do not speak to anyone in or around the courthouse other

than your fellow jurors or court personnel. And again as I said, do not discuss the case.

We will have you come back at about 4:00. And as you depart now we will have Mark lead you to the jury room because Ms. Sanford will have a few things to tell you just to get you familiarized with what our procedures will be through the trial and then you will be released for lunch. And thank you all for your service.

(Following held outside presence of the jury.)

THE COURT: You can be seated. So, counsel, you probably haven't had the time to take a look at that piece. I want to include it in the preliminary instructions. You can just get back to me towards the end of the lunch hour or you can get it to Ms. Sanford if you have any edits to that.

A question I have that I would like to hear from you on is just our timing here. There's two ways we can go with this. We are not going to get to evidence, but we could have the jurors come back around 4:00, just give them preliminary instructions and then let them go for the day and start with opening statements tomorrow. Or we could do opening statements. With the time limits we have that would take us to about 5:30. I don't have a strong feeling about it. If the attorneys have a preference on whether to do opening statements or not

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 190 of 216 PageID
#: 2667
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

190

today, let me know.

MR. LINDER:  We have spoken amongst ourselves and prefer to do openings in the morning.

THE COURT:  Is that the Government's position too?

MS. MILLER:  That's acceptable to the Government, Your Honor.

THE COURT:  Mr. De La Garza?

MR. DE LA GARZA:  I agree.

THE COURT:  Then we will just -- when we have the jury come back I will just do the preliminary instructions.  We will let them go and we will have them come back tomorrow morning at 9:00 for opening statements.  Thank you.

MR. WHALEN:  Your Honor, just I do have one thing I wanted to propose to the Court.  Juror 68, she was the therapist and she kind of opined on her experience and kind of the expert, her expert opinion as far as what she sees every day, what symptoms they have. And I didn't know whether it would be appropriate to instruct the jury or some instruction that what you heard in voir dire from the lawyers or any other participant in jury selection is not evidence and not consider it.  My concern would be they would hear what she talked about, then they would impart it to these witnesses and

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 191 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#. 2688

191

therefore make some credibility determination because that was just like Juror 68 said.  And so that's the concern that I have and I didn't know whether the Court felt -- would be willing to give some type of limiting instruction or some caution to the jury.

THE COURT:  In other words, when I am giving the preliminary instructions.

MR. WHALEN:  Yes, Your Honor.

THE COURT:  I don't have a problem putting that in there.  Why don't we do this.  You are looking at those instructions anyway.  I'm already including the instruction about witnesses, right?  I have an instruction about witnesses and I might as well just tell you how that is going to read which is what we talked about.  If during the trial any of you realizes that you recognize or otherwise know a witness you must immediately notify the Court.

So if you have an additional instruction that you want to work out the language on concerning statements made during voir dire, I don't have a problem putting that in there.  And they will be back about 4:00. I may have my clerk start checking with you about 3:45 to see if you have whatever edits.

MR. WHALEN:  Thank you.

THE COURT:  Anything else?  Mr. Linder?

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 192 of 216 PageID
#: 2689
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

192

MR. LINDER:  Yes, Your Honor.  I have a housekeeping issue.  My client has been in Cimarron, Oklahoma, this last year or more.  They moved her to Okmulgee for the trial because Mr. Garland is in Fannin.  As the Court may be aware, Okmulgee is three hours away.  So I have no access to her.  When she's in these remote jails during just regular representation I can schedule zooms, e-mail.  The jail says give me a zoom schedule three days later.  I can't do that during the trial.  She is commuting three hours in the morning, three hours in the afternoon.  I know the marshals don't want her in Fannin County, but I am wondering if there is an option to put her in Collin County.

MS. MILLER:  No, Collin is not an option because a co-defendant is there.  But I don't know if one of the other local jails is an option.

MR. DE LA GARZA:  Collin County has the annex where they house women.

THE COURT:  I think we can hear from the marshals service.

THE MARSHAL:  To answer the question, unfortunately with the number of co-defendants and witnesses and separation requests of among them all, our hands are tied with the number of facilities that we have.  Denton County is not an option.  They will not

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 193 of 216 PageID
#: 2670
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

193

take individuals unless they have a Denton County hold in addition to a marshal hold.  We have other Defendants in Hopkins County.  The next closest one we have would be out in Gregg County or Smith County which would be Tyler or would be Longview and again, it doesn't alleviate any issues.

THE COURT:  Understood.  Thank you.

MR. LINDER:  I just didn't know if there was a way to move some of the other Defendants that aren't in trial out of a closer jail and let my client be closer. That's a lot of moving parts for the marshal and I don't mean to do that, but she and I literally will have no access except during trial.

THE COURT:  I can visit more with the marshals about whether we can move somebody else.  But that might be difficult to move someone else.  One thing we might do is look at some sort of an accomodation in terms of timing when we get here.  In other words, if you need time to be able to spend with her for example, in the morning, if we started -- we can start a bit later.  Why don't you confirm with counsel, I want you to be able to have the time with your client.

THE MARSHAL:  To answer your point on that, inmates are arriving at approximately 7:45 to 8:00 in the morning.  So that should give them ample time.  I believe

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 194 of 216 PageID
#: 1671
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

194

you are wanting to start 9:00?

THE COURT:  Yes, sir.

THE MARSHAL:  She was here about 8:15, 8:30 today.

MR. LINDER:  I know it was a little later today than normal.  If she's here by 7:45 or 8:00, that gives me time to talk to her as long as the marshals will let me in the holding facility to talk to her.

THE MARSHAL:  Just got to be nice.

THE COURT:  I know that we can let you in no later 8:00 and we can talk to the CSOs and see about moving that back to 7:45 or something like that if your client is arriving at that point.  But certainly if it's by 8:00 you're coming in and you have that 45 minutes to an hour.  The only thing about that is we may have times where you need to be in here because we have legal issues to discuss, and that's not time with your client.

MR. LINDER:  And that's why I applaud you for granting my motion to appoint co-counsel so I have someone who can be in here while I am in there or vice versa.

THE COURT:  If that's workable for you, that's good.  Why don't do this.  Thank you to the marshals as always for accommodating this.  If for whatever reason it gets to a point in that first day or two where you're

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 195 of 216 PageID
#: 2672
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

195

needing more time we can look at other adjustments, starting a bit later or something like that and so you have the time you need with Ms. Lyons.

MR. LINDER:  I think as long as I can get 45 minutes or an hour either in the morning or the end of the day combined to talk to her about what's coming up, that's fine by me.

THE COURT:  Let's make sure, confer with the CSOs and marshals to make sure -- I think usually even when we have the attorneys arriving early, it's usually right about 8:00.  So if you are getting here at 8:00 she should be here.  You should be able to have that full amount of time because Mr. Veuleman will be here if there is legal issues to be taken up.

MR. LINDER:  Perfect.

THE COURT:  Thank you, counsel.  We will let you break for some lunch and as I said, Mr. Duffek will probably be checking with you about 3:45.

(Lunch recess, 2:56 p.m. to 4:05 p.m.)

THE COURT:  Please be seated.  Counsel, we are back on Cause No. 4:23-CR-268, United States of America versus William McKinnley Garland and Anastasiya Claire Lyons.  So we are about to bring the jury in and give them preliminary instructions.

I do have the one additional instruction

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 196 of 216 PageID
#: 2673
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

196

counsel had requested to be included and it will be included in the Court's preliminary instructions.  I did want to let you know that after we do the preliminary instructions I think as we close out for the day I will go ahead and have the arraignment of the Defendants.  So, Ms. Miller, that will be the Second Superseding Indictment one more time.

And then typically I assume folks are going to want the rule invoked so I will probably do that after we have arraigned the Defendants and then we will close for the day and plan to have the jury back at nine tomorrow morning.  Anything we need to talk about before we bring the jury in?

MS. MILLER:  Not from the Government, Your Honor.

THE COURT:  Mr. De La Garza?

MR. DE LA GARZA:  Not at this time, Your Honor.

THE COURT:  Mr. Linder?

MR. LINDER:  No, sir.  Thank you.

THE COURT:  Let's go ahead and have the jury brought in.

(Jury entered the courtroom, 4:11 p.m.)

THE COURT:  Members of the jury, now that you have been sworn I will give you some preliminary

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 197 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2674

197

instructions to guide you in your participation in the trial.  It will be your duty to find from the evidence what the facts are.  You and you alone will be the judges of the facts.  You will then have to apply to those facts the law as the Court will give it to you.

You must follow the law whether you agree with it or not.  Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.  In particular, do not let racial, ethnic, national origin or other bias influence your decision in any way.

Nothing the Court may say or do during the course of the trial is intended to indicate or should be taken by you as indicating what your verdict should be.

The evidence from which you will find the facts will consist of the testimony of witnesses, documents and other items received into the record as exhibits and any facts that the lawyers agree to or stipulate to or that the Court may instruct you to find. Certain things are not evidence and must not be considered by you.  I will list them for you now.

First, statements, arguments and questions by lawyers are not evidence.  Second, objections to questions are not evidence.  Lawyers have an obligation to their clients to make objections when they believe

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 198 of 216 PageID #: 2675
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

198

evidence being offered is improper under the rules of evidence.  You should not be influenced by the objection or by the Court's ruling on it.  If the objection is sustained, ignore the question.  If it is overruled, treat the answer like any other.  If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Third, testimony that the Court has excluded or told you to disregard is not evidence and must not be considered.  And, fourth, anything you may have seen, heard or read outside the courtroom is not evidence and must be disregarded.  You are to decide the case solely on the evidence presented here in the courtroom.

In this regard, during jury selection you heard statements from the attorneys and some of your fellow jury panel members who shared their personal experiences and expertise.  You are reminded that what the attorneys said and what your fellow panel members said is not evidence and cannot be considered by you for any reason.  There are two kinds of evidence, direct and circumstantial evidence.  Direct evidence is direct proof of a fact such as testimony of an eyewitness. Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist.

I will give you further instructions on these

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 199 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2670

199

as well as other matters at the end of the case, but keep in mind that you may consider both kinds of evidence.  It will be up to you to decide which witnesses to believe, which witnesses not to believe and how much of any witnesses's testimony to accept or reject.  I will give you some guidelines for determining the credibility of witnesses at the end of the case.

As you know, this is a criminal case.  There are three basic rules about a criminal case that you must keep in mind.  First, the Defendant is presumed innocent until proven guilty.  The indictment brought by the Government against the Defendant is only an accusation, nothing more.  It is not proof of guilt or anything else.  The Defendant, therefore, starts out with a clean slate.

Second, the burden of proof is on the Government through the very end of the case.  The Defendant has no burden to prove his or her innocence or to present any evidence or to testify.  Since the Defendant has the right to remain silent, the law prohibits you from arriving at your verdict by considering that the Defendant may not have testified.

Third, the Government must prove the Defendant's guilt beyond a reasonable doubt.  A reasonable doubt is a doubt based upon reason and common sense after careful and impartial consideration of all

the evidence in the case.  Proof beyond a reasonable doubt, therefore, is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.  I will give you further instructions on this point later, but bear in mind that in this respect a criminal case is different from a civil case.

I will give you detailed instructions on the law at the end of the case and those instructions will control your deliberations and decision.  But in order to help you follow the evidence, I will now give you a brief summary of the elements of the offenses that the Government must prove to make its case.

I will warn you now you this may not sound as brief as I just said, but I am hoping it will be helpful to you.  In this case, the Second Superseding Indictment charges the Defendants with offenses each called a count. I will not read the Second Superseding Indictment to you in detail because you will be given a copy of it for study in your deliberations after you have heard all the evidence, the parties' closing arguments and this Court's final instructions.  Count 1 charges the Defendant, William McKinnley Garland, with coercion and enticement, aiding and abetting in violation of Title 18, United States Code, Section 2422(a) and 2.  Count 2 charges both

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 201 of 216 PageID
#: 2678
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

201

Defendant William McKinnley Garland and the Defendant Anastasiya Claire Lyons with conspiracy to commit sex trafficking by force, fraud or coercion in violation of Title 18, United States Code, Section 1594(c).

Specifically, Count 1 of the Second Superseding Indictment alleges that between on or about January 21, 2021, and on or about January 27, 2021, Defendant William McKinnley Garland did knowingly persuade, induce, entice or coerce an individual or did knowingly attempt to persuade, induce, entice or coerce an individual, that is, Victim 1 to travel in interstate commerce from the State of Ohio to the Eastern District of Texas to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense and aided and abetted in the same.

Count 2 of the Second Superseding Indictment alleges that between in or about 2020 and continuing until on or about August 5, 2024, in the Eastern District of Texas and elsewhere, Defendants William McKinnley Garland and Anastasiya Claire Lyons in and affecting interstate and foreign commerce did conspire with each other and with other individuals both known and unknown to knowingly recruit, entice, harbor, provide, obtain or maintain by any means an individual or individuals knowing or in reckless disregard of the fact that means

USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

202

of force, threats of force, fraud, coercion or any combinations of such means would be used to cause those individuals to engage in commercial sex in violation of Title 18, United States Code, Section 1591(a)(1), all of which is in violation of Title 18, United States Code, Section 1594(c).

As to Count 1, Title 18, United States Code, Section 2422(a) makes it a crime to knowingly persuade, induce, entice or coerce any individual to travel in interstate or foreign commerce to engage in prostitution or in any sexual activity for which any person can be charged with a criminal offense or attempts to do so. For you to find the Defendant guilty of this crime, you must be convinced that the Government has proved each of the following beyond a reasonable doubt:

First, that the Defendant, William McKinnley Garland, knowingly persuaded, induced, enticed or coerced any individual to travel in interstate commerce or attempted to do so; and second, the purpose of the travel was for the individual to engage in prostitution or any sexual activity for which person can be charged with a criminal offense.

Prostitution means engaging in or agree to or offering to engage in any sexual act with or for another person in exchange for money or other consideration.  As

a matter of law, prostitution is a crime under state law. Specifically, under Texas Penal Code Section 43.02, a person commits the offense of prostitution if the person knowingly offers or agrees to receive a fee from another to engage in sexual conduct.

As to Count 2, Title 18, United States Code, Section 1591(a)(1) makes it a crime for anyone knowingly in or affecting interstate or foreign commerce to recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize or solicit a person knowing or in reckless disregard of the fact that means of force, threats of force, fraud or coercion or any combination would be used to cause such person to engage in a commercial sex act.

For you to find the Defendants guilty of this crime, you must be convinced that the Government has proved each of the following beyond a reasonable doubt: First, that each Defendant knowingly recruited, enticed, harbored, transported, provided, obtained, advertised or maintained by any means an individual; second, that each Defendant committed such act knowing or in reckless disregard of the fact that means of force, threats of force, fraud, coercion or any combination of such means would be used to cause the person to engage in a commercial sex act; and third, that the Defendant's acts

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 204 of 216 PageID
#: 2681
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

204

were in or affected interstate or foreign commerce.

Commercial sex act means any sex act on account of which anything of value is given to or received by any person.  Coercion means A, threats of serious harm to or physical restraint against any person, B, any scheme, plan or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person, or C, the abuse or threatened abuse of law or the legal process, whether administrative, civil or criminal in any manner or for any purpose for which the law was not designed in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

Serious harm means any harm, whether physical or nonphysical, including psychological, financial or reputational harm that is sufficiently serious under all the surrounding circumstances to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

The Defendants are each charged with conspiring to engage in sex trafficking by force, fraud or coercion.  A conspiracy is an agreement between two or

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 205 of 216 PageID
#: 2682
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

205

more persons to join together to accomplish some unlawful purpose.  It is a kind of partnership in crime in which each member becomes the agent of every other member.  For you to find the Defendants guilty of this crime, you must be convinced that the Government has proved each of the following beyond a reasonable doubt:  First, that each Defendant and at least one other person made an agreement to commit the crime of sex trafficking by force, fraud or coercion in violation of Title 18, United State Code, Section 1591(a) and as charged in the Second Superseding Indictment.  Second, that each Defendant knew the unlawful purpose of the agreement and joined in it with the intent to further the unlawful purpose.  One may become a member of a conspiracy without knowing all the details of the unlawful scheme or the identities of all the other alleged conspirators.

If a Defendant understands the unlawful nature of the plan or scheme and knowingly and intentionally joins in that plan or scheme on one occasion, that is sufficient to convict him or her of conspiracy even though the Defendant had not participated before and even though the Defendant played only a minor part.  The Government need not prove that the alleged conspirators entered into any formal agreement, nor that they directly stated between themselves all the details of the scheme.

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 206 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2689

206

Similarly, the Government need not prove that all the details of the scheme alleged in the Second Superseding Indictment were actually agreed upon or carried out.  Nor must it prove that all the persons alleged to have been members of the conspiracy were such or that the alleged conspirators actually succeeded in accomplishing their unlawful objectives.

Mere presence at the scene of an event even with knowledge that a crime is being committed or the mere fact that certain persons may have assembled together and discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy.  Also, a person who has no knowledge of the conspiracy but happens to act in a way that advances some purpose of the conspiracy does not thereby become a conspirator.

Now, a few words about your conduct as jurors. During the course of the trial do not speak with any witness or with the Defendant or with any of the lawyers in the case.  Please do not talk with them about any subject at all.  You may be unaware of the identity of everyone connected with the case, therefore, in order to avoid even the appearance of impropriety, do not engage in any conversation with anyone in or about the courtroom or courthouse.

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 207 of 216 PageID
#: 2684
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

207

If during the trial any of you realizes that you recognize or otherwise know a witness, you must immediately notify the Court.  It is best that you remain in the jury room during breaks in the trial and do not linger in the hall.  In addition, during the course of the trial do not talk about the trial with anyone else, not your family, not your friends, not the people with whom you work.  Also, do not discuss this case among yourselves until I have instructed you on the law and you have gone to the jury room to make your decision at the end of the trial.  Otherwise, without realizing it you may start forming opinions before the trial is over.  It is important that you wait until all the evidence is received and you have heard my instructions on the rules of law before you deliberate among yourselves.

You as jurors must decide the case based solely on the evidence presented here within the four walls of this courtroom.  This means that during the trial you must not conduct any independent research about this case, the matters in this case and the individuals or corporations involved in the case.

In other words, you should not consult dictionaries or reference materials, search the internet, websites or blogs or use any other electronic tools to obtain information about this case or help you decide

this case.  Please do not try to find out information from any source outside the confines of this courtroom. I know that many, if not all, of you use cell phones, the internet and other tools of technology.  You must not talk to anyone at any time about this case or use these tools to communicate electronically with anyone about the case.  This includes family and friends.  You may not communicate with anyone about the case through any means, including your cell phone, through e-mail, Blackberry, iPhone, text messaging or on Snapchat or Twitter or through any blog or website, including Facebook, Goggle+, WhatsApp, Instagram, LinkedIn or YouTube.  You may not use any similar technology of social media even if I have not specifically mentioned it here.  I expect you will inform me as soon as you become aware of another juror's violation of these instructions.  A juror who violates these restrictions jeopardizes the fairness of these proceedings and a mistrial could result which would require the entire trial process to start over again.

If you would like to take notes during the trial, you may do so.  On the other hand, you are not required to take notes if you prefer not to do so.  Each of you should make your own decision about this.  If you decide to take notes, be careful not to get so involved in the note taking that you become distracted from the

ongoing proceedings.  Your notes should be used only as memory aides.  You should not give your notes precedence over your own independent recollection of the evidence. If you do not take notes you should rely upon your own independent recollection of the proceedings and you should not be unduly influenced by the notes of other jurors.  Notes are not entitled to any greater weight than the memory or impression of each juror as to what the testimony may have been.  Whether you take notes or not, each of you must form and express your own opinion as to the facts of the case.

You will notice that we do have an official court reporter making a record of the trial; however, we will not have typewritten transcripts of this record available for your use in reaching a decision in this case.

I will now give you a road map to help you follow what will happen over the entire course of this trial.  First, the Government will make an opening statement which is simply an outline to help you understand the evidence as it is admitted.  Next, the Defendant's attorney may, but does not have to, make an opening statement.  Opening statements are neither evidence nor arguments.  The Government will then present its witnesses and counsel for the Defendant may

cross-examine them.  Following the Government's case the Defendants may, if they wish, present witnesses whom the Government may then cross-examine.  If the Defendant decides to present evidence the Government may introduce rebuttal evidence.

After all the evidence is in, the attorneys will present their closing arguments to summarize and interpret the evidence for you and the Court will instruct you on the law.  After that you will retire to deliberate on your verdict.

At this time we will have the arraignment of the Defendants.  If the Defendants would rise at this time.  Let's have the indictment read.

MS. MILLER:  Certainly, Your Honor.

In the United States District Court for the Eastern District of Texas, the Sherman Division, this is the United States of America versus William McKinnley Garland, a/k/a Evangelista, a/k/a Lobo, a/k/a Vangelisa, a/k/a Ville, a/k/a Lex, a/k/a V, a/k/a Victor Yamaguchi, and Anastasiya Claire Lyons, a/k/a Frosty, a/k/a Elena Frost, a/k/a Ana Frost, a/k/a Bane B-A-N-E, a/k/a B-A-I-I-N-E.  This is matter No. 4:23-CR-268 before the Honorable Judge Jordan.  The Second Superseding Indictment.  The grand jury charges as follows:  Count 1, a violation of Title 18, United States Code, Sections

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 211 of 216 PageID #: 2688
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1

211

2422(a) and subsection 2, coercion and enticement, aiding and abetting.  Between on or about January 21st, 2021, and on or about January 27th, 2021, in the Eastern District of Texas and elsewhere, William McKinnley Garland, also known as Evangelista, Lobo, Vangelisa, Ville, Lex, V and Victor Yamaguchi, Defendant, did knowingly persuade, induce, entice and coerce an individual and did knowingly attempt to persuade, induce, entice and coerce an individual, and did knowingly attempt to persuade, induce entice and coerce an individual, that is, Victim 1 to travel in interstate commerce from the State of Ohio to the Eastern District of Texas to engage in prostitution and any sexual activity for which any person can be charged with a criminal offense and aided and abetted in the same in violation of Title 18, United States Code, Sections 2422(a) and 2.

Count 2 charges a violation of Title 18, United States Code, Section 1594(c), conspiracy to commit sex trafficking by force, fraud and coercion.  Between in or about the year 2020 and continuing on or until about August 5th, 2024, in the Eastern District of Texas and elsewhere, William McKinnley Garland also known as Evangelista, Lobo, Vangelisa, Ville, Lex, V and Victor Yamaguchi and Anastasiya Claire Lyons also known as

Case 4:23-cr-00268-SDJ-BD   Document 276   Filed 03/02/26   Page 212 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2689

212

Frosty, Elena Frost, Ana Frost, Bain and Baiine, Defendants, in and affecting interstate and foreign commerce, did conspire with each other and with individuals known and unknown to the grand jury to knowingly recruit, entice, harbor, transport, provide, obtain and maintain by any means an individual or individuals known to the grand jury knowing and in reckless disregard of the fact that means of force, threats of force, fraud, coercion and any combination of such means would be used to cause those individuals to engage in a commercial sex act in violation of Title 18, United Stated Code, Section 1591(a)(1). And again that is all in violation of Title 18, United States Code, Section 1594(c). Your Honor, I can advise that this indictment has been signed by the grand jury foreman and I have signed on behalf of the Government.

THE COURT: Thank you, Ms. Miller. Mr. Garland, how do you plead as to Count 1 of the Second Superseding Indictment?

THE DEFENDANT: Not guilty.

THE COURT: Mr. Garland, how do you plead as to Count 2 of the Second Superseding Indictment?

THE DEFENDANT: Not guilty.

THE COURT: Ms. Lyons, how do you plead as to Count 2 of the Second Superseding Indictment?

MR. LINDER:  Your Honor, on behalf of the jury and my client, my client enters her plea of not guilty.

THE COURT:  All right.  Thank you.  So tomorrow morning we will have opening statements.  You can be seated at this time.  We will have opening statements tomorrow morning, but before we close out for the day, I don't believe the rule has yet been invoked.  Do counsel want to invoke the rule?

MS. MILLER:  Please, Your Honor.

MR. DE LA GARZA:  Yes, Your Honor.

MR. LINDER:  Yes.

THE COURT:  So Rule of Evidence 615 has been invoked.  So we are closing out today, but I will advise counsel that as we proceed in the trial over the ensuing days, any person who is going to be a witness in this case needs to be excused from the courtroom while other witnesses are testifying.  The Government's case agent may remain, but I will ask that counsel be vigilant and keep an eye who is in the courtroom to be sure that we don't have potential witnesses here.

So, members of the jury, we will see you back at 9:00 tomorrow.  We will start with opening statements and then the Government will proceed with its case.  I want to thank all of you for your service.  Please keep my instructions in mind.  We will see you tomorrow.

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 214 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2631

214

(Jury exited courtroom, 4:36 p.m.)

(The following was held outside the presence of the jury.)

THE COURT:  Counsel, before we close out for the day, is there anything you think we need to discuss before we close out proceedings today?

MS. MILLER:  Your Honor, I have discussed this with Ms. Sanford as well as counsel, but just to put it on the record, I have spoken with CJA panel attorney Philip Ray and he has identified that he can clear his calendar this week and therefore will be available to represent the witnesses we have identified.

THE COURT:  I am glad to hear that.  In fact, I think we already have a draft of the order going so we will issue that order this afternoon appointing Mr. Ray and I guess we can expect that he will coordinate with you all to be sure when he needs to be here for these witnesses.  And anything else from the Government at this time?

MS. MILLER:  Not from the Government, Your Honor.

THE COURT:  Mr. Whalen, anything we need to discuss?

MR. WHALEN:  I do, Your Honor.  During jury selection Mr. Garland and Ms. Lyons were not shackled.

Now it appears they are shackled and I am inquiring on why the change and if it's necessary and if they are going to be shackled that the Court make findings on the necessity of it because I think the Court has to make findings on it. We object to them being shackled during their trial.

THE COURT: All right. Was the Government aware of this?

MS. MILLER: No, I was not aware of that.

THE COURT: Well, we are about to close out today so let me get with the marshals service on this and if we need to take it up in the morning before the jury is here we will take that up if we think the Defendants need to be in shackles during the proceedings.

MR. WHALEN: Thank you, Your Honor.

THE COURT: Anything from Mr. Linder for your client?

MR. LINDER: No, sir.

THE COURT: All right. So why don't we do this. Mr. Linder, is it going to give you enough time if we plan to be -- to visit about 8:45? Is that going to be sufficient?

MR. LINDER: I can talk to the court security about being here.

THE COURT: I meant -- this may be fine with

Case 4:23-cr-00268-SDJ-BD    Document 276    Filed 03/02/26    Page 216 of 216 PageID
USA V. WILLIAM GARLAND AND ANASTASIYA LYONS JURY TRIAL VOL. 1
#: 2633

216

you if Mr. Veuleman is just here.  But what I meant is I will plan to be coming back in and visiting with counsel at about 8:45.  I am just wanting to make sure if you are just going to leave that to Mr. Veuleman and you will be back in around 9:00.  I want to make sure if you want to be here we're taking that into account.

MR. LINDER:  We will figure that out.  I have already to talked court security about me being able to see my client at eight in the morning.  That should give me plenty of time to visit before we start.

THE COURT:  Then I will plan to see counsel here at 8:45 tomorrow.  We stand in recess.

(Proceedings adjourned, 4:39 p.m.)

COURT REPORTER'S CERTIFICATION

I HEREBY CERTIFY THAT ON THIS DATE, FEBRUARY 25, 2026, THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS.

*Ruth C. Weese*

_____

RUTH C. WEESE, RDR, CSR

TEXAS CSR NO. 9493 Expiration Date: 07-31-2026